E-FILED
Tuesday, 27 January, 2026  12:33:56 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| HEIDI ERICKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04136-SLD-RLH |
| | ) | |
| MICHAEL INMAN, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are Plaintiff Heidi Erickson's motion for leave to file a first amended complaint, ECF No. 15; motion for disability accommodations, ECF No. 16; motion to reconsider the Court's October 3, 2025 Order, ECF No. 17; motion for leave to file a second amended complaint, ECF No. 18; and motion to correct an error in her second amended complaint, ECF No. 20.  For the reasons that follow, the Court GRANTS the motion for leave to file a first amended complaint; DENIES the motion for leave to file a second amended complaint; and finds MOOT the motion for accommodations, the motion to reconsider, and the motion to correct the error in the second amended complaint.  The Court also conducts a merit review of Erickson's First Amended Complaint, Mot. Leave to File First Am. Compl. Ex. 1, ECF No. 15-1, pursuant to 28 U.S.C. § 1915(e)(2) and DISMISSES IN PART the First Amended Complaint.

## BACKGROUND[1]

### I.    Factual Background

Erickson owns a home located at 13 Hickory Grove, Macomb, Illinois 61455.  This case stems from a series of actions taken against Erickson by the City of Macomb ("the City"), McDonough County ("the County"), the officers and agents and agents of each, and several private parties.  As best the Court can understand Erickson's wide-ranging complaints, the issues began when Erickson received a service dog to assist with her disabilities.  After receiving her service dog, Erickson regularly butted heads with her neighbors, Steven and Amanda Silberger and Korri[2] and Samantha Cameron, as well as several employees or officers of the City and County.  The disputes with her neighbors include trespassing over her property, blocking her driveway, interfering with the training of her service dog, not cleaning up after their own animals, and not paying for her groceries that their animals damaged.  Erickson complained to Chief of the Macomb Police Department Jeff Hamer about her troubles with her neighbors, but he failed to assist her.  Erickson then complained to the City's mayor, Michael Inman.

Subsequently, Erickson alleges, the City and County began harassing her.  Erickson alleges that she attempted to register her service dog with the County, but County Treasurer Dana Moon refused.  Bryce Herrick, an officer of the Macomb Police Department, fabricated a story about regular complaints of odors coming from Erickson's house and concerns about her treatment of her service dog and her clowder of Persian cats.  The fabricated story included that

---

[1] The Federal Rule of Civil Procedure 12(b)(6) standard applies when determining if a complaint fails to state a claim under § 1915(e)(2)(B)(ii).  *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017).  Under that standard, the court takes all well-pleaded allegations as true and views them in the light most favorable to the plaintiff.  *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).  Accordingly, the facts relayed in the background are from the First Amended Complaint.

[2] In the caption, Erickson spells this name Korri, First Am. Compl. 1, but later in the First Amended Complaint, she spells it Korrie, *see id.* at 22.  There are many other Defendants whose names are spelled differently throughout the First Amended Complaint.  The Court will use the spellings from the caption at this time for ease of reference and consistency.

Herrick had visited Erickson requesting to inspect her property, but she had denied him permission. Herrick put this fabricated story in an affidavit provided to Judge Heidi Benson of the Ninth Judicial Circuit Court of Illinois and obtained a search warrant to enter and search Erickson's property.

On May 2, 2025, Herrick, Hamer, over a dozen other police officers, and Code Officials Miranda Lambert and Billy McMillin executed this warrant. The search allegedly began with either Herrick or Hamer kicking down Erickson's front door and ordering her to sit down on the floor, despite Erickson's polite but firm insistence that they were not allowed in her home. Though the exact order of events is unclear, at some point the McDonough County Animal Shelter ("the Animal Shelter") was called and animal control officers Zack Welch, Wendy Hughes, and Joe Rossmiller came to the site. The animal control officers seized Erickson's service dog and Persian clowder and brought them to the Animal Shelter.

The search ended in Erickson's arrest. Herrick, knowing that Erickson had arthritis, and despite her respectful and peaceful actions, twisted her arms behind her back to put handcuffs on her. The remaining officers stood by and did nothing. From there, Herrick brought her to the emergency room at McDonough District Hospital. Knowing that she did not present a danger to himself or anyone else, Herrick then made an agreement with Megan Clemens to lie on the form for involuntary admission to state that Erickson was a danger to herself. As a result, Erickson was involuntarily confined for approximately a month at Lake Behavioral Hospital, which she alleges is owned and operated by V. Covington, LLC d/b/a Lake Behavioral Hospital and V. Covington, Realty, LLC d/b/a Lake Behavioral Hospital. For conciseness, the Court uses Lake Behavioral Hospital to refer to the two LLC entities.

After the events of May 2, 2025, the City marked her home for a violation of the property maintenance code, preventing Erickson from accessing it except during certain hours to abate the violations.  As a result, Erickson has been functionally homeless.  On June 9, 2025, the City of Macomb brought an action in Illinois state court requesting abatement and an entry order based on sanitation violations.  The action was voluntarily dismissed without prejudice on July 22, 2025.  A notice of property code violations was issued by Lambert on July 24, 2025.  Erickson appealed the City's decision that her home violated the property code, and a hearing was set before the Zoning Board of Appeals ("ZBA").  Erickson requested accommodations for this hearing based on her disabilities, including for the hearing to be set early enough in the day so she could travel back to where she had been living at the time by train during daylight.  She never received a response to these accommodations requests and the hearing was conducted without her presence.

## II.    Procedural Background

Erickson first filed a complaint with this Court on July 29, 2025.  *See generally* Compl., ECF No. 1.  This complaint, spanning 245 pages with exhibits, named over fifty defendants and asserted over thirty causes of action.  Two weeks later, she submitted a motion to proceed *in forma pauperis* ("IFP"), Mot. Proceed IFP, ECF No. 5, which the Court granted, Oct. 3, 2025 Order 1, ECF No. 12.  As the Court was reviewing her complaint, Erickson filed several additional motions, including a motion for a preliminary injunction, ECF No. 9.  The Court dismissed her complaint on October 3, 2025, for failure to comply with Federal Rule of Civil Procedure 8(a)(2).  Oct. 3, 2025 Order 7.  It found that the complaint was excessively long, redundant, confusing, inconsistent, and failed to meaningfully put the dozens of defendants on notice about what they were being sued for.  *Id.* at 4–6.  The Court found the remaining motions

moot as there was no operative complaint and gave Erickson leave to file an amended complaint. *Id.* at 7.

On October 22, 2025, after the deadline the Court set and then extended for Erickson to file an amended complaint had passed, Erickson submitted her proposed First Amended Complaint along with a motion for leave to file. This complaint spans 125 pages, inclusive of exhibits, and asserts dozens of claims against over seventy defendants.

While the motion for leave to file remained pending, Erickson filed a motion for accommodations, a motion to reconsider, an unprompted motion for leave to file a second amended complaint, and then a motion to correct an error in the proposed second amended complaint. The several complaints seem to be different primarily in organization, though they also vary in their precise characterization of the events in question as well as the specific counts brought. The facts set out above, however, seem to fairly characterize the gist of Erickson's allegations.

## DISCUSSION

### I.    Motion for Leave to File First Amended Complaint

In its order dismissing Erickson's first complaint, the Court granted her leave to file an amended complaint by October 17, 2025. Oct. 3, 2025 Order 7. Upon Erickson's request, *see* Mot. Extension Time, ECF No. 14, the Court extended this deadline to October 21, 2025. Oct. 17, 2025 Text Order. On October 22, 2025, Erickson filed a motion for leave to file her proposed First Amended Complaint. *See* Mot. Leave to File First Am. Compl. 1. Because Erickson was already granted leave to file an amended complaint, the Court construes her motion as a motion for extension of time filed after the deadline has expired under Federal Rule of Civil Procedure 6(b)(1)(B) and Civil Local Rule 6.1.

Federal Rule 6(b)(1)(B) allows a court to, for good cause, extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect."  The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (quotation marks omitted).  Factors to be considered in determining whether there is excusable neglect include: the danger of prejudice to the nonmoving party, the length of the delay and its impact on judicial proceedings, the reason for the delay (and whether it was within the control of the moving party), and the moving party's good faith.  *Id.*  The Civil Local Rules state that motions for an extension of time filed after the original deadline "will be denied, unless the presiding judge determines that such denial would create a substantial injustice."  Civil LR 6.1.

Erickson first requested an extension of time to file an amended complaint because of health difficulties and because her ADHD causes difficulties with writing and organization.  Mot. Extension Time 1.  In the instant motion, Erickson submits that she was "editing and work[ing] through the night and through th[e] morning" of October 22, 2025.  *See*  Mot. Leave to File First Am. Compl. 1.  If the Court were to deny the extension, it would essentially end Erickson's case as there would be no operative complaint.  Because Erickson's submission was only one day late, because she indicates that she made substantial efforts to file by the deadline, and because failure to grant the one-day extension would end Erickson's case, the Court finds that Erickson failed to meet the deadline because of excusable neglect and that failure to grant her an extension would result in a substantial injustice.  Accordingly, it GRANTS the motion for leave to file the First Amended Complaint.  The Clerk is directed to file the First Amended Complaint, ECF No. 15-1, on the docket.

## II.    Motion to Reconsider

Erickson submitted a motion to reconsider the October 3, 2025 Order which she states "is filed in case this Honorable court refuses 1st Amended Complaint."  *See* Mot. Reconsider 1.  Because the Court has granted Erickson leave to file the First Amended Complaint, the motion to reconsider is MOOT.

## III.    Motion for Accommodations

Erickson also filed a motion for disability accommodations.  The Court does not understand exactly what relief seek Erickson seeks through this motion.  The Court referred the motion to the Central District of Illinois's Access Coordinator to begin the process of considering accommodations for communications disabilities.  Otherwise, it appears that Erickson's request was prompted by a concern that the Court misunderstood her initial complaint and made findings of fact against her in its October 3, 2025 Order.  *See* Mot. Accommodations 1.  But the Court's October 3, 2025 Order made no finding of facts.  *See generally* Oct. 3, 2025 Order.  Instead, the Court merely found that Erickson's complaint did not comply with Federal Rule of Civil Procedure 8.  *Id.* at 7.  It gave her leave to file an amended complaint, *id.*, which Erickson has now filed.  Because the Court did not make findings of fact, Erickson's concerns appear to be unfounded.  Any request for accommodations beyond those considered through the Access Coordinator is MOOT.

## IV.    Merit Review

### a.  Legal Standard

The court must dismiss a complaint brought by an individual proceeding IFP if it determines the complaint "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015).  The Federal

Rule of Civil Procedure 12(b)(6) standard applies when determining if a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017). Thus, the court takes all well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While pleadings filed by self-represented plaintiffs must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must still dismiss a complaint that fails to put the defendants on notice of the claims against them, *see Hahn v. Walsh*, 762 F.3d 617, 632 (7th Cir. 2014) ("[T]he purpose of Rule 8 is to provide a defendant with fair notice of the claims against him."); *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("If a complaint falls short of [Rule 8(a)(2)'s] requirement, it risks dismissal under Rule 12(b)(6) for 'failure to state a claim upon which relief can be granted.'"). The court must also dismiss a complaint if the plaintiff "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii).

**b. Analysis**

Although Erickson's First Amended Complaint suffers from some of the same flaws as the complaint the Court dismissed under Rule 8, the Court endeavors to identify plausible claims in the First Amended Complaint to comply with its duty to liberally construe *pro se* pleadings and so that this case can proceed.

### i.  Defendants to Be Dismissed Entirely

#### 1.  Defendants Not Mentioned Beyond Caption

First, the Court DISMISSES the following Defendants named in the First Amended Complaint from this suit because they are not mentioned beyond being listed in the caption: Larry Aurelio, Dustin Berg, Eric Chapman, Clayton Cook, David Cortelyou, Craig Foster, Mike Cox, Travis Hiel, Vicky Kipling, Michael Kirby, Ryan Litchfield, Terra Litchfield, Jack Lowderman, Clayton Murphy, Jerry Raby, Jarad Royer, Terry Thompson, and Dana Roy Walker. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."); *Schorey v. Greer*, No. 1:24-CV-494-HAB-SLC, 2024 WL 4891897, at *2 (N.D. Ind. Nov. 26, 2024) (finding a case could not proceed against a defendant because the plaintiff did not "mention him in the body of the complaint" or "explain how [the defendant] was personally involved" in the events at issue).

#### 2.  Humane Society of McDonough County

Erickson names the Humane Society of McDonough County ("Humane Society") as a Defendant, First Am. Compl. 1, but it is not clear what she alleges the Humane Society itself did. The Humane Society is only mentioned in the "Defendants" section of the First Amended Complaint, *see id.* at 9–20, and most times Erickson mentions the Humane Society she also refers to "it[]s Animal Shelter," *e.g.*, *id.* at 14.  But she also sues the Animal Shelter.  *See id.* at 1.[3]  The Court cannot discern what Erickson is suing the Humane Society for, so any claim against the Humane Society fails under Rule 8's notice requirement.

---

[3] According to the Humane Society's website, it is a not-for-profit organization that "supports, but is completely separate from, the McDonough County Animal Shelter."  *Who We Are*, Humane Society of McDonough Cnty., https://www.hsmcil.org/about/ (last visited Jan. 27, 2026).

### 3. Members of the McDonough Humane Society Board of Directors, McDonough County Board Members, Karen Blakeley, and Members of the Macomb ZBA

Erickson sues the members of the Humane Society's Board of Directors, the McDonough County Board, and the Macomb Zoning Board of Appeals individually. *See id.* at 12–20. But as to all members except Dana Moon, Erickson makes no allegations of personal wrongdoing. For example, she merely alleges that through operation of the Animal Shelter, each member of the Humane Society's Board of Directors holds her "sentient property Therapy Animals and Service Dog." *See, e.g.*, *id.* at 14. Similarly, she alleges that the County Board members are responsible by virtue of being on the Board that oversees the Animal Shelter rather than that they had any individual involvement in violating her constitutional rights. *See id.* at 12–13. And finally, she alleges that the ZBA members discriminated against her and deprived her of her due process rights but fails to allege any ways each member was personally involved. *See id.* at 19–20. Erickson also sues Karen Blakeley, wife of County Board member Eric Blakeley and veterinarian for the Animal Shelter. *Id.* at 12–13. But Erickson makes no allegations that Karen Blakeley took any actions to violate her rights. Besides Moon, none of these Defendants are mentioned beyond the "Defendants" section of the First Amended Complaint.[4] Erickson alleges that Moon, the County Treasurer and a member of the Humane Society's Board of Directors, refused to register her service dog, *id.* at 14, and that she spoke to Moon about getting her animals back, *id.* at 57. These limited allegations are not sufficiently connected to any of the claims Erickson asserts she is bringing to state a claim for relief against Moon. To the extent Erickson alleges that these these Defendants are liable under a conspiracy theory, she does not

---

[4] Eric and Karen Blakeley are also mentioned in an annotation Erickson provides with one of her exhibits, but all the annotation says is that Erickson's sister copied Eric Blakeley on an email in May 2025 about Erickson's requests to get her animals back. *See* May 9, 2025 Email, First Am. Compl. Ex. 5, ECF No. 15-1 at 103.

sufficiently allege facts from which the Court could conclude that any of these Defendants agreed with others to violate her rights.  *See infra* Section IV.b.ii.1.c.

The following Defendants are DISMISSED under this reasoning: Eric Blakeley; Karen Blakeley; Ken Durkin; Joe Erlandson; Bonnie Scripps; Dana Moon; Terri Hare; Amy Betz; J. Biernbaum; Dave Monninger; Felix Chu; Patti Douglas; Ann Stites; Jennifer Tibbits; Sharon Lindahl; Candice Biswell; Brian Waller; Brandi Baker; Savannah Ballard; Tina Belz; Kate Cobb; Carl Ervin; Susan Nash; and Ron Runser.

### 4. McDonough District Hospital, Bill Murdock, and Patrick Osterman

Erickson sues McDonough District Hospital.  First Am. Compl. 1, 18.  She asserts that it is being sued for breaching the standard of care, condoning malpractice and fraud, issuance of fraudulent medical records, and intentional infliction of emotional distress.  *Id.* at 18.  But she does not set forth any factual allegations regarding these claims.  The only factual allegations relating to McDonough District Hospital are allegations of Megan Clemens's conduct, but Erickson nowhere suggests that McDonough District Hospital can be liable for Clemens's actions.  Erickson also sues Bill Murdock and Patrick Osterman, the Chief Executive Officer and Vice President of Business Strategy, respectively, for McDonough District Hospital, *id.* at 1, 18, but her allegations of wrongdoing on their part is too vague and conclusory to state a claim to relief.  To the extent Erickson argues these Defendants are liable under a conspiracy theory, she does not sufficiently allege facts from which the Court could conclude that any of these Defendants agreed with others to violate her rights.  *See infra* Section IV.b.ii.1.c.  Accordingly, McDonough District Hospital, Bill Murdock, and Patrick Osterman are DISMISSED as Defendants.

### 5.  Judge Heidi Benson

Next, the Court DISMISSES all claims against Judge Heidi Benson.  "[G]enerally, a judge is immune from a suit for money damages."  *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curium).  "[Judicial immunity] confers complete immunity from suit, not just a mere defense to liability . . . ."  *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005).  But a judge is only entitled to immunity for judicial acts.  *Kowalski v. Boliker*, 893 F.3d 987, 997 (7th Cir. 2018).  "[T]hree factors generally govern the determination of whether a particular act or omission" is judicial:

> (1) whether the act or decision involves the exercise of discretion or judgment, or is rather a ministerial act which might as well have been committed to a private person as to a judge; (2) whether the act is normally performed by a judge; and (3) the expectations of the parties, i.e., whether the parties dealt with the judge as judge.

*Dawson*, 419 F.3d at 661 (quotation marks omitted).

Erickson alleges that Judge Benson issued the search warrant that Herrick and others then executed.  *See* First Am. Compl. 57.  She argues that Judge Benson failed in her duty to ensure that there was a proper return filed with an inventory.  *See id.* at 57–58.  Though Erickson calls this an "administrative function," *id.*, the Court concludes that Erickson is suing Judge Benson for judicial acts.  "[T]he issuance of a search warrant is unquestionably a judicial act."  *Burns v. Reed*, 500 U.S. 478, 492 (1991).  The Court sees no reason a judge's review of the execution of a search warrant she issued would not also be a judicial act.  Indeed, Erickson even argues that "the law requires the Judge to review the return to ensure the officer executing it is held accountable for anything seized."  First Am. Compl. 57.  Because Judge Benson is entitled to judicial immunity for any claim arising out of the conduct Erickson complains about, the Court DISMISSES all claims against Judge Benson.

12

### 6. Western Illinois University, Kriste Mindrup, and Darcie Shinberger

Erickson alleges that Darcie Shinberger is a reporter. *Id.* at 54. Erickson complains that Shinberger published articles that were defamatory and libelous. *Id.* She also complains that Shinberger "failed to report on the serious discrimination and unfair processes of the ZBA and the City attacking a senior citizen." *Id.* at 8. Erickson alleges that Shinberger's "defamation and liable [sic]" was "supported by Western Illinois University[("WIU")], and it[]s new President Mindrup." *Id.* at 46. She argues that "WIU[] is supporting a campaign[] of biased defamatory and libelous reporting by Defendants Shinberger and Mindrup." *Id.* at 8.

"Defamation is the publication of any statement that 'tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him.'" *Madison v. Frazier*, 539 F.3d 646, 652–53 (7th Cir. 2008) (alteration omitted) (quoting *Seith v. Chi. Sun-Times, Inc.*, 861 N.E.2d 1117, 1126 (Ill. App. Ct. 2007)). Illinois law recognizes two forms of defamation: *per se* and *per quod*. *Id.* at 653. "A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). A plaintiff alleging defamation *per se* does not have to identify the exact language of the allegedly defamatory statement in her complaint, but she must plead "the substance of the statement . . . with sufficient precision and particularity so as to permit initial judicial review of its defamatory content." *Id.*; *Bergman v. St. Clair Cnty.*, No. 3:24-CV-02374-NJR, 2025 WL 2694908, at *3 (S.D. Ill. Sept. 22, 2025) (holding that this is a substantive requirement for Illinois defamation claims so it applies even in federal court). A plaintiff alleging defamation *per quod* must allege "both extrinsic facts to establish that the statement is defamatory" and that she suffered pecuniary damages from the statement. *Bergman*, 2025 WL 2694908, at *3 (quotation marks omitted).

13

Whether Erickson is intending to bring *per se* or *per quod* claims, she fails to state a claim. She cannot state a defamation *per se* claim because she simply alleges that Shinberger published defamatory articles containing falsehoods and that WIU and Mindrup distributed "falsehoods" without identifying the substance of the falsehoods with any particularity. *See, e.g.*, First Am. Compl. 46. She cannot state a defamation *per quod* claim because she fails to allege that she suffered any monetary damages because of the allegedly defamatory reporting. To the extent Erickson is alleging that they conspired with government actors, she fails to include sufficient allegations to state a claim of conspiracy. *See infra* Section IV.b.ii.1.c. Accordingly, any claims against Shinberger, WIU, and Mindrup are DISMISSED for failure to state a claim.

### 7. Gene Curtis and REMAX Realty

Erickson alleges that Gene Curtis is a licensed real estate broker who owns REMAX Realty. First Am. Compl. 19. She states that she sues Curtis and REMAX for "provid[ing] false and misleading information" and for breach of contract and fiduciary duty. *Id.* But the only factual allegations regarding Curtis and REMAX are that Curtis stated that Erickson's house shared a driveway with her neighbor's house and that the "deeds between the parties" created an easement for a shared driveway. *Id.* at 11, 41. It appears that Erickson is complaining that Curtis falsely reported that there was a shared driveway in connection with Erickson's purchase of her home. But the First Amended Complaint does not contain sufficient details to "present a story that holds together" as to Curtis and REMAX. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Erickson does not allege, for instance, the nature of her relationship with these entities. To the extent Erickson is alleging that they conspired with government actors, she fails to include sufficient allegations to state a claim of conspiracy. *See infra* Section IV.b.ii.1.c. The Court DISMISSES any claims against Curtis and REMAX.

14

### 8. McDonough County Board, McDonough County Treasurer's Office, and McDonough County Animal Shelter

Erickson names as Defendants the McDonough County Board, the McDonough County Animal Shelter, and the McDonough County Treasurer's Office. First Am. Compl. 1. Capacity to be sued for an entity like a county or government agency is determined by "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). "To be sued in Illinois, a defendant must have a legal existence, either natural or artificial." *DeGenova v. Sheriff of DuPage Cnty.*, 209 F.3d 973, 976 n.2 (7th Cir. 2000) (quotation marks omitted). Courts have held that subdivisions of a county "do not have a legal existence separate from the [c]ounty and thus are not proper parties" to a federal suit. *Harris v. Dart*, No. 20 C 7602, 2023 WL 2988816, at *3 n.2 (N.D. Ill. Apr. 18, 2023); *Serv. Emps. Int'l Union, Loc. 73 ex. rel. Condon v. County of Cook*, No. 13 cv 2935, 2014 WL 793114, at *4 (N.D. Ill. Feb. 26, 2014) ("[A]s subdivisions or departments of Cook County, neither [the Cook County Health and Hospital Systems or Cermak Health Services] are suable entities separate from Cook County."). Courts have also held that county boards "are not suable entities because they do not enjoy separate legal existence independent of [a] [c]ounty." *Appel v. LaSalle Cnty. State's Att'y Felony Enf't Unit*, No. 18-cv-2439, 2019 WL 4189461, at *3 (N.D. Ill. Sept. 4, 2019) (quotation marks omitted). As the McDonough County Board, the McDonough County Animal Shelter, and the McDonough County Treasurer's Office have no separate legal existence from the County, they are not suable entities. Accordingly, they are DISMISSED as Defendants. Any claims against these parties are construed as being brought against McDonough County.

### 9. Neighbors

Erickson names her neighbors Korri Cameron, Samantha Cameron, Amanda Silberger, and Steven Silberger as Defendants. First Am. Compl. 1, 11–12. But while they are mentioned

throughout the First Amended Complaint, the complaint does not make clear whether and what claims are brought against them.  Erickson is primarily complaining about government misconduct, but her neighbors are private actors.[5]  To the extent Erickson is alleging that they conspired with government actors, she fails to include sufficient allegations to state a claim of conspiracy.  *See infra* Section IV.b.ii.1.c.  As the First Amended Complaint fails to state a claim for relief against the Camerons or Silbergers, they are DISMISSED as Defendants.

### 10. Remaining Parties

The following parties remain: the City; Inman; Scott Coker; Lisa Scalf; Lambert; McMillin; Hamer; Herrick; Officers Jane Doe #1 through 5; Officers John Doe #1 through 5; the County; Welch; Hughes; Rossmiller; Clemens; Lake Behavioral Hospital; and Cindy Marcedo.

### ii.  Claims Against Remaining Parties

Plaintiff lists twenty-four counts in her First Amended Complaint.  Significant organization issues with the complaint hinder the Court's ability to assess these claims.  For example, Erickson labels her claims with an alleged legal basis, like "4TH AMENDMENT, 42 U.S.C.§ 1983 CIVIL CONSPIRACY" (for Count I) and "4th AMENDMENT 42 U.S.C. § 1983 UNLAWFUL SEARCH AND SEIZURE" (for Count VIII).  First Am. Compl. 26, 37.  But then within each count, many other legal doctrines are mentioned.  For example, in Count I, which purports to be about a Fourth Amendment violation, Erickson alleges that Defendants violated her due process rights, the Americans with Disabilities Act, and the Fair Housing Act.  *See id.* at 26.  There are also repetitive counts.  For example, there are numerous Fourth Amendment

---

[5] Though Erickson alleges that Korri Cameron is a police officer, First Am. Compl. 11, the only conduct Erickson attributes to Korri Cameron via well-pleaded factual allegations is clearly conduct she undertook in her personal capacity at her home, *see, e.g.*, *id.* at 22–23 (alleging that Korri Cameron's dog "broke open a 3lb ~$21[]Chuck Roast" on Erickson's front porch and Korri told Erickson she would not replace the roast because the dog did not eat all of it).

claims that seem to be about the same events.  *See, e.g.*, *id.* at 32–39 (bringing separate counts for warrantless entry, unlawful search and seizure of impressions, and unlawful search and seizure).  Moreover, Erickson fails to identify against whom many counts are asserted, simply alleging that "Defendants" took certain actions against her without specifying which Defendants.  The Court reads the First Amended Complaint as a whole and, where appropriate, addresses claims by subject-matter rather than strictly by count.

### 1.  Counts that are Dismissed in their Entirety

#### a.  Count IV: *Monell* Liability against the City

Count IV, *id.* at 29–30, is DISMISSED because *Monell* liability is a theory by which a municipality can be held responsible under 42 U.S.C. § 1983 for actions of its employees.  *See generally Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).  It is not a standalone constitutional claim.  The Court will consider whether Erickson states a claim against the City in the analysis of each relevant substantive claim.

#### b.  Counts XXIII and XXIV: Perjury

Counts XXIII and XXIV are both brought under 720 ILCS 5/32-2.  First Am. Compl. 63–68.  But this is a criminal statute for which there is no private right of action, so these counts are DISMISSED.

#### c.  Counts I and XIII: Civil Conspiracy

In Count I, Erickson alleges that "Defendants conspired to deprive [her] of her constitutional rights by coordinating actions between police officers, municipal officials, and third-party civilians, which included falsifying legal documents and misrepresenting facts to judicial officers."  *Id.* at 27.  In Count XIII, Erickson alleges that Defendants conspired to unlawfully search and seize her.  *Id.* at 43.  For claims brought via 42 U.S.C. § 1983, conspiracy

17

is merely a theory of liability.  It is not a standalone claim, *see Cefalu v. Village of Elk Grove*, 211

F.3d 416, 423 (7th Cir. 2000) (concluding that the lack of constitutional injury "forecloses relief

on [a] conspiracy claim"), but a mode of "spreading the net of liability to additional persons."

*Niehus v. Liberio*, 973 F.2d 526, 531–32 (7th Cir. 1992).  The same is true of civil conspiracy in

Illinois—it is a theory for holding individuals beyond the most immediate wrongdoer liable.  *See*

*McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) ("The civil

conspiracy theory has the effect of extending liability for a tortious act beyond the active

tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the

act.").  Because civil conspiracy is merely a way to hold someone responsible for an underlying

wrongdoing,  Counts I and XIII are DISMISSED as standalone claims.

The Court notes, however, that to allege conspiracy liability under 42 U.S.C. § 1983 (for

federal constitutional claims) or under Illinois law (for Illinois law claims), a plaintiff must allege

that individuals reached an agreement to deprive the plaintiff of his rights and that an act in

furtherance of that agreement deprived him of his rights or injured him.  *See Beaman v.*

*Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (§ 1983); *Borsellino v. Goldman Sachs Grp., Inc.*,

477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure*, 720 N.E.2d at 258) (Illinois law).  "[A]n

allegation of parallel conduct and a bare assertion of conspiracy will not suffice."  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007).  Instead, a plaintiff must allege specific facts warranting

inferences that the parties came to an agreement and that each person alleged to be part of the

conspiracy was a member.  *See id.* at 557; *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F.

Supp. 2d 918, 924 (N.D. Ill. 2012).

The bulk of Erickson's allegations of conspiracy are conclusory—she merely alleges that

certain parties conspired without setting forth any specific facts that makes that conclusion

plausible. *See, e.g.*, First Am. Compl. 7 ("[The County is] in concert with the conspiracy with

the City [sic] to retaliation [sic] and discriminate against Ms.[ ]Erickson based on disability and

age[.]"); *id.* at 11 (alleging Korri Cameron "conspired with the Defendants to take [Erickson's]

property"); *id.* at 27 ("Defendants conspired to deprive [Erickson] of her constitutional rights by

coordinating actions between police officers, municipal officials, and third-party civilians . . . .");

*id.* at 43 ("Defendants agreed to unlawfully search Ms. Erickson without reasonable suspicion or

probable cause . . . ."); *id.* at 46 ("[T]he Defendant Officers, officials, agents, lawyer(s) and

Reporter's [sic] acting as investigators, agents and/or legal advisors individually, jointly, and

with conspiring minds set out a conspiracy with one another . . . ."). Merely concluding that

parties conspired together is not sufficient to state a claim against any party using conspiracy

liability.[6]

### 2. Count II: Replevin

Replevin is a cause of action under Illinois law against the one who has wrongful

possession of goods. *See* 735 ILCS 5/19-101; *Landwer v. Deluxe Towing, Inc.*, 249 N.E.3d 1039,

1046 (Ill. App. Ct. 2024) ("[R]eplevin is now a purely statutory cause of action . . . ."). A

complaint seeking replevin must "describe[] the property to be replevied," state that the plaintiff

is the owner of the property and is lawfully entitled to its possession, that the defendant is

wrongfully detaining the property, and that the property has not been "seized under any lawful

process against the goods and chattels of such plaintiff." 735 ILCS 5/19-104. The property at

issue in Count II is "a Persian clowder and a Service Dog." First Am. Comp. 27. Erickson

---

[6] There is one instance where Erickson alleges sufficient facts to support a plausible inference of a conspiracy: that
Herrick and Clemens conspired to falsify medical records and hold Erickson in involuntary commitment. Erickson
alleges that Herrick "encouraged" and "suborned" Clemens to place false information in an involuntary commitment
petition and that Clemens was "a willing participant" who "intended" to keep Erickson detained. First Am. Compl.
63, 65. Erickson alleges that "[b]y [n]oon [on May 2] Clem[e]ns and Herrick agreed to work together." *Id.* at 66.
But as the Court will discuss below, Erickson sufficiently alleges that each was personally involved in this conduct
that conspiracy liability is not crucial to the claim.

alleges that she owns this property and that "Defendants wrongfully detained" the property.  *Id.*
And Erickson contests the lawfulness of the process by which the property was seized—she
alleges that the warrant to search her home was issued based on misrepresentations and
omissions.  *Id.* at 27–28.  Erickson's replevin claim can proceed against the County, the entity
that she alleges is holding her property.  *See id.* at 12 (alleging that the Animal Shelter is holding
Erickson's property)

### 3.  Counts III and V: Discrimination and Retaliation under the Americans with Disabilities Act[7]

Erickson broadly alleges discrimination under the Americans with Disabilities Act
("ADA"), 42 U.S.C. §§ 12101–12213, *see* First Am. Compl. 28–29, 31–32.  She alleges that she
has a qualifying disability as she has arthritis, epilepsy, ADHD, and dyslexia.  *See id.* at 63.  The
disability discrimination claims fall into two buckets: first, discrimination or retaliation in the
alleged search and seizure on May 2, 2025; and second, failure to provide accommodations
during the ZBA appeal.  *See id.* at 28–29, 54.

First, the Court notes that Title II of the ADA applies only to public entities like local
governments, not individuals.  42 U.S.C. §§ 12131(1), 12132.  A plaintiff cannot use § 1983 to
sue individual defendants for ADA violations.  *See Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446,
449 (7th Cir. 2016).  Accordingly, only the City and the County are potentially proper
defendants for Title II claims.  Title III of the ADA applies to public accommodations, 42 U.S.C.
§ 12182(a), which includes hospitals, *id.* § 12181(7)(F).  Lake Behavioral Hospital is a
potentially proper defendant for a Title III claim.

---

[7] Erickson mentions the Rehabilitation Act, 29 U.S.C. § 794, as well, *see, e.g.*, First Am. Compl. 28, but that law
prohibits discrimination on the basis of disability by federal executive agencies and programs or entities that receive
federal financial assistance, *see* 29 U.S.C. § 794(a).  Erickson does not allege that any Defendant receives federal
financial assistance.

Erickson's first broad claim of disability discrimination is that "Defendants" seized her service dog and therapy animals, obtained the administrative search warrant, and sought her involuntary commitment because of "discriminatory animus towards [her] disability" or "in response to [Erickson's] protected activity of asserting her rights under the ADA . . . including her complaints to the Mayor and Police Chief regarding the discriminatory treatment she endured." First Am. Compl. 28–29. At this stage, the Court finds that Erickson's ADA claim against the City can proceed—Erickson is essentially alleging that the City, through Chief Hamer or Herrick, sought to search her home, seized her animals, and detained her *because of* her disability. Erickson can also proceed on an ADA claim against Lake Behavioral Hospital as she alleges that Lake Behavioral Hospital would not release her due to her use of a wheelchair. *See id.* at 21–22. But the Court sees no allegations based on which the County could be found liable for violating the ADA.

Erickson does not state a claim under the ADA that the City retaliated against her for complaining to Mayor Inman and Police Chief Hamer about discriminatory treatment. The ADA prohibits discrimination against individuals "because such individual has opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). The complaints Erickson made to Inman and Hamer were about issues she was having with her private party neighbors. *See* First Am. Compl. 6 (stating that her protected activity was complaints about her neighbors). Because she was not complaining about discrimination that could possibly be covered by the ADA, she cannot state a retaliation claim under the ADA.

Erickson's other ADA claim is that City officials "refus[ed] to initiate an interactive process to determine appropriate accommodations for [her] disabilities" and ignored her requests for reasonable accommodations for her hearing before the ZBA. *Id.* at 29, 53. She alleges that

she sent emails to Scalf and Coker requesting accommodations—including that the hearing take place during the day and in a wheelchair accessible room, *id.* at 56—to which they did not respond. *Id.* at 54. A public entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7)(i). "[F]ailure to accommodate is an independent basis for liability under the ADA." *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (emphasis omitted). Erickson can proceed on a claim that the City violated the ADA by failing to make reasonable accommodations for her in the zoning appeals process.

### 4. Counts VI, VII, VIII, IX, X, XI, XII, and XIV: Unlawful Search and Seizure under the Fourth Amendment and Article I, Section 6 of the Illinois Constitution

The majority of Erickson's claims are of unlawful search and seizure under the United States and Illinois Constitutions. The Fourth Amendment to the United States Constitution protects an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. Article I, Section 6 of Illinois's Constitution also protects individuals from "unreasonable searches[ and] seizures." Ill. Const. art. I, § 6. These claims will be addressed together because Illinois courts construe Article I, Section 6 of the Illinois Constitution in lockstep with the Fourth Amendment unless certain narrow criteria are met. *See People v. Fitzpatrick*, 986 N.E.2d 1163, 1167 (Ill. 2013).

Erickson alleges that searches and seizures of her home and property were conducted without a warrant or probable cause "on dates including but not limited to April 17, 23, 24, 28, 29, May 1, and May 2, 2025." First. Am. Compl. 26. But she provides further factual allegations about only a search on May 2, 2025 and seizures arising out of that search.

22

Accordingly, any claims arising out of earlier searches are DISMISSED for failure to state a claim.

### a. Unreasonable Search

Judge Heidi Benson issued an administrative search warrant for Erickson's home, 13 Hickory Grove, on May 1, 2025, after reviewing Herrick's affidavit. Order & Admin. Search Warrant, First Am. Compl. Ex. 1a, ECF No. 15-1 at 77. She found probable cause existed "to believe that violations of municipal ordinances and/or the Humane Care for Animals Act may [have been] occurring" at Erickson's home. *Id.* The warrant authorized officers to enter the premises to "investigat[e] violations related to the care, treatment, and housing of animals as well as property maintenance in a sanitary condition." *Id.* Erickson alleges that Herrick's affidavit contained "numerous misrepresentations and omissions of material facts." *E.g.*, First Am. Compl. 34. The alleged misrepresentations include that he asked Erickson for permission to search her home and she refused and that the County Treasurer's office had no registrations for Erickson's animals. *Id.* at 32. The omissions included context about Erickson's disabilities and physical condition, about her complaints about her neighbors, and about her prior encounters with courts. *Id.* at 32–34. The warrant was executed on May 2, 2025. *Id.* at 38. Erickson alleges that Herrick and other officers entered her home after Herrick or Hamer kicked down her door, that she was arrested, and that her animals were seized. *Id.*

Erickson can proceed on a Fourth Amendment unreasonable search claim against Hamer, Herrick, Lambert, and McMillin based on the May 2, 2025 search. While she acknowledges that these officers executed the search pursuant to a warrant, she alleges, with supporting factual allegations, that Herrick made knowing and intentional false statements and omissions in his affidavit, rendering it an unconstitutional search. *See Greenpoint Tactical Income Fund LLC v.*

*Pettigrew*, 38 F.4th 555, 567 (7th Cir. 2022) ("[A] request for a warrant violates the Fourth
Amendment if an officer knowingly, intentionally, or with reckless disregard for the truth, makes
false statements in requesting the warrant and the false statements were necessary to the
determination that a warrant should issue." (quotation marks omitted)).  The case can proceed
against the John and Jane Doe officers involved in executing the search as well.  *See Billman v.
Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) (holding that when a "plaintiff has been
injured as the consequence of the actions of an unknown member of a collective body" and
"identification of the responsible party may be impossible without pretrial discovery," an "initial
inability to identify the injurers is not by itself a proper ground for the dismissal of the suit").
Erickson also sufficiently alleges Scalf's personal involvement—by advising Herrick on his
affidavit—that she states a claim against Scalf too despite her not being present at the scene.  *See*
First Am. Compl. 7.  As Erickson alleges that Hamer is a final policymaker for the City, *see id.* at
30, an unreasonable search claim survives against the City at this stage as well.

### b.  Unreasonable Seizure of Property

Erickson alleges that Hamer and Herrick invited animal control officers Welch, Hughes,
and Rossmiller to her home and that those officers seized her animals, impounded them, and
transported them to the Animal Shelter.  *See id.* at 35, 58.  The warrant issued on May 1, 2025
explicitly did "not authorize the removal or seizure of animals or property unless such removal
[wa]s required under exigent circumstances or authorized under a separate warrant or statutory
provision."  Order & Admin. Seach Warrant 1 (emphasis omitted).  The return of the warrant,
filed by Scalf on May 13, 2025, indicates that "[d]uring the execution of the warrant, numerous
animals were discovered within the premises in various stages of health, unsanitary conditions
and some appearing malnourished" and that officers contacted the Animal Shelter and

"impounded the animals[ and] obtained medical evaluations."  Return, First Am. Compl. Ex. 1c, ECF No. 15-1 at 82.  The City represented that the Animal Shelter was "currently housing [the animals] pursuant to impoundment procedures."  *Id.*  Erickson, however, alleges that at the time of the search her animals were thriving, her house was clean, and there was plenty of food for the animals.  *See* First Am. Compl. 61–62.

Erickson can proceed on an unreasonable seizure claim against Hamer, Herrick, Welch, Hughes, and Rossmiller as they allegedly participated in seizing her animals without a warrant and in the absence of exigent circumstances.  *Siebert v. Severino*, 256 F.3d 648, 656 (7th Cir. 2001) (holding that "removal of an animal constitutes a 'seizure' for purposes of the Fourth Amendment"); *id.* at 657–58 (noting that "[e]xigent circumstances may justify a warrantless seizure of animals" when the animals are "in imminent danger" or in "dangerous or inhumane" conditions).  And, again, as Hamer is alleged to be final policymaker for the City, a claim for unreasonable seizure against the City survives as well.

### c.  Excessive Force During Arrest

Erickson alleges that she was arrested during execution of the search and that Herrick placed her in handcuffs with her arms behind her back.  First Am. Compl. 39.  She alleges that Herrick knew she had arthritis and that she complained that she was in pain but that Herrick refused to remove her handcuffs.  *See id.* at 39, 43, 59.  She alleges that she was cooperative with the officers and was not a threat throughout the encounter.  *Id.* at 37.

"[A]n officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury."  *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009).  Erickson's allegations support an inference that Herrick knew the handcuffs were causing Erickson pain and that handcuffing her was

25

unnecessary and, accordingly, that Herrick's actions violated the Fourth Amendment.

Erickson also alleges that "bystander Defendants" were present and "had a realistic opportunity to do something to prevent harm from occurring to" her.  First Am. Compl. 42.  An officer can be held liable for failure to intervene in this context if that officer had reason to know "that excessive force was being used . . . *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring."  *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).  Erickson alleges that Herrick handcuffed her "under the supervision of" Hamer.  First Am. Compl. 39.  Taking that allegation together with the allegation that Hamer was present that day in the light most favorable to Erickson, the Court finds that there are sufficient allegations to hold Hamer liable under a failure-to-intervene theory.  As he is alleged to be a policymaker for the City, his actions provide a basis to proceed on a claim against the City.  Erickson alleges that the John and Jane Doe officers saw Herrick handcuff her as well, *see id.* at 59 ("Herrick then asked his approximately 10-15 uniformed officers to surround Erickson on her porch . . .  handcuffed Erickson[']s hands behind her back while she cried out in immense pain . . . ."), so the Court finds that an excessive force claim can proceed against those officers too.

### d.  Wrongful Arrest or Seizure of Person

Erickson alleges that after officers entered her home, she was "ordered . . . to sit down on the floor" and not move.  *Id.* at 37.  She was handcuffed by Herrick under the supervision of Hamer, then placed in Herrick's squad car.  *Id.* at 43.  Herrick took her to the McDonough District Hospital emergency room.  *Id.* at 59.  Erickson alleges that Herrick then worked together with Clemens, a nurse at the emergency room, to file a petition for Erickson's involuntary judicial admission.  *Id.* at 40.  She alleges that Clemens and Herrick falsely alleged that she "was a harm to herself or others" based only on the fact that she was upset.  *Id.*  She further alleges

that pursuant to the petition, which was without a judicial signature, she was transported to Lake Behavioral Hospital and detained until June 3, 2025. *See id.* at 37, 40.

An arrest is a seizure of a person. *Torres v. Madrid*, 592 U.S. 306, 312 (2021). "Arrests must be supported by probable cause . . . ." *Molina v. Latronico*, 430 F. Supp. 3d 420, 434 (N.D. Ill. 2019) (citing *United States v. Lopez*, 907 F.3d 472, 478 (7th Cir. 2018)). Erickson can proceed on a claim for wrongful arrest against Herrick because she alleges that he seized her and detained her in handcuffs and in his squad car when there was no probable cause to believe she committed a crime or violated a law. She alleges compliance with the officers' orders, First Am. Compl. 39, and adequate treatment of her animals, *compare id.* at 61–62 (describing them as "raised with love and in a trusting environment, that allowed them to thrive and be happy"), *with Mahnke v. Garrigan*, 428 F. App'x 630, 635 (7th Cir. 2011) (finding probable cause to arrest for violation of animal welfare statute based on "the sight of five emaciated horses confined without ready access to food, water, and shade"). For the same reasons an excessive force claim against them survives, a wrongful arrest claim can proceed against Hamer, the City, and the John and Jane Doe officers.

Erickson can also proceed on a claim for wrongful seizure against Herrick and Clemens arising out of the petition for involuntary commitment. "The Fourth Amendment of the Constitution governs mental-health seizures." *Bruce v. Guernsey*, 777 F.3d 872, 875 (7th Cir. 2015). An involuntary mental-health seizure may be made "only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992). Under the Illinois Mental Health Code, an adult shall not be given mental health services that they refuse "unless such services are necessary to prevent the recipient from causing serious and imminent physical harm to the

27

recipient or others and no less restrictive alternative is available." 405 ILCS 5/2-107(a). Erickson alleges that Herrick and Clemens "falsely alleg[ed] that [she] was a harm to herself or others," and that Clemens signed the certificate for involuntary admission "with knowingly false and misleading information that she attested to without further facts except that Erickson was upset." First Am. Compl. 40. Accepting these allegations as true, there was no probable cause to believe that Erickson was subject to seizure under the Illinois Mental Health Code since detention was not necessary to prevent serious physical harm to Erickson or others. Because Lake Behavioral Hospital is a private entity, it is not subject to a Fourth Amendment claim.

### 5. Count XV: False Imprisonment

Count XV, labeled "Excessive Detention," is brought against Lake Behavioral Hospital and Marcedo and is based on her alleged involuntary detention at Lake Behavioral Hospital. *Id.* at 44–46. The Court construes this as a common law false imprisonment claim as Erickson brings the claim against non-state actors. Because of Herrick and Clemens's alleged roles in Erickson's involuntary detention, and because Erickson references them in this count, *see id.* at 45, the Court also construes the claim to be against them.

"The common law tort of false imprisonment is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion." *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1311 (Ill. App. Ct. 1984). To prevail on a false imprisonment claim, a plaintiff must prove that "her personal freedom was curtailed against her wishes" and that "her detention was unreasonable or unlawful." *Irvin v. S. Ill. Healthcare*, 128 N.E.3d 1149, 1158 (Ill. App. Ct. 2019). To be liable for false imprisonment, a defendant's actions must have "caused or procured the restraint." *Arthur v. Lutheran Gen. Hosp., Inc.*, 692 N.E.2d 1238, 1243 (Ill. App. Ct. 1998) (quotation marks omitted). There must also be intent to restrain the plaintiff. *Lopez*, 466 N.E.2d at 1311.

Erickson alleges sufficient facts to proceed on a false imprisonment claim against Lake Behavioral Hospital, Herrick, and Clemens.  Taking her allegations as true, her freedom was curtailed against her wishes when she was involuntarily detained at Lake Behavioral Hospital. *See* First Am. Compl. 40.  Her allegations support a finding that the detention violated the Illinois Mental Health Code, and that the actions of Lake Behavioral Hospital, Herrick, and Clemens each "caused or procured the restraint."  *Arthur*, 692 N.E.2d at 1243 (quotation marks omitted).  She was actually restrained at Lake Behavioral Hospital.  Even if undertaken believing that they were acting lawfully, the actions Erickson alleges each of these Defendants took were conscious, showing they intended to restrain Erickson.

There are not sufficient allegations, however, from which Marcedo could be held personally liable for false imprisonment.  Erickson alleges that Marcedo was notified of her false detention and "did nothing," First Am. Compl. 44, filed three involuntary judicial admission petitions which were denied, *id.* at 45, and violated a duty to investigate Erickson's claims that she was wrongly being held against her will, *id.*  These facts do not make for a plausible claim that Marcedo "caused or procured" Erickson's restraint at Lake Behavioral Hospital, *Arthur*, 692 N.E.2d at 1243—the petitions were denied, so they did not cause Erickson's detention, and the other allegations show only a failure of Marcedo to take action.  The Court is not aware of any basis for holding Marcedo liable based on her inaction.

### 6.  Count XVI: Malicious Prosecution

In Count XVI, Erickson alleges that the civil action filed in state court by the City seeking abatement of the code violation and a right to enter Erickson's property was brought maliciously.  First Am. Compl. 46.  A federal malicious prosecution claim "is housed in the Fourth Amendment" so "the plaintiff . . . has to prove that the malicious prosecution resulted in a seizure of the plaintiff."  *Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025) (quotation

29

marks omitted).  Erickson does not allege that the civil action resulted in her being seized, so she cannot assert a federal malicious prosecution claim.

Even if the Court construes the claim as being one for malicious prosecution under Illinois common law, Erickson still fails to state a claim.  The elements of a common law malicious prosecution claim are: "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff."  *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990) (quotation marks omitted).  "[A] favorable termination is limited to only those legal dispositions that can give rise to an inference of lack of probable cause."  *Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1353 (Ill. 1997).  A dismissal solely on technical or procedural grounds does not give rise to a lack of probable cause.  *Id.* (citing 54 C.J.S. *Malicious Prosecution* § 54 (1987)).  The civil suit against Erickson was dismissed voluntarily by the City of Macomb without prejudice, Order Granting Mot. Dismiss, First Am. Compl. Ex. 4a, ECF No. 15-1 at 93, because Erickson "refuse[d] personal jurisdiction of the court."  *2025OV118*, Judici: McDonough Cnty., IL, https://judici.com/courts/cases/case_history.jsp?court=IL055015J&ocl=IL055015J,2025OV118,IL055015JL2025OV118D1 (last visited Jan. 27, 2026).  Because the civil suit was not dismissed in a way that creates an inference of lack of probable cause, Erickson cannot maintain an Illinois malicious prosecution claim.  Count XVI is DISMISSED for failure to state a claim.

### 7. Counts XVII, XVIII, XIX, XX, and XXI: Failure to Provide Due Process of Law

Erickson alleges that "Defendants" deprived her of liberty and property without due process of law in four distinct ways: 1) failing to provide notice before obtaining a warrant and

conducting a search of her property, *e.g.*, First Am. Compl. 49; 2) failing to provide notice before taking court action to enforce the municipal code, *e.g.*, *id.* at 49–50; 3) failing to provide impoundment documents after confiscating her service dog and Persian clowder, *id.* at 31, 38, 56; and 4) failing to provide reasonable accommodations for her hearing before the Zoning Board of Appeals, *id.* at 53–56.  To state a claim for a Due Process Clause violation, a plaintiff must allege (1) that she had a constitutionally protected liberty or property interest, and (2) that she was deprived of that interest without sufficient procedural protection.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  The amount of process due is determined by balancing a plaintiff's interest in the liberty or property deprived and the value of additional safeguards against the burden additional procedure would place on the government.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### a.  Failure to Give Notice Before Obtaining a Search Warrant

This claim is governed by the Fourth Amendment, not the Due Process Clause.  *See Smith v. Travelpiece*, 31 F.4th 878, 884–85 (4th Cir. 2022) ("Dressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment claim." (citing *Gerstein v. Pugh*, 420 U.S. 103, 125 n.27 (1975))); *City of West Covina v. Perkins*, 525 U.S. 234, 246 (1999) (Thomas, J., concurring in the judgment) ("[W]e have never before suggested that procedural due process governs the execution of a criminal search warrant.").  And the Fourth Amendment does not require "prior notice and hearing in connection with the issuance of search warrants."  *Zurcher v. Stanford Daily*, 436 U.S. 547, 567 (1978).  Erickson appears to believe that *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), stands for the proposition that precompliance hearings are necessary before an administrative search warrant may be effectuated.  First Am. Compl. 3, 51.  But that is not what *Patel* says.  At issue in *Patel*

was a Los Angeles ordinance providing that hotel operators must make their guest records

available to any Los Angeles Police Department officer for inspection. *Patel*, 576 U.S. at 413.

The Supreme Court characterized the ordinance as allowing for warrantless searches and held

that it was "facially unconstitutional because it fail[ed] to provide hotel operators with an

opportunity for precompliance review." *Id.* at 419. *Patel* is irrelevant because a warrant to

search Erickson's property was obtained. This claim is DISMISSED.

### b.   Failure to Provide Notice Before Taking Court Action

Erickson alleges that the City violated her due process rights by failing to provide her

with notice of suspected ordinance violations concerning property maintenance and zoning

before filing an action against her in court. *See* First Am. Compl. 50–51. She indicates that such

notice is required by the International Property Maintenance Code which was adopted by the

City in its local ordinances. *Id.* But "the Constitution does not require state and local

governments to adhere to their procedural promises." *River Park, Inc. v. City of Highland Park*,

23 F.3d 164, 166 (7th Cir. 1994). The Court has found no authority suggesting that the

Constitution requires a municipality to enforce its municipal code before commencing a civil suit

or to provide notice prior to initiating a civil action. This claim is DISMISSED.

### c.   Failure to Provide Impoundment Documents

Erickson complains that "Defendants" failed to provide her with impoundment

documents and notices "required by law following the seizure of her animals." First Am. Compl.

52. The laws she refers to are "the Illinois Animal Welfare Act, Animal Control Act, Illinois

Humane Care for Animals Act, and related statutes." *Id.* Again, the failure to follow state or

local law cannot itself form the basis of a due process claim. But the Due Process Clause does

require government officials to give notice of the manner by which an owner of seized property

32

might seek its return.  *See Perkins*, 525 U.S at 240 ("[W]hen law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return.").  Erickson alleges that she has never received "any impoundment documents" and that this has "deprived [her] of the necessary information to understand the basis of the impoundment, the condition and location of her impounded property, and the procedural steps available to contest the impoundment and seek the return of her property."  First Am. Compl. 58–59.  At this stage, the Court finds that Erickson has included enough allegations to proceed on a due process claim against those involved in the seizure of her animals: Hamer, Herrick, Welch, Hughes, and Rossmiller.  As Hamer is alleged to be a final policymaker for the City, the claim survives against the City too.

### d.  Failure to Receive a Fair Hearing before the ZBA

Erickson alleges that she was not provided reasonable accommodations for the hearing before the ZBA and, accordingly, she was deprived of the opportunity to participate in a hearing to pursue her appeal.  *Id.* at 53.  The accommodations at issue are the same as discussed with respect to the ADA claim.  Erickson also alleges that she was not informed of the issues or the "itinerary . . . to be discussed that pertained to her property."  *Id.*  The procedure due in zoning cases is typically minimal.  *See River Park, Inc.*, 23 F.3d at 166.  However, greater due process protections are provided when a zoning procedure is "adjudicative in nature."  *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 468 (7th Cir. 1988).  The appeal described in the First Amended Complaint is adjudicative in nature because the ZBA made a determination specific to Erickson's property and was enforcing, rather than creating, a generally applicable rule.  *L C & S, Inc. v. Warren Cnty. Plan Comm'n*, 244 F.3d 601, 604–05 (7th Cir. 2001) (finding relevant, for

the purposes of determining whether an action was legislative or adjudicative, "the generality and consequences" of the enactment and whether it operated purely prospectively or also sanctioned past conduct).  A hearing (generally pre-deprivation) is "the core principle of federal due process protections."  *Luster v. Village of Ashmore*, 76 F.4th 535, 538 (7th Cir. 2023).  In the context of other constitutionally mandated hearings, disability accommodations are necessary to satisfy due process.  *See, e.g.*, *Holmes v. Godinez*, 311 F.R.D. 177, 238–39 (N.D. Ill. 2015) (denying a motion to dismiss because issues of fact would determine whether an American Sign Language interpreter was necessary to protect inmates' due process rights in disciplinary proceedings).

The Court finds that, at this stage, Erickson has sufficiently alleged that the City violated her procedural due process rights by failing to provide her accommodations in conjunction with the ZBA hearing.  The claim can also proceed against Lambert, Scalf, Coker, and Inman because Erickson alleges that she made requests for accommodations to these Defendants and did not receive a response.  *See* First Am. Compl. 25, 48–49.

### 8.  Count XXII: Conspiracy to Falsify Medical Records

In Count XXII, Erickson asserts a claim for conspiracy to falsify medical records under 405 ILCS 5/2-601(c).  First Am. Compl. 59.  Presumably, Erickson means to refer to 405 ILCS 5/3-601(c) which states that "[k]nowingly making a material false statement in [a] petition [for involuntary admission] is a Class A misdemeanor."  But there is generally no private right of action for enforcement of criminal laws.  *See Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999) ("Criminal statutes, which express prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation, are accordingly poor candidates for the imputation of private rights of action.").  Illinois courts have declined to imply private rights of

action for similar statutes criminalizing fraudulent conduct. *O'Malley v. Adams*, 227 N.E.3d 800, 811 (Ill. App. Ct. 2023) (criminal forgery statute).

Even if the Court construed the claim as one for fraud under Illinois common law, Erickson would fail to state a claim for relief. A plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). That means a plaintiff must allege "the who, what, when, where, and how of the fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016). Here, Erickson alleges that Clemens and Herrick made false statements or misrepresentations about her in her medical records or in the petition for involuntary admission they filled out. *See* First Am. Compl. 59–63. But she does not allege with particularity who reviewed the statements and relied on them to cause Erickson harm. Essentially, the complaint does not allege the "how" of the fraud. This claim is DISMISSED.

### 9. Violation of Illinois Animal Welfare Act

Though Erickson does not explicitly bring a claim for violation of the Illinois Animal Welfare Act, 225 ILCS 605/1–605/22, she references it throughout the First Amended Complaint, asserting that the seizure of her animals violated the Act. *See, e.g.*, First Am. Compl. 35. But the Illinois Animal Welfare Act provides that anyone who violates the Act "is guilty of a Class C misdemeanor and every day a violation continues constitutes a separate offense." 225 ILCS 605/20. There is no private right of action for violation of this Act, so any asserted claim under the Illinois Animal Welfare Act is DISMISSED.

### V. Motion for Leave to File Second Amended Complaint and Motion for Leave to Correct Error in Second Amended Complaint

On November 17, 2025, while her motion for leave to file the First Amended Complaint remained pending, Erickson submitted a motion for leave to file another amended complaint,

attaching a proposed complaint running 139 pages and bringing thirty counts against a nearly identical set of more than six dozen defendants. *See* Proposed Second Am. Compl., Mot. Leave File Ex. 1, ECF No. 18-1. Her motion does not provide any detail about the difference between the First Amended Complaint and the proposed additional complaint. To the extent Erickson intended this additional complaint to further address the issues raised in the Court's October 3, 2025 Order, she provides no explanation for her failure to file the motion for leave to file until almost a month past the deadline for filing an amended complaint.

The Court DENIES the request for leave to file another amended complaint. If considering this under Federal Rule of Civil Procedure 15(a)(2), the Court concludes that justice does not require granting leave to file this amended complaint. Erickson's original complaint was dismissed because it was unduly long and confusing. *See* Oct. 3, 2025 Order 4–5. The new proposed complaint is even longer than the First Amended Complaint that the Court has already allowed to be filed and reviewed. And the proposed amended complaint was drafted without the benefit of the Court's merit review of the First Amended Complaint—there are many claims in the proposed amended complaint that the Court has dismissed in this Order. To the extent the Court considers the motion a belated motion for an extension of the October 21, 2025 deadline to file an amended complaint, Erickson does not identify any excusable neglect for her nearly one-month delay. Although the Court understands that Erickson suffers from disabilities that make it challenging to write quickly, she had already filed one motion for leave to file an amended complaint just one day after the deadline. And she filed two motions a week before filing the instant motion. *See generally* Mot. Reconsider; Mot. Accommodations. This litigation activity suggests that the extra time was not necessary. As the Court has denied leave to file the proposed second amended complaint, the motion to correct an error in that complaint is MOOT.

36

## CONCLUSION

For the foregoing reasons, Plaintiff Heidi Erickson's motion for leave to file a first amended complaint, ECF No. 15, is GRANTED. The Clerk is DIRECTED to file the First Amended Complaint, Mot. Leave to File First Am. Compl. Ex. 1, ECF No. 15-1, on the docket. Her motion to reconsider the Court's October 3, 2025 Order, ECF No. 17, is MOOT. Her motion for accommodations, ECF No. 16, is also MOOT. Her motion for leave to file a second amended complaint, ECF No. 18, is DENIED. Her motion to correct an error in her second amended complaint, ECF No. 20, is MOOT. After reviewing her First Amended Complaint, the Court allows the following claims to proceed against the Defendants identified according to the following table:

| Claim | Defendants |
|---|---|
| Replevin | McDonough County |
| ADA Discrimination | City of Macomb, V. Covington, LLC d/b/a Lake Behavioral Hospital, V. Covington Realty, LLC d/b/a Lake Behavioral Hospital |
| ADA Failure to Accommodate | City of Macomb |
| Fourth Amendment: Search | Jeff Hamer, Bryce Herrick, Miranda Lambert, Billy McMillin, John/Jane Doe officers, Lisa Scalf, City of Macomb |
| Fourth Amendment: Seizure of Property | Jeff Hamer, Bryce Herrick, Zack Welch, Wendy Hughes, Joe Rossmiller, City of Macomb |
| Fourth Amendment: Excessive Use of Force | Jeff Hamer, Bryce Herrick, John/Jane Doe officers, City of Macomb |
| Fourth Amendment: Seizure of Person | Jeff Hamer, Bryce Herrick, John/Jane Doe officers, Megan Clemens, City of Macomb |
| False Imprisonment: | Bryce Herrick, Megan Clemens, V. Covington, LLC d/b/a Lake Behavioral Hospital, V. Covington Realty, LLC d/b/a Lake Behavioral Hospital |
| Fourteenth Amendment Due Process: | City of Macomb, Jeff Hamer, Bryce Herrick, Zack Welch, Wendy Hughes, Joe Rossmiller, Lisa Scalf, Michael Inman, Scott Coker, Miranda Lambert |

All other claims and Defendants are DISMISSED.

**IT IS FURTHER ORDERED:**

1) This case is now in the process of service on the remaining Defendants: McDonough County, City of Macomb, V. Covington, LLC d/b/a Lake Behavioral Hospital, V. Covington Realty, LLC d/b/a Lake Behavioral Hospital, Jeff Hamer, Bryce Herrick, Miranda Lambert, Billy McMillin, Lisa Scalf, Zack Welch, Wendy Hughes, Joe Rossmiller, Megan Clemens, Michael Inman, and Scott Coker.  Plaintiff Heidi Erickson is advised to wait until counsel has appeared for the remaining Defendants before filing any motions so that Defendants have notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel have filed appearances will generally be denied as premature.

2) The Court orders the U.S. Marshal to serve Defendants McDonough County, City of Macomb, and Michael Inman.  Fed. R. Civ. P. 4(c)(3).  The Clerk is DIRECTED to prepare and issue summonses for the City of Macomb, Michael Inman, and McDonough County and forward them along with copies of the First Amended Complaint and this Order to the U.S. Marshal for service.  The U.S. Marshal shall serve the City of Macomb by delivering the summons, Order, and First Amended Complaint to the City of Macomb's Mayor Michael Inman or the city clerk in accordance with Federal Rule of Civil Procedure 4(j)(2) and 735 ILCS 5/2-211.  The U.S. Marshal shall serve Michael Inman with those documents pursuant to Federal Rule of Civil Procedure 4(e).  The U.S. Marshal shall serve McDonough County by delivering those documents to the chairperson of the McDonough County Board or the County Clerk in accordance with Federal Rule of Civil Procedure 4(j)(2) and 735 ILCS 5/2-211.

3) The Court will attempt to obtain waivers of service for the remaining Defendants. The Clerk is DIRECTED to update the below-identified notices of lawsuit and request to waive services of summons forms Erickson filed and send them along with two copies of the waiver of service of summons form (one of which is to be signed by Defendant or its counsel and returned to the Court within **sixty** days), a copy of the First Amended Complaint, and a copy of this Order to the addresses listed here or in the notices.  The notices can be found at the docket locations listed below.

   a.  For Scott Coker: ECF No. 4-13.

   b.  For Jeff Hamer: ECF No. 4-22.

   c.  For Bryce Herrick: ECF No. 4-24.

   d.  For Joe Rossmiller: ECF No. 4-33.

   e.  For Miranda Lambert: ECF No. 4-44.

   f.  For V. Covington Realty, LLC: ECF No. 4-48.  This is to be mailed to V. Covington Realty, LLC.'s registered agent C T Corporation System 208 S. Lasalle St. Suite 814 Chicago, IL 60604.

   g.  For V. Covington, LLC: ECF No. 4-49.  This is to be mailed to V. Covington, LLC's registered agent C T Corporation System 208 S. Lasalle St. Suite 814 Chicago, IL 60604.

   h.  For Megan Clemens: ECF No. 4-53.

   i.  For Zack Welch: ECF No. 30-6.

4) The Court was unable to locate proposed notices with mailing addresses for Wendy Hughes, Billy McMillin, or Lisa Scalf.  Erickson is DIRECTED to submit proposed notices of lawsuit and requests to waiver service of summons addressed to Hughes,

McMillin, and Scalf that include their mailing addresses.  These must be filed by
February 10, 2026.

5)  The Clerk is DIRECTED to terminate the following parties who are currently listed
on the docket as Defendants: Larry Adams, Julia Albarracin, Belinda Carr, Kali
Foxall, Julie Flynn, Brandon Nelson, Lorette Oden, Doug Rossio, Korri Cameron,
McDonough County Board, McDonough County Treasurers Office, Humane Society
of McDonough County, McDonough County Animal Shelter, Eric Blakely, Karen
Blakely, Bonnie Scripps, Dana Moon, Ken Durkin, Terri Hare, Amy Betz, J
Biernbaum, Dave Monninger, Felix Chu, Patti Douglas, Ann Stites, Jennifer Tibbitts,
Sharon Lindahl, Candice Biswell, Brian Waller, Brandi Baker, Savannah Ballard,
McDonough District Hospital, Bill Murdock, Patrick Osterman, Cindy Marcedo,
Heidi Benson, Gene Curtis, ReMax Realty, Amanda Silberger, Steven Silberger, and
Samantha Cameron.

6)  The Clerk is DIRECTED to email a copy of this Order to Erickson.

Entered this 27th day of January, 2026.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
