E-FILED
Wednesday, 28 January, 2026  09:18:43 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-cv-4136

HEIDI ERICKSON, *Plaintiff*

v.

MICHAEL INMAN, Et. Al., *Defendants*

City of Macomb, Michael Inman, Scott Coker, Lisa Scalf, Miranda Lambert, Billy McMillin; Jeff Hamer, Bryce Herrick, Korri Cameron; Officers Jane Doe #1-5, Officers John Doe #1-5, McDonough County, McDonough County Board, Larry Aurelio, Dustin Berg, Eric Blakeley, Karen Blakely, Eric Chapman, Clayton Cook, David Cortelyou, Mike Cox, Joe Erlandson, Craig Foster, Travis Hiel, Vicky Kipling, Michael Kirby, Ryan Litchfield, Terra Litchfield, Jack Lowderman, Clayton Murphy Jerry Raby, Jarad Royer, Terry Thompson, Dana Roy Walker;. McDonough County Treasurers Office, Humane Society of McDonough County, McDonough County Animal Shelter, Zack Welch; Wendy Hughes, Joe Rossmiller, Bonnie Scripps, Dana Moon, Ken Durkin, Terri Hare, Brandi Baker, Savannah Ballard, Amy Betz, J. Biernbaum, Candice Biswell, Felix Chu, Patti Douglas, Sharon Lindahl, Dave Monninger,  Ann Stites, Jennifer Tibbitts, Brian Waller, McDonough District Hospital, Bill Murdock, Patrick Osterman, Megan Clemens; V. Covington, LLC, *dba* Lake Behavioral Hospital, V. Covington, Realty, LLC, *dba* Lake Behavioral Hospital, Cindy Marcedo, Gene Curtis, REMAX Realty, Amanda Silberger, Steven Silberger, Samantha Cameron, Tina Belz, Kate Cobb, Carl Ervin, Susan Nash, Ron Runser, Western Illinois University, Kriste Mindrup, Darcie Shinberger, Heidi Benson,

## I. INTRODUCTION

1. In a community where trust should thrive, Heidi Erickson stands as a victim of grave injustices perpetrated under the guise of law enforcement and neighborly conduct. In rural small town Macomb, Illinois municipal leaders promote wildly discriminatory decisions with a unwavering belief that they are "unreviewable" totally departed from our Founding Father's and our core exceptional idealism of checks and balances, made to prevent the concentration of power in any one branch or individual.  Despite her lawful behavior and the protections supposedly guaranteed to her, Life, Liberty and the Pursuit of Happiness Ms. Erickson has been subjected to a series of harrowing and unwarranted actions by local authorities and individuals who have not only invaded her privacy but have seized her beloved property (sentient and real that she has been living with, delivered into this world and cared for since before they were born, for the last 13 years) without due cause, due process and while violating sacred rights we as citizens of the United States hold and cherish. These actions were not isolated incidents but part of a disturbing pattern of harassment that peaked with a profoundly troubling misuse of power on May 2, 2025, continuing through this month when on October 3rd, 2025 two things emerged evidently the 1st triggering the second: the 1st Chief Judge Sara Darrow dismissed Ms.Erickson Complaint written by a suffering victimized poor disabled *pro se* litigant fighting to stay above drowning from the extremes of homelessness while her body

1

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
25-cv-4136

deteriorates from the harms imposed on her by the Defendants deliberate indifference, discrimination based on her disability and retaliation for her protected activities and speaking out against the Defendants Inman[1] and City placing as it would be another knife in her back by announcing officially without properly setting forth a required notice of its Orders from the Zoning Board of Appeals, that flagrantly abusively and maliciously refused to provide a fair hearing conducted the most contemptuous, discriminatory misuse of power under the Seal of Illinois without the appellant-homeowner (Ms.Erickson) while once again ignoring her multiple requests for disability accommodations all left unanswered (no fair opportunity to a meaningful time and meaningful manner) from a municipality whose believes that their decisions are unreviewable not one member of the all appointed board ever asked where the Appellant was or why she wasn't here and all the while the City attorney failed to provide the board with Ms.Erickson's request to be heard, and prevented and/or deprived her of the right to present her case, cross-examine witnesses and present the evidence that supports her cause. The City propped up by it's partner, McDonough County. It's official actions are all part of the same nexus and scheme of the City's pattern, practice and policy of customs and habits connected to both reinforce the misconduct initiated and condoned by the Board's appointor Defendant Michael Inman but those who he relies upon in many cases his lawyer, Lisa Scalf as the curtain is drawn back revealing Scalf as the final policymaker for the entity. Whether the final policymaker is Scalf, Coker, Inman or all three herein the Plaintiff relies upon the US Supreme Court's finding in *City of Canton v Harris*, 489 US 378 (1989), and *City of St Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1989)). See *Pembaur*, 475 U.S. at 484-85 (holding a county prosecutor's decision to send the deputy sheriffs into a premises to get a witness constituted a county policy even though it occurred only once). discovery will bear this out and it more than likely, is, all three. The Supreme Court has held that in certain situations, the decisions or the acts of a final policymaker, even if only on a single occasion, may be attributed to the entity for liability purposes under Section 1983

2. Deliberate indifference to the City of Macomb's widespread pattern, practice and policy of ignoring complaining disabled constituents and/or Ms.Erickson since she has complained (protected activity) in this case Ms.Erickson since she has already complained (protected activity) and as a result is suffering the adverse effects of the retaliatory treatment ignoring her requests for reasonable accommodations. The City attorney in this case Defendant Scalf receives the emailed request from Erickson for a reasonable accommodations and Scalf returns her email and says that the new 'ADA Coordinator' is Scott Coker, the City Administrator and that all reasonable accommodations requests go through him, and to write to him directly. When Ms.Erickson does write and requests reasonable accommodations requests from Scott Coker, he simply responds that he is "out-of-the-office" forwarded back to Scalf who ignores Erickson. Erickson sends another reasonable accommodation request to Scalf and she once again ignores Erickson. A pattern, practice and policy of discrimination and retaliation shell game against Erickson depriving her access to a fair opportunity a fair hearing at a meaningful time in a meaningful manner. Therefore the constitutional injury

---

[1] Inman is no angel

1st AMENDED VERIFIED COMPLAINT                              *H. Erickson   v   M Inman*
                                                   *25-cv-4136*

Ms.Erickson suffers is caused by and is directly related to the City's actions to deprive Ms.Erickson a fair hearing or any opportunity.

3.  The City's failure to train Scott Coker to answer, manage and how to deal with a disability accommodations request and/or how to ensure a constituent with a disability is not denied a fair hearing a custom that is so perverse and long-standing that it has the force of law, was the moving force depriving Ms.Erickson from a fair hearing from a constituent caused the constituents injuries her disabilities and the widespread pattern of practices, policy was emailed a short few sentences that a hearing was conducted without her, despite her repeated requests for reasonable accommodations and attendance to present evidence, cross-examine witness and present the facts. The flagrancy of the lack of decency of fairness including notice and opportunity what the US Supreme Court held ten years ago in *LA v Patel*, 576 US 409 (2015) "Administrative Search Warrants are Unconstitutional and require a pre-compliance hearing" demonstrating once again the knowing constitutional violation in the face of well established law, the egregious lack of training issued by the City attorney who is in part a final policy maker, decided herself to completely ignore. Erickson multiple requests for disability related reasonable accommodations, was again denied same equal protections, discriminated against based on her disabilities and this followed her multiple protected activities requesting reasonable accommodations and was ignored, told to ask the ADA Coordinator Scott Coker, City Manager who *never* responded.  Coker flat-out simply refused to respond to Ms.Erickson's multiple requests and the Zoning Board Members owed a duty to Ms.Erickson the Appellant to ask a simple question where is Erickson, who had supplied the request for reasonable accommodations a fact that the each member who turned-a-blind-eye and ignored her requests as is the widespread pattern, practice and policy of ignoring disabled members of the public, because the policy makers of the municipality's deliberate indifference were appointed by the Mayor Inman to continued the unlawful conduct, condoned the as part of the discrimination and retaliation of the officials ratifying this unlawful conduct.

4.  On May 2nd 2025, without any legitimate basis, or a pre-compliance hearing before a neutral magistrate, as required see US Supreme Court in *LA v Patel supra*, an administrative search warrant was executed at Ms. Erickson's home, leading to the wrongful seizure of her beloved animals—all under false pretenses and misrepresented facts by Officer Bryce Herrick of the City of Macomb Police Department, where his Chief Jeff Hamer, stood insisting ~15 Officers force their way inside first by Herrick kicking-in Ms.Erickson's front door, and several uniformed officers rushing inside telling Ms.Erickson to stay there and get dressed. Her immediate response after pulling her headphones off was to "Leave, you are not allowed inside", again this was meet by 6-7 uniformed police, and Herrick throwing the new 70" long HDTV box across into the kitchen landing in front of Ms.Erickson's new stackable stainless steel washer & dryer. This anger from these officers was part of their hatred of older disabled educated woman like Erickson.  The local government entities interfered with Ms. Erickson's opportunity to received her federal benefit of enjoying her purchased property to the extreme and set out to interfere with Ms.Erickson's living in the way she found rewarding, comforting helped her thrive and cope, while enjoying and improving her property

5. This Administrative Warrant, based on erroneous, biased and misleading information found in Officer Herrick's Affidavit (Exh.1b), where several misrepresentations and outright perjured statements were made including at paragraphs #4, #5 and while those paragraphs that are based on 'Internet media stories' from over 15 years ago are inaccurate and misleading more importantly they are presented by affiant as facts are NOT, they aren't even based on Court records or Interviews of Law Enforcement Officers with first hand knowledge, they are figments of the imaginations of reporters or Internet bloggers whose realities and writings focus on attention grabbing references to allegations not facts and not Court records, by an alleged Professional licensed? Police Officer in the State of Illinois. Those stories were meant to sell advertising space not support a police officer's warrant request, and to allow this rather unusual police tactic and investigation the Chief of Police himself, its said in a media report of a personal interview of Hamer, that he insisted, endorsed an authorized a forced entry into Ms.Erickson's home on 5/2/25 and other dates and time. The are the facts that underline the lack and/or failure of supervision, necessary training and retaliatory discrimination that weren't making it into the reporter coverage of this beyond decency, outrageous and intolerable in a civilize society story that should never be allowed to occur to a older disabled, adult property owner who is complaining that her local police Chief is bias, and the training an supervision is evidently lacking authorizing rookie patrol Officers Herrick with 2-3 years experience to kick-in a senior home-owner's front door by a knowingly misrepresented and misleading the judge to authorize a Administrative Warrant to gather evidence of a crime is exactly how the first complaint described the ethical problems with the Mayor's leadership with half truths and misleading statements to his constituents and to attach a critical constituent unfair and unethical. WHILE this leadership of ignoring, using misrepresentations as to "not really a new tax to a well respected reporter with the public broadcasting is himself condoning the half-truths to those we are and/or should be able to trust as affiant without first-hand knowledge talked about conviction when there were no arrests or convictions and the animals were returned and/or otherwise unnecessarily euthanized without consent, court orders repeated defied, the evidence manipulated from the beginning. The use of an Affidavit as a tool not for justice but for personal vendettas, showcasing a blatant disregard for the truth, Hamer and Herrick outright attempts to mislead Judge Benson and rob her home and her dignity of Ms. Erickson.

6. Such repetitive and deliberate misconduct, endorsed by those sworn to uphold the law, underscores the urgent need for this Court's intervention to rectify the wrongs done to an innocent citizen and to restore her faith in the legal system that was designed to protect her. She stands here alone mainly because of the unusual elements and the location of these rural events but because of her tenacity and work writing through communications disabilities of dyslexia, while homeless and afraid where she will sleep her living arrangements are not stable as they use-to-be and the Defendants know this fragility as to her eligibility for the USDA's 502 program that requires that she not only is living in her home, but that her was qualified (40% of its participants to be qualified are in the "very-poor" category) making it nearly impossible and untimely to mount a defense while Defendants are intentionally interfering with her program benefits that no has no clear remedy outside this court's intervention. Ms.Erickson certainly fits that category which makes her highly fragile, easily

exploited by the defendants while suffering serious recognizable injuries to have the Honorable Court not in it's decision to dismiss her complaint based on the disabled writings of a suffering Complainant. Who is suffering directly because of the Defendants actions and inactions who are knowingly tortiously interfering with Ms.Ericskon's federal benefit, believe deeply that their municipal decisions are "unreviewable" harming her physically by secreting Ms. Erickson's therapy animals (sentient property).

7.  Ms.Erickson may have a Harvard education, while her defendants appear to have no conscious awareness of the civics involved herein and where probably missing those classes in high-school, their perceptions of current socio-legal obligations and their ethical responsibilities completely waning evidenced by a social work at the defendant Lake Bev.Hosp. who on or about May 15th, 2025 called Lambert on Ms.Erickson's behalf and ask her "why the City condemned Ms.Erickson's home" the immediate, complete and uninterrupted answer "because, of a lot of stuff, you know she's not 100% there". Nothing about the alleged unsanitary conditions, infestations, and or piled up dirtly laundry answering the only other question about whether there is any appeal opportunity – Lambert's answer : "no, no our decisions are unreviewable".

8.  The City & County resist inclusion of Ms.Erickson and retaliated against her based on age and disability in contradiction with the DOJ's enforcement of the ADA and Service Animals that apparently the McDonough County has a problem with since for over 6 months they have refused to recognize and authorized the seizure of Ms.Erickson's 5th verified Service Dog. In April, Ms. Erickson was a victim of multiple police harassments, requested FOIAs documenting same and requested the chief of Police to enforce a criminal trespass against her abutters Silbergers who refuse to stop interfering with Ms.Erickson' s new Service Dog and after she requested a waiver of its registration fees the City retaliated to rid itself of any inclusion of Ms.Erickson into the citizenry of Macomb, by violating her 4th Amendment protections, Due Process and equal protection rights. Ms.Erickson' s abutters Cameron, and the Silbergers have been jointly harassing Ms.Erickson while the Silbergers have been interfering with her property including her new Service Dog, a beautiful purebred English Setter, named Beautiful as if it were their right, they talk over her backyard and on three occasions probably others that were unwitnessed by Erickson herself throw their voices from the backyard to the Camerons on the west side of her backyard as if Ms.Erickson's backyard is there own. Its not only physically painful but it's emotionally painful to be completely disregarded the basic decency of privacy and the enjoyment of property lines.

9.  Ms.Erickson identified an adverse possession issue and served the Silbergers with a Cease and Desist Notice on 12/26/24. Ms, Erickson acquired her new Service Dog on 11/7/24 after waiting 15 years to finally have the opportunity to own an extremely well breed English Setter a breed exceptionally talented for being a Service Dog due to it's inherent ability to

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                              *25-cv-4136*

sense and sustain. With nearly daily and constant interferences from the Silbergers, since the weather has gotten better in March and April, not just once a week its nearly everyday they regularly trespassed no emails, no phone calls, and nothing in writing is so disturbing to the point Amanda is seen peeping in to Ms.Erickson's front windows. These interferences have negatively effected Beautiful's training and because its so regular and has became nearly a daily interference.  While sitting on her private front porch working on her >15 seedling trays answering questions from Steven Silberger on 4/18/25 Plaintiff advised him that the best why to work this out is to let a judge decision it and stated that the Silbergers had to go to court to resolve the issue on a adverse possession as there was no other clearly away to deal with the issues. She wasn't being mean she was being neutral, honest and open to suggestions, Steve is a professional Realtor certainly the issue is not new to him or unknown, at least he didn't say so and Ms.Erickson was being frank, as she had tried from the being asking him where she should plant the Cherry Trees and Arbor Viteas.  The obvious problem for the Silbergers is to keep out of Ms.Erickson's backyard, and  Ms Erickson is sensitive the fact they have lived here for some time, the Camerons moved in nearly the same time Erickson did with all her Persian Clowder and not until Ms.Erickson raises several complaints about the shared drive-way easement, their Great Dane's fecal matter and their feeding their new cat outside instead of keeping it inside their house it comes over with its friends in the neighborhood, other strays and sprays on Ms.Erickson's bushes, defecating in her garden. Even taking her unanswered and increasing hostility from the abutters, Ms.Erickson was forced to include Hamer and the Mayor, after Hamer ignored Erickson's Complaints (protected activity) Ms.Erickson's troubles with her abutters complaining about her indirectly, started only after she has no relief from Erickson's multiple requests for relief from City officials.

10. The events described herein and evidence of several serious deprivations of constitutionally protected rights but it also shows a pattern of practices and the aiding and abetting the Silbergers who have allegedly been granted a variance, without including Ms.Erickson's objections, in obvious defiance of a valid Cease and Desist Notice that Amanda Silberger, while laughing a Ms.Erickson for serving her said she showed it to and asked for advice from WIU's Officials, including them into the posturing of the Silberger, evidently condoning their continued trespassing. If Ms. Erickson would have been given an opportunity to opposed and be heard on the variance, which was not and it appears from the Herrick Police Report of 4/19/25 reporting his conversation with Steve Silberger that occurred on 4/18/25 immediately after Steve had spoken with me and now it appears he made false allegations about a stake that Ms.Erickson did not touch. She didn't approach and/or yell at Steve Silbergers he approached her while she was on her private front porch, that her suggestion was to file it in a court action and obtain a judges decision. Because

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                         *25-cv-4136*

legally the courts are addressing the adverse possession issue evidenced by the Illinois Supreme Court recently held one case a year for the last three years and finding that an adverse possession issue must be hostile, the property line in that condition for more then 20 years. Ms.Erickson's retaining wall was built in 1983 and has determined the new property line for more than 40 years of hostile possession!

11. Ms.Erickson was fraught with daily interferences with the training of her Service Dog and the use her back yard, which the Silbergers regularly trespassed therein to and damaging the 90 'dog trolly regularly.

12. Ms. Erickson's Protected activity is evidenced in the 13 emails (Exh.8)from before 4/23/25 to Defendant Chief Hamer and the adverse actions are these complained of actions and inaction resulting the City arbitrary and unlawful actions complained and described herein.

13. Plaintiff will present evidence to support the fact that Mayor Inman, a final policy maker, requested Hamer to advise Ms.Erickson that only a civil action in federal court to address the policing problems she complained about was necessary – is outrageous, allegedly also advised by the City attorney Scalf, a final policy maker who decisions to advice Herrick on his Affidavit, the ZBA on their decisions, and denial of a fair hearing, and her and Scott Coker's decisions to deny Ms.Erickson any response and the required interactive process to her multiple requests for a reasonable accommodation to attend and participate in the Appeal she requested of the ZBA.

14. Hamer refused to enforce Plaintiff's Cease & Desist Notice resulting in a Complaint to the Mayor of bias policing by Hamer, also discrimination and retaliation favoring his rookie police officers who repeatedly trespassing and harassing Ms.Erickson multiple dates in April 17, 22, 23, 28, 30 2025 on 11/08/24 and Cameron's block parking with her jeep and at times with her city issued squad SUV. But what this also shows is that with all this communications in emails to Hamer, the Mayor that there is no mention of odors, request for an inspection, inquiry as to the cats or dog absolutely nothing. Ms.Erickson is talking and the City and that is false, Herrick was planning on how he could aid and abet Steve Silberger's trespasses and support the City's discrimination and retaliation and attempts to get rid of her by tortous interference with her USDA 502 program benefit.

15. Ms.Erickson identified her Service Dog as a necessity for medical reasons and the County refuses to acknowledge it for six months, because they are in concert with the conspiracy with the City to retaliation and discriminate against Ms.Erickson based on disability and age

7

1st AMENDED VERIFIED COMPLAINT                                    H. Erickson   v   M Inman
                                           25-cv-4136

16. The University, WIU, is supporting a campaigned of biased defamatory and libelous reporting by Defendants Shinberger and Mindrup a grossly biased one-sided fictional story telling 'claiming it's news worthy and only reporting one-sidely but those reports are false. Shineberger failed to report on the serious discrimination and unfair processes of the ZBA and the City attacking a senior citizen who was complaining about training failures and evidenced bias. Community News is reporting so biasedly, unequal, one-sided when questions on how the McDonough Animal Shelter's expenses were so out of balance and overspent before Ms.Erickson's Persian Clowder arrived suspecting a wealthy animal rights activities provided funding in exchange for Ms.Erickson's false accusations and seizure of her animals. That is news worthy.

17. In 1998, Plaintiffs George Lane and Beverly Jones filed a lawsuit alleging that the State of Tennessee and twenty-five Tennessee counties were in violation of Title II of the Americans with Disabilities Act (ADA) by failing to ensure that the State's judicial program is accessible to individuals with disabilities. That case resulted in a historic victory at the United States Supreme Court in May 2004, affirming the right of persons with disabilities to seek damages from the government when it denies them access to the government's programs, services and activities. *Tenn v Lane*, 541 US 509 (2004) and also exposed that the Courts are blindly discriminatory.

18. Ms.Erickson attempted to avoid this law suit by the Defendants insisted on it by not only their evidenced unlawful actions but their resolve to believe that their actions are unreviewable in our society of checks and balances,

## II. JURISDICTION

**Subject Matter Jurisdiction**: This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims presented arise under the laws of the United States, including, but not limited to, 42 U.S.C. §§ 1983, 1988, 12101-12213, 12132,3601, and 29 U.S.C. § 794. Additionally, supplemental jurisdiction over any state law claims is conferred under 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

**Personal Jurisdiction**: This Court has personal jurisdiction over the defendants because the defendants are residents of, have conducted substantial business in, and have committed acts within the Central District of Illinois that give rise to the claims asserted herein. Furthermore, the defendants have sufficient minimum contacts with the Central District of Illinois such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.  Only three defendants reside outside the boundary of the ILCD

## III. PARTIES

**Plaintiff:**
Heidi K. Erickson, an individual, domiciled in the State of Illinois, with a mailing address of P.O. Box 482, Dekalb, IL 60115.

**Defendants:**

1. City of Macomb, a Illinois municipal corporation named City of Macomb employees identified herein. The City is liable for it's employees training discrimination, and discriminatory animus from it's Police Department, Office of Community Development, Dept of Transportation and Waste Management is liable for the wrongful conduct of it's employees The City's mailing address Macomb City Hall at 232 E. Jackson St. Macomb, IL 61455

2. McDonough County 110 N. Center St. Macomb, IL 61455 is a unit of government power overseen by board members (McDonough County Board) all members are listed herein as they are Defendants in that they all acting together are unlawfully holding Ms. Erickson's sentient property without consent, right and without due process of law against the laws and within the State of Illinois that the County Members consists, in part, of subunits of governmental offices for example McDonough County Sheriff's Offices, McDonough County State's Attorney's Office "ASA", McDonough County Animal Control, McDonough County Animal Shelter, McDonough County Treasurers Offices and McDonough County Clerk was/is at all relevant times the employer of the above listed Offices and Officers. Plaintiff will amend this Complaint when additional Defendants are identified, because Defendant McDonough County is responsible for paying any judgment entered against the McDonough County Defendants listed herein are employed by the McDonough County and all Board Members whether or not these parties were employees, appointed, approved, elected and/or volunteer participant on behalf of and for McDonough County Offices (Sheriff's Department, Animal Control, Animal Shelter, Humane Society, Treasurers and Clerks Office) and/or individual members of the McDonough County Board named herein this Complaints acted as agents or employees is liable for all torts committed by the individual and the department as a whole pursuant to the doctrine of *respondeat superior*.

3. Each and every individual Defendant, known and unknown, acted under the color of law and within the scope of their employment at all times relevant to this lawsuit. Each of the individual Defendants is sued in their official and individual capacity unless otherwise noted.

4. Michael Inman, is sued in his official and individual capacity, at all relevant times was Mayor of the City of Macomb acting under color of law and within the scope of his employment for the City. Defendant was the final policy maker, made training, hiring and firing decisions, as the chief policy enforcer not all inclusively under the theory of *respondent superior* owed a duty to Plaintiff and exacerbated, encouraged, perpetuated and ratified unlawful discrimination (based on disability and age) and retaliation by his employees was personally aware of the escalating problems and bad faith his decisions bore-out Chief Jeff Hamer, Inman condoned retaliation, formulated and implemented and/or ratified the unconstitutional, unlawful and outrageous policies referred herein.

5. Scott A. Coker, Macomb City Administrator, of 232 E. Jackson St. Macomb, IL 61455, is sued personally, officially and in his individual capacity, at all relevant times administered the day-to-day operations of the City of Macomb, overseeing the implementation of city policies and efficient

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

delivery of services to residents acting under color of law and within the scope of his duties owed to the Plaintiff and was allegedly the Cities ADA Coordinator for persons with disabilities seeking reasonable accommodations, failed to respond to any of Plaintiff's requests for reasonable disability accommodations and followed the Mayor's policy to ignore disability related complaints made to the City like Plaintiff's aa he failed to do so depriving Plaintiff of due process protections during the recent Zoning Board Hearing conducted without the Plaintiff on 9/24/25 is liable for the harms Plaintiff suffer(ed/s), and ineligible to a defense of qualified immunity. Coker is/was responsible for the professional management of city operations, hiring, training, supervising city staff including as a final policy maker for Scalf, Hamer, Lambert and others and as the policy maker formulated and implemented and/or ratified Inman's unconstitutional and unlawful policies referred to herein.

6. Lisa Scalf, City Attorney for the City of Macomb at 232 E. Jackson, St Fl.2, is sued personally in her individual and official capacity, at all relevant times acted willful, wanton and misrepresented facts so egregiously to have outright discriminated against the Plaintiff based on age and disability; violated due process requirements of the State of Illinois by advising both the Zoning Board members (herein listed) and City Manager Scott Coker (herein listed) to ignore Plaintiff's requests for access to the Zoning Board Hearing and thus discriminating (based on communications, disability and age) against Plaintiff and violating her Due Process rights to a fair hearing thus ratifying  the City's widespread policy and taking actions that Scalf knew or should have known injured the Plaintiff, was reckless and wanton and violated Plaintiff's rights. In addition, Scalf knew or should have known that Defendant police Chief and Officers receiving information so callous and wanton from Scalf herself the top attorney for the City that Erickson was being advised "to sue the City" ratified the method Inman's held to ignore the Plaintiff while the Police could and did bring about safety issue when they followed Scalf's advice she know could seriously injure Plaintiff was made in bad faith, with negligence and recklessly by her intentionally and as lead legal counsel responsible for the city's legal policy, implementation, enforcement and/or ratification of the unreasonable, discriminatory (based on age and disability) unconstitutional and unlawful policies referred to herein acting under color of law and within the scope of her employment for the City owed a duty of care to Plaintiff.

7. Jeff Hamer, of 120 South McArthur St. Macomb, IL 61455 at all relevant times was Chief of the City of Macomb Police Department and within the scope of his employment acting under color of state law, owed a duty of care to the Plaintiff, conspired to take Plaintiff's property under a ruse, and fraud and participated in the misconduct and schemes alleged in this Complaint and also facilitated, condoned, approved, and turned a blind-eye to the misconduct of the Defendants whom he supervised (a not all inclusive to knowingly condoning perjury committed by an officer Herrick and Officer K. Cameron, under his supervision, Hamer also knew or should have known the perjury was being misrepresented by Herrick for unlawful purposes and was made to appear to be misrepresented Judge Heidi Benson, and condoned the unlawful arrest of Plaintiff and the unlawful transportation when there was no valid signature of a judge on the Petition For Involuntary Judicial Admission of Plaintiff to Lake County . Hamer knew or should have known Herrick knowingly filed and

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v  M Inman*
                          *25-cv-4136*

misrepresented facts in Affidavit Herrrick in order to obtain an Administrative Search Warrant from Judge Heidi Benson, to gather evidence for Herrick's criminal investigation of Plaintiff, issued an Order and a Administrative Search Warrant Hamer knew or should have known was intended for the purposes to fabricate the false inculpatory evidence against Plaintiff. Hamer condoned and participated in the above mentioned police misconduct and conspired with Herrick and the other Defendants herein to secure a unreasonable warrant (knowingly unconstitutional), the fabrication of a City Condemnation action, and knowingly encouraged his officers to whom he supervised to perjure and/or turn-a-blind-eye to the conspired and illegal tactics being employed in a manner as a policy, custom and widespread practice to harm, injure and discriminate based on disability and age harming the Plaintiff by other law enforcement officers and employees of the City of Macomb and County of McDonough, so that they themselves where acting to uphold an ill-conceived and unlawful 'code-of-silence' in order to secure Plaintiff's false arrest, imprisonment and prolonged institutionalization by aiding and abetting his officer Herrick's filling a known perjured documents and failing his duty owed to the Plaintiff to charge the crime committed by Steve Silberger (crime of Criminal Trespassing). The Plaintiff complained to Hamer in March 2025 and April 2025 that Silbergers trespassed on to Plaintiffs property after she had served them with a Cease and Desist Notice, interfered with Plaintiff's Service Dog (as defined Americans with disabilities Act) Illinois laws make it a crime to interfere with a Service Dog's training and/or relaxation, Hamer's bias, discriminatory and inappropriate actions and inactions caused severe distress and harm that resulted in the interference with Plaintiff's Service Dog's training; and emboldened the Silbergers to continue to harass Plaintiff. and Camerons evidenced his unprofessional bias policing, his encouragement of misconduct from his employees he supervised and the damages Ms.Erickson has suffered. He personally knew or should have known the aforementioned conduct was illegally conspired, was malicious, false and fabricated misrepresentations he condoned and encouraged. Hamer is sued in his official, personal and individual capacity.

8. Bryce Herrick, 120 South McArthur Street, Macomb Police Dept., Macomb, IL 61455 at all relevant times a patrol officer acting under color of law perjured himself by attesting to and misrepresenting facts in two documents requiring truth and honesty (Affidavit and a sworn Petition) posing as a 'code official', acting under color of state law for the City of Macomb, Illinois, owed a duty of care to the Plaintiff conspired to take Plaintiff's property under a ruse (a fabricated Condemnation action) and knowingly perjured himself in order to secure Plaintiff's imprisonment and prolonged institutionalization by filling a known perjured Petition knew or should have known was illegally conspired. Is sued in his official, personal and individual capacity.

9. Korri Camerom, 120 South McArthur Street, Macomb Police Dept., Macomb, IL 61455 was at all relevant times a police officer employed by the City, acting under color of law and as such conspired with the Defendants to take Plaintiff's property, exploit, harass, block and interfere with easement access created in the deeds between the parties "requiring unobstructed access to a shared driveway to Hickory Grove and Glenwood Parkway" as stated by Realtor Gene Curtis. Defendant K Camaron is sued in her personal, individual, and official capacity, and is an abusive abutter of Plaintiff,

exploiting Plaintiff based on age and disability, discriminating against Plaintiff based on age and disability, colluding and conspiring with Officers Herrick, Chief Hamer, and Mayor Inman and others, resides at 12 Hickory Grove, IL 61455.

10. Samantha Cameron, was at all material times an abusive abutter neighbor of Plaintiff, residing at #12 Hickory Grove in Macomb, IL with her partner K. Cameron, and as such conspired with the Defendants to take Plaintiff's property, exploit, harass, block and interfere with the conditions of the easement and access to it created in the deeds between the parties requiring unobstructed access to a shared driveway to Hickory Grove and Glenwood Parkway. Defendant S. Camaron is sued in her personal, and individual capacity colluding and conspiring with her partner K. Cameron and Officers Herrick, Chief Hamer, Mayor Inman and Amanda Silberger including others identified as Jane and John Doe.

11. Defendants John Doe #1-#5 120 South McArthur Street, Macomb Police Dept., Macomb, IL 61455 was at all relevant times police officers acting under color of law employed by the City of Macomb Police Dept, Illinois. Defendants John Doe #1-5 are sued in their individual capacity. Their names will be added when the defendants identify said names or/are provided with Rule 26.1a disclosures are reciprocated and their names are revealed.

12. Defendants Jane Doe #1-#5 120 South McArthur Street, Macomb Police Dept., Macomb, IL 61455 was at all relevant times a police officer acting under color of law employed by the City are sued in their individual capacity. Their names will be added when the defendants identify same in Rule 26.1a disclosures are reciprocated and their names are revealed.

13. Eric Blakeley resides at 8400 N 1250th Rd. Colchester, IL 62326 is sued in his individual and official capacity.at all relevant times the County Board Chair to the McDonough County Board who has executive control over the operations of the County, McDonough County Animal Control and it's Officers, and it's Animal Shelter, Humane Society of McDonough County, and husband to Karen Blakeley the veterinarian who is responsible to Ms.Erickson regarding her part in treating Ms.Erickson's sentient property and failing to disclosure any impoundment of said sentient property listed herein; acting thereunder the color of law, in custody and control over Plaintiff's therapy animals, respectively they hold the control over the day-to-day operations of the Animal Shelter and the animals it controls and is holding without right, Ms.Erickson beloved sentient property in violation to the laws in Illinois, in cooperation with the City of Macomb

14. Karen Blakeley, resides at 8400 N 1250th Rd. Colchester, IL 62326 is sued in her individual, and official capacity. Wife of the Chairman of the McDonough County Board they both oversee the day-to-day operation of the McDonough County Animal Shelter and it's Officers, agents, volunteers and fosters where Ms.Erickson's sentient property is located and is responsible to Ms.Erickson for the condition of Ms.Erickson's sentient property oversees the Animal Control Officers, is hired by same

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                 *25-cv-4136*

and is treating Ms.Erickson's sentient property without authority, consultations and has stated enormous bias and distortions of medical records.

15. Ken Durkin 1 Courthouse Sq. Macomb, IL 61455 is at all relevant times a Member of the McDonough County Board and the Law & Legal Committee, as such has control over and custody of Plaintiff's Therapy Animals holding them against her rights; implements policy and control over Animal Control officers listed herein; over the Animal Shelter and Humane Society acting under color of law for the County is/was "directly responsible for waiver(s) of County fees for dog registration(s) and as a direct and consequential response to Plaintiff's request for a waiver for her Service Dog the County conspired with the City employees, not all exclusive to Hamer, Herrick, Cameron. Defendant Moon (County Treasurer) and other County Board, Animal Shelter and Humane Society "Members", acted in concert and conspired in retaliation encouraged unlawful conduct including but not limited to: perjury by Defendant Herrick, the code of silence theory amongst local law enforcement officers, shelter and Society staff, volunteers, and others who are holding Plaintiff's Therapy Animals against the laws in the state and federal government owed a duty of care to Plaintiff is sued in his personal, official and individual capacity

16. Joe Erlandson, 15715 N. 1300th Rd. Macomb, IL 61455 is at all relevant times a Member of the McDonough County Board and it's Law & Legal Committee, as such implements policy and control over the Animal Control officers listed herein below; and over the Animal Shelter and Humane Society acting under color of law for the County and holding custody of Plaintiff's Therapy Animals and Service Dog against the rights of the Plaintiff is sued in his personal, official and individual capacity

17. Zack Welch, employed at the McDonough County Animal Shelter, 101 Tower Rd. Macomb, IL is at all relevant times an Animal Control Officer acting under color of law for the County of McDonough, IL., and for the Counties Animal Shelter, Humane Society and conspired with the City of Macomb, Illinois, owed a duty of care to the Plaintiff conspired to hold Plaintiff's Service Dog, and Therapy Animals against the rights of Plaintiff is sued in his individual capacity

18. Wendy Hughes employed at the McDonough County Animal Shelter, 101 Tower Rd. Macomb, IL is at all relevant times an Animal Control Officer acting under color of law for the County of McDonough, IL., and for the Counties Animal Shelter, Humane Society and conspired with the City of Macomb, Illinois, owed a duty of care to the Plaintiff conspired to hold Plaintiff's Service Dog, and Therapy Animals against the rights of Plaintiff is sued in his individual capacity

19. Joe Rossmiller employed at the McDonough County Animal Shelter, 101 Tower Rd. Macomb, IL is at all relevant times an Animal Control Officer acting under color of law for the County of McDonough, IL., and for the Counties Animal Shelter, Humane Society and conspired with the City of Macomb, Illinois, owed a duty of care to the Plaintiff conspired to hold Plaintiff's Service Dog, and Therapy Animals against the rights of Plaintiff is sued in his individual capacity

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

20. Miranda Lambert is/was at all relevant times an "Official" in the Office of Community Development posing as a IPMC 'code official', not licensed in the State of Illinois, as the Illinois Home Inspection Act "requires" of anyone conducting "a home inspection" acting under color of state law for the City of Macomb, IL, owed a duty of care to Plaintiff deprived her and conspired to take Plaintiff's property under a ruse (a fabricated Condemnation action) 1st by depriving Plaintiff of due process and the requirements of the International Property Maintenance Code, IPMC did not have authority to enforce the Codes and/or Ordinances in the manner Lambert attempted maliciously, wantonly and should have known but due to the lack of training committed said acts under the Mayor's unlawful demands, fraudulently and was illegally conspired and had gross deficiencies in training and implementation. Is sued in her official, personal and individual capacity.

21. Billy McMillen is/was at all relevant times a unlicensed home inspector unlawfully conducting housing inspections in violation to the Home Inspector Act claiming to be a "Rental Housing Inspector" posing as a 'code official' acting under color of state law for the City of Macomb, Illinois owed a duty of care to the Plaintiff conspired to take Plaintiff's property under a ruse (a fabricated Condemnation action) McMillen knew or should have known was illegally conspired. Is sued in her official, personal and individual capacity.

22. Bonnie Scripps, , President of Board of Directors for the Humane Society of McDonough County and it's Animal Shelter (McDonough County Animal Shelter), operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations threat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") the actions thereof made illegal by federal and state laws against the rights and protections held by the Plaintiff, owed a duty of care to the Plaintiff at all material times herein acting under the color of law together with the City of Macomb, Illinois, is sued in her official, personal and individual capacity.

23. Dana Moon, 1 Courthouse Square, Macomb, IL 61455 Office of the County Treasurer, McDonough County; also Vice President of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations threat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") conduct made illegal by federal and state laws against the rights and protections held by the Plaintiff, owed a duty of care to the Plaintiff at all material times herein acting under the color of law together conspired with the City of Macomb, Illinois, knowingly perpetuated a perjured Affidavit Herrick and is the County Treasurer who refused to register Plaintiff's Service Dog, relying upon a conspiracy with Defendants Herrick, and Durkin is sued in her official, personal and individual capacity.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*

*25-cv-4136*

24. Terri Hare, Treasurer of Board of Directors for the Humane Society of McDonough County and it's Animal Shelter (McDonough County Animal Shelter), operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws and against those rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, owed a duty of care to the Plaintiff is sued in her personal and individual capacity.

25. Amy Betz, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, owed a duty of care to the Plaintiff is sued in her personal and individual capacity.

26. J.D. Biernbaum of Seal Hall, 131 1 University Circle Macomb, IL 61455, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455 is in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property and Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA" the Illinois Humane Animals Act, the Illinois Animal Welfare Act, the Illinois Animal Shelter Act and the Fair Housing Act "FHA") Defendants' position as a member makes these acts taken against a disabled member of the community more egregious since this Defendant was entrusted by the community to know and act accordingly to the laws his actions and inactions made illegal by federal and state laws against the rights and protections held by Plaintiff, at all material times herein Defendants acting alone and together under the color of law conspiring with the City of Macomb, Illinois, Defendants owed a duty of care to the Plaintiff is sued in it's personal, official and individual capacity.

27. Dave J. Monninger, 812 E. Piper St. Macomb, IL 61455; Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                    *25-cv-4136*

of Macomb, Illinois, owed a duty of care to the Plaintiff is sued in his personal and individual capacity.

28. Felix Chew, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, owed a duty of care to the Plaintiff is sued in his personal and individual capacity.

29. Patti Douglas, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, owed a duty of care to the Plaintiff is sued in her personal and individual capacity.

30. Ann Stites, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property Therapy Animals and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, owed a duty of care to the Plaintiff is sued in her personal and individual capacity.

31. Jennifer Tibbitts, neighbor of Plaintiff, and Member of Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations thereat - are holding against the rights of the Plaintiff her sentient property Therapy Animals, and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois.

32. Sharon Lindahl, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                          *25-cv-4136*

and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations threat - are holding against the rights of the Plaintiff her sentient property and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, is sued in her personal and individual capacity.

33. Candice Biswell, Member of Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations threat - are holding against the rights of the Plaintiff her sentient property and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws against the rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, is sued in her personal and individual capacity.

34. Brian Waller, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations threat - are holding against the rights of the Plaintiff her sentient property and Service Dog (as defined by the Americans with Disabilities Act "ADA") made illegal by federal and state laws and those rights and protections held by the Plaintiff, at all material times herein acting under the color of law together with the City of Macomb, Illinois, is sued in his personal and individual capacity.

35. Brandi Baker, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations threat - are holding against the rights of the Plaintiff her sentient property and Service Dog (as defined by the Americans with Disabilities Act "ADA") controlling made illegal by federal and state laws against the rights and protections held by owner Plaintiff, at all material times herein acting under the color of law with City of Macomb,IL, is sued in her personal and individual capacity.

36. Savanna Baker, Member of the Board of Directors for the Humane Society of McDonough County and it's Animal Shelter, operating under the Illinois Animal Control Act providing a public health and welfare function for the County located at 101 East Tower Road Macomb, IL 61455, in control of the operations threat - are holding against the rights of the Plaintiff her sentient property and Service Dog (defined Americans with Disabilities Act "ADA") controlling made illegal by federal and state laws against the rights and protections held by Plaintiff, owner at all material times herein

acting under the color of law together with the City of Macomb, IL, is sued in her personal and individual capacity.

37. McDonough County Hospital District *dba* McDonough District Hospital, a Illinois Municipal Corporation established in 1955 as one of 21 district hospitals, located at 525 E.Grant St. Macomb, IL 61455, is also known as healthcare provider is sued in it's official/professional capacity under color of state law as it breached the standard of care, condoned malpractice and fraud, the intentional issuance of fraudulent medical records and intentional infliction of emotional distress.

38. Bill Murdock, CEO of McDonough District Hospital, 525 E.Grant St. Macomb, IL acting under the color of law, is sued in his official and individual capacity, breached the standard of care, breached a duty in failing to train and provide qualified medical professionals especially in a critical care setting of the emergency room.

39. Patrick Osterman, VP Business Strategy McDonough District Hospital, 525 E.Grant St. Macomb, IL aka FOIA Official, acting under the color of state law, is sued in his official and individual capacity breached the standard of care, owed a duty to the Plaintiff and failed to properly train employees, turned a blind-eye to inadequacies in the treatment and care Plaintiff, concealed evidentiary surveillance recordings of the ER's numerous cameras.

40. Megan Clemens, employee of McDonough District Hospital, 525 E.Grant St. Macomb, IL acting under the color of law, is sued in her individual, and official capacity breached the standard of care, she committed fraud, owed a duty to the Plaintiff and was negligent, failed intentionally and committed malpractice and caused foreseeable injuries to the Plaintiff.

41. V Covington, LLC *dba* Lake Behavioral Hospital, 2615 Washington St., Waukegan, IL 60085 "Covington"; acting under color of law, is sued in its individual and official capacity breached standard of care, committed malpractice and at all times owed a duty of care to the Plaintiff. Covington Realty owns and Covington operates a medical campus known as Lake Behavioral Hospital.

42. V Covington, Realty LLC, LLC *dba* Lake Behavioral Hospital. 2615 Washington St., Waukegan, IL 60085 "Covington Realty", acting under color of law, is sued in its individual and official capacity breached standard of care, committed malpractice and at all times owed a duty of care to the Plaintiff. Covington Realty owns and Covington operates a medical campus known as Lake Behavioral Hospital.

43. Cindy Demarco, CEO of V Covington, LLC *dba* Lake Behavioral Hospital, 2615 Washington St., Waukegan, IL 60085; acting under the color of law, is sued in her individual and official capacity breached the standard of care, committed malpractice and at all times owed a duty of care to the Plaintiff. Covington Realty owns and Covington operates a medical campus known as Lake Behavioral Hospital.

1ˢᵗ AMENDED VERIFIED COMPLAINT                                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*

44. Gene Curtis, is a licensed real estate broker in the State of Illinois, his office is located at 925 E. Jackson St. Macomb, IL 61455 *dba* RE/MAX as such he is the owner and managing broker provided false and misleading information, Gene[2] conspired with had a fiduciary duty owed to Plaintiff on the sale of 13 Hickory Grove Macomb, IL is sued in his professional/official, and individual capacity.

45. RE/MAX owned by Gene Curtis (see *fn* 1) a Unified Broker is a Licensed and registered Real Estate broker in Illinois (central Illinois) and is being sued for breaches of contract, fiduciary duty in his professional, official, and individual capacity located at 925 E. Jackson St. Macomb, IL.

46. Tina J. Belz, 232 E. Jackson St. Macomb, IL 61455, member of the City of Macomb Zoning Board of Appeals, discriminated against the Plaintiff (discrimination based on her disability and age) deprived Plaintiff of both her federal and state constitutionally protected due process rights, depriving Plaintiff a fair hearing, and an opportunity to be heard, cross-examine complaining and present her own witnesses and otherwise denied her a fair hearing against the laws of the United States and Illinois

47. Kate Cobb, 232 E. Jackson St. Macomb, IL 61445, member of the City of Macomb Zoning Board of Appeals, discriminated against the Plaintiff (discrimination based on her disability and age) deprived Plaintiff of both her federal and state constitutionally protected due process rights, depriving Plaintiff a fair hearing, and an opportunity to be heard, cross-examine complaining and present her own witnesses and otherwise denied her a fair hearing against the laws of the United States and Illinois.

48. Carl Ervin, 232 E. Jackson St. Macomb, IL 61455 member of the City of Macomb Zoning Board of Appeals, discriminated against the Plaintiff (discrimination based on her disability and age) deprived Plaintiff of both her federal and state constitutionally protected due process rights, depriving Plaintiff a fair hearing, and an opportunity to be heard, cross-examine complaining and present her own witnesses and otherwise denied her a fair hearing against the laws of the United States and Illinois.

49. Suzan Nash, 232 E. Jackson St. Macomb, IL 61455 member of the City of Macomb Zoning Board of Appeals, discriminated against the Plaintiff (discrimination based on her disability and age) deprived Plaintiff of both her federal and state constitutionally protected due process rights, depriving Plaintiff a fair hearing, and an opportunity to be heard, cross-examine complaining and present her own witnesses and otherwise denied her a fair hearing against the laws of the United States and Illinois

---

[2] "If two or more persons * * * conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * [and in any case of such conspiracy] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right of privilege of a citizen of the United States, the parties so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3)

1st AMENDED VERIFIED COMPLAINT                              *H. Erickson   v   M Inman*
                                    *25-cv-4136*

19

50. Ron Runser, 141 Pam Lane Macomb, IL 61455 member of the City of Macomb Zoning Board of Appeals, discriminated against the Plaintiff (discrimination based on her disability and age) deprived Plaintiff of both her federal and state constitutionally protected due process rights, depriving Plaintiff a fair hearing, and an opportunity to be heard, cross-examine complaining and present her own witnesses and otherwise denied her a fair hearing against the laws of the United States and Illinois.

51. Western Illinois University, a Illinois corporation at I University Circle, Macomb, IL

52. Susan Mindrup, President in her Official and Individual capacity.

53. Darcy Shineberger, 415 S. McArthur St. Macomb, IL in official, individual and personal capacity.

54. Heidi Benson, Judge for the Ninth Judicial Circuit Court of Illinois, in her administrative duty to review the filing entitled Return of Administrative Search Warrant, filed 5/14/25 in case and ensure the content of same held the executing officer accountable for items seized required to be contained in the missing Inventory and noting that Her (Judge Benson's) Administrative Warrant scope excluded the seizure of the sentient property taken beyond the scope of Her warrant

## IV. GENERAL ALLEGATIONS

1. To state a cause of action under Section 1983, it must be alleged that the acts of which complaint is made were actions taken under color of state law.[2] It must involve a misuse of power, possessed by virtue of state law and made possible because of the authority thereby vested in the alleged wrongdoer. *Monroe v. Pape*, 365 U.S. 167, 183-187, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961). "Color of state law" has been equated with the term "state action" within the context of the Fourteenth Amendment. *United States v. Price*, 383 U.S. 787, 794, n. 7, 86 S. Ct. 1152, 16 L. Ed. 2d 267 (1966).

2. Before the turn of the 19th century, the United States Supreme Court observed that "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 269 (1990) (quoting *Union Pacific R. Co. v. Botsford*, 141 U.S. 250, 251 (1891)). This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment. *Id.; see also*, *Mills v. Rogers*, 457 U.S. 291, 294, n.4 (1982) ("The right to refuse any medical treatment emerged from the doctrines of trespass and battery, which were applied to unauthorized touching by a physician"). For this reason, an equivalent claim is for common law trespass. *Pratt*, 118 Ill.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                              *25-cv-4136*

App. at 181. "[I]t is elementary that for any trespass on the person, some damages are inferred by the law." *Pratt*, 118 Ill. App. at 173.

3.  In *Leopold v. Levin*, 45 Ill. 2d 434, 440-41 (1970), the Illinois Supreme Court held that "[p]rivacy is one of the sensitive and necessary human values and undeniably there are circumstances under which it should enjoy the protection of law." In *Leopold*, the Court referred to the right of privacy as one recognized many years ago and "described in a limited fashion by Judge Cooley with utter simplicity as the right 'to be let alone.'" *Id*. at 440 see also Warren and Brandis published in the Harvard Law Review in 1890/. This right also protects a individual from unwarranted publicity where as in herein the Plaintiff is forced into the public spot-light in extremely slanderous and defamatory means the harm from the unwanted exposure and influence of the jury in this civil lawsuit.

4.  In the refusal of medical treatment context, like what is described in this 1st Amended Verified Complaint, Ms.Erickson, the presumed patient, desires to be left alone, and the Defendant Hospitals, literally hungry for a insured patient covered by two government guaranteed insurance policies keeps her against her will in order to rake-in Medicare and Medicaid dollars may be subject to liability for disregarding Ms. Erickson's expressed lack of consent she clearly and unequivocally stated multiple times but was ignored by both Hospital Defendants McDonough County herein "MDH" widespread pattern, practice and policy occurring in a small town in western Illinois and those deliberate indifferences at Lake Behavioral "Lake" holding Ms.Erickson against her will because, as Defendant Cindy Demarcedo and two other Lake employees attended (Social workers) Investigator Brunner's meeting. Brunner from the Dept on Aging, conducted a "investigatory meeting" on or about May 27th or 28th 2025 where he asked Ms.Erickson, one question, her answer short and concise 'asking him to obtain the evidence from the surveillance cameras of the MDH ER' that would answer his question. Mr. Brunner said he would ask MDH "tomorrow". And shortly thereafter within days, possibly by June 1st, 2025 Mr. Brunner retired. Ms.Erickson believes Mr. Brunner was not that much over 50 and his retirement not surprising, although concerns of what he found or what influenced him to retire upon asking for in the discovery in one of his cases for a common request of surveillance recordings, that established Ms.Erickson was held against her will illegally and confirmed her story that she was detained by Officer Herrick, nurse Clemons and Lake unlawfully. Furthermore, Demarcedo answering Ms.Erickson's demand to be released immediately, right now. Stated "I can't just let you roll out with the wheelchair and go down the street or down the sidewalk" Ms. Erickson's response "Yes, you can, it's my right to live independently." All Lake's Petitions have been denied and the only signature you have is the one where you threatened and coerced me with injections, unlawful chemical restraints -see right there my signature followed by "under-duress", I signed it but only under duress its

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                                  *25-cv-4136*

coerced and not valid.. see right there with the added words "under duress" next to my signature. Mr. Brunner looked closely at my signature and said, I see that you did sign it with the added "under duress". I followed up and said that "makes my signature coerced, invalidating the consent." There was absolutely no danger to me if I push my wheelchair down the sidewalk or get into the next available bus, or Uber. The danger to me is being here!"  "*No, I can't let you go because you would be pushing the wheelchair all by yourself and we just can't let you do that*." Ms.Erickson, stated: "I am independent, I have lived most of my entire life independently, I have the arm strength and I have a right to live independently – with my Persian cats and a service dog you are unlawfully holding me against my will and those laws in Illinois" Defendants response entirely diverts the blame upon Ms.Erickson's use of a wheelchair and is therefore discriminatory because her use of a mobility device for her disability(arthritis) is a coping strategy for arthritis and because she uses a wheelchair for her arthritis is no justification for an involuntary hold although it is a pretext for **discrimination** based on disability. Defendants Lake, Marcedo and Covingtons' previously filed three or more separate Petitions and each were denied by Judge Bishop, the failure of Lake Defendants to release

5. Plaintiff is more valuable as a billing hostage, probably until November 1st, 2025 Ms.Erickson asked Lake's head of Accounting who is responsible for billing Illinois and others what the average cost of billed per diem the response was for her room charges the answer  " ~$3000 a day" Ms.Erickson's 2025 Google search revealed "IPF Inpatient Psych Facilities" Psych Per Diem rate is $876.53 x 31(days) = $27,172.43 for the 31 days Lake apparently charged due to the **false imprisonment (loss of right to liberty and due process)**. I believe the Defendants should reimburse the payments from May until the judgment and not just the entire stay from May 2nd through June 3rd 2025, this entire detention of more then 6 months and denied and tortious interferences in a great USDA program.is much less costly for everyone then those charges to Medicare and Medicaid.

6. Wilson's procedural due process claim, however, the district court found that the defendants were not entitled to qualified immunity. Relying on *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), the district court found that Wilson has alleged a deprivation of a clearly established constitutional right of which a reasonable person would have known. The defendants appeal from that decision.

7. On multiple occasions during the summer of 2024, Plaintiff was subjected to harassment by her abutting neighbors Korrie and Samantha Cameron Korrie Cameron is a patrol officer with the City of Macomb Police Dept., on numerous dates and in between the times it didn't rain (marked in her now unavailable calendar) Ms.Erickson would find very large piles of dog excrement and cat feces in her

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                              *25-cv-4136*

garden. Specifically based on the extra large size of the excrement piles and because she has witnessed many of the actual deposits by Korrie and Sam's dog (a Great Dane named Summit) Ms.Erickson complained to both Samantha and Korrie on many dates between April 2024 and September 2024 (still trying to be neighborly but those personal complaints feel on deaf ears) until Summit came up on her private front porch and broke open a 3lb ~$21.Chuck Roast immediately after it had been delivered. Ms.Erickson took pictures and asked Samantha to replace or refund her costs, and while there with Samantha Ms.Erickson also pointed out that there was a current large pile she saw Summit drop and that she would like if Samantha would pick it up. Samantha said of course but asked for the roast 1st. Ms.Erickson complied and brought over the roast and noticed Summit's pile was still there. After more than 10 days past without any replacement roast, Ms.Erickson grew concerned and waited for the Camerons to return. She was on her porch gardening when both Korrie and Samantha drove up, parked and unloaded their minivan. Ms.Erickson asked if they would replace the roast today. Korrie came over to talk with Ms.Erickson and said flatly "No, we decided Summit didn't eat enough of it and only slobbered all over it so we decided it wasn't worth our ordeal". Being totally shocked on the dates of 9/18/25 and 11/8/24. These incidents form part of a pattern of misconduct by the City Police.

8. After waiting, praying and finally being able to obtain her dream Ms.Erickson asked and prepared everyone for the new arrival of her long awaited puppy, to be her fifth service dog. Ms.Erickson can really feel her age tugging on her weight and hoping the transition would be easy, was already living her dream but had made plans when she purchased her first home to add an English Setter if she could just find that right one, and in September she found her. Beautiful arrived on 11/7/24 and started her intense training to accommodate Ms.Erickson's various strategy and coping including balancing and added assistance. Ms.Erickson had the plans for an outside dog run and the USDA agreed and money was set aside into install it off the back porch.  Almost from the beginning Steve and Amanda were obsessed with introducing their barking doggies to my calm, quiet new puppy, afraid it was going to catch something from their dogs including bad behavior like insisting barking non-stop (Silbergers don't even try to correct the bad behavior and Ms.Erickson was very sensitive, she never had a dog that continuously barked like the Silbergers dogs. It was more than just once a week it became almost everyday when Ms.Erickson went outside to walk beautiful in November and December, then it was when she wasn't with Beautiful the Silbrgers were there in her yard in minutes of Ms.Erickson taking out Beautiful. It was very strange they couldn't were always around, always having some excuse to come over and with and without their dogs. Ms.Erickson had to be blunt and say that she was afraid that her beautiful would start to non-stop bark and if  they would please do something about it. That's when they both started to be very rude and sneaky coming out and into Ms.Erickson's yard

9. On 12/26/24, Plaintiff served Steven Silberger with a Cease and Desist Letter (Exhibit 9) regarding his trespassing and interfering with the care, training and influencing of Beautiful's training 'it wasn't just puppy things it was about public access, behaviors of a good K-9, and no-barking. unauthorized building of a fence on disputed land.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                            *25-cv-4136*

10. Throughout March and April 2025, Plaintiff experienced continued harassment on multiple dates, including April 17, 23, 24, 28, and 29 (March was warmer outside and the Silbergers were getting more aggressive, it was best to try to document everything.

11. On 5/1/25, Chief Hamer condoned actions by Patrol Officer B. Herrick, who obtained an Administrative Search Warrant (Exhibit 1a). The warrant was based on Herrick's Affidavit (Exhibit 1b), which contained numerous misrepresentations and omissions of relevant facts, misleading the judge to facilitate Steven Silberger's interests contrary to established legal procedures.

12. The intent behind obtaining the Administrative Search Warrant was purportedly to gather evidence of a crime, however, the underlying motive was to aid and abet trespassing and Steven Silberger's building of a fence he knew he required to see a judge, I told him in the fall and again in the Spring it was an adverse possession issue and He knows what that means, he's a realtor. I am starting to really get a sense that and not for enforcing ordinances as claimed.

13. On 5/2/25, in a further act of misconduct, Officer Herrick and E.R. Nurse Clemons conspired to falsely obtain a Petition for Involuntary Judicial Admission for Plaintiff. This petition led to Plaintiff being transported four hours away to Lake Behavioral Hospital without a judicial signature, demonstrating a clear disregard for legal protocols and Plaintiff's rights.

14. The actions of Officer Herrick and Nurse Clemons on 5/2/25 also included false representations about Plaintiff posing a harm to themselves or others, and mischaracterizations about the condition of Plaintiff's home, which were discriminatory based on age and disability.

15. The execution of the Administrative Search Warrant on 5/2/25 resulted in the unlawful seizure of Plaintiff's sentient property, including a Persian clowder and a Service Dog. No impoundment documents were provided, violating federal and state due process laws as outlined in the Illinois Animal Control Act, Illinois Human Care for Animals Act, and Illinois Welfare Act.

16. The municipality engaged in tortious interference with Ms.Erickson's federal benefits from the USDA's 502 program that enabled Ms.Erickson to purchased her home, and in a concerted effort diminish the value and purpose of the program benefits by claiming the interior was "unsanitary" when it was not. The interior was disorganized and exposed personally private conditions caused by Ms.Erickson multiple disabilities (AHDA which causes disorganization) Urinary Bladder issues which causes odors and requires Ms.Erickson to wash her floors daily despite her severe arthritis, which slows her down) by condemning Plaintiff's property using evidence obtained from the illegal search and seizure that identified and was explained by Ms.Erickson's disabilities the City's actions were discriminatory as the effects complained of were caused by Ms.Erickson's disabilities. The City's actions were further exacerbated when it violated due process by failing to notify Plaintiff of it's original suspected ordinance violations before seeking a warrant (as is required by the US Supreme Court since 2015 see *LA v Patel*, 576 US 409 (2015) or the opportunity to oppose these violations at a

1st AMENDED VERIFIED COMPLAINT          *H. Erickson   v   M Inman*

*25-cv-4136*

required pre-compliance hearing required by the US Supreme Court as found in the *LA v Patel, Id.* Administrative Search Warrants are unreasonable without a pre-compliance hearing". The City's pattern, practice and policy of failing to comply with the federal and State laws, due process by it's Zoning Board as advised by City Attorney Scalf a final policy maker.

17. Steven and Amanda Silberger committed multiple acts of trespass and interfered with Plaintiff's Service Dog, contributing to a hostile environment for Plaintiff.

18. The County Treasurer discriminated against Plaintiff based on their disability, specifically in relation to the use of a service dog.

19. Plaintiff faced additional discrimination and retaliation after complaining to the Mayor and Chief of Police, which were protected activities. The municipality demonstrated deliberate indifference and engaged in a pattern, policy, and practice of retaliation by taking adverse actions against Plaintiff.

20. Plaintiff's 4th Amendment rights were violated through warrantless entry into her home, unlawful seizure of impressions and allegedly of evidence not produced of ordinance violations, and the unlawful seizure of sentient property without exigency and beyond the scope of the dubious administrative warrant.

21. Plaintiff's 14th Amendment rights were violated and she has the evidence to prove it now all she needs is the Court's acceptance of her Complaint to bring justice to light and expose this municipality's failure to speak with the Plaintiff (home-owner) or request a reasonable time to inspect her property or provide any type of notice about any suspicion of an alleged ordinance violations before the municipalities 'code official' sought any legal action (this includes attempting to participate in obtaining a warrant and conducting a hearing in front of a neutral magistrate (Aurora …) as required under the requirements of the International Property Management Code made available to the code official' April and May 2025, and by failing to notify Plaintiff of a Zoning Board hearing.

22. The McDonough County Board Members who are responsible for the supervision, policy hiring and firing of their employees including the Animal Control Officers failed to provide any impoundment documents, constituting a violation of Plaintiff's 14th Amendment rights.

23. Documentation and evidence supporting these claims are extensively detailed in the exhibits referenced throughout these allegations, including the Affidavit by Herrick (Exhibit 1b), the Administrative Search Warrant and its execution (Exhibits 1a and related documents(Exh.1b and 1c Affidavit Herrick and Return filed 5/14/26 incomplete with no Inventory), and communications several emails to Scalf, Coker, Lambert and the "ZBA - board" regarding reasonable accommodations request left unanswered, zoning decisions and Decision issued 10/8/25  (Exh. 8) Exhibit related to Zoning Board Decision).

1ˢᵗ AMENDED VERIFIED COMPLAINT                                    *H. Erickson   v   M Inman*
                              *25-cv-4136*

COUNT I:
4TH AMENDMENT, 42 U.S.C.§ 1983
CIVIL CONSPIRACY

1. Plaintiff incorporates all preceding paragraphs in this Complaint by reference as if fully written here.

2. Under 42 USC § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Defendants, including city police officers and municipal officials, acted under color of state law when they conducted searches, seizures, and detentions without proper legal justification, thereby violating Plaintiff's Fourth and Fourteenth Amendment rights.

3. On multiple occasions, specifically on dates including but not limited to April 17, 23, 24, 28, 29, May 1, and May 2, 2025, Defendants conducted unlawful searches of Plaintiff's property (front porch and backyard) residence and seized Plaintiff's property without a valid warrant and probable cause, in violation of the Fourth Amendment.

4. Defendants falsely arrested and detained Plaintiff without probable cause on May 2, 2025, claiming Plaintiff was a danger to herself and others without a factual basis, thereby violating Plaintiff's Fourth Amendment right against unlawful seizure and her 14th Amendment right to due process.\

5. Defendants, by their actions, intended to discriminate against Plaintiff based on her disability, in violation of the Americans with Disabilities Act (42 USC §§ 12101-12213) and the Rehabilitation Act (42 USC § 12132). This is evidenced by their refusal to provide reasonable accommodations during enforcement actions and their derogatory remarks concerning Plaintiff's mental health and age.

6. Defendants' failure to provide Plaintiff with notice of the impoundment of her animals, or an opportunity to contest the impoundment at a hearing, constitutes a violation of her procedural due process rights under the Fourteenth Amendment, this is also same for the deprivation to a fair hearing at a meaningful time and place for the appeal on presented to the Zoning Board See herein

7. Under 42 USC § 1988, Plaintiff is entitled to attorney's fees should she prevail in this action, as her civil rights were violated by Defendants acting under color of state law.

8. Pursuant to 42 USC § 3601, the Fair Housing Act, Defendants discriminated against Plaintiff based on her disability, adversely affecting the terms, conditions, and privileges of her housing while it receives federal and state monies under the guise that it doesn't unlawfully discriminate when this will be proven false it fails to make relevant interpretations and based on Ms.Erickson disabilities and needs instead its retaliates and makes fraudulent assessments not relevant to real world scientific and objective findings. This includes the unlawful search and seizure of her home and the removal of her service animals without due process.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*

9. The actions of Defendants were part of a broader pattern and practice of discrimination and retaliation against Plaintiff, particularly after she engaged in protected activities, such as complaining to municipal authorities and the police Chief about his officers trainings and practices and their harassments and discrimination she faced. This pattern includes the biased enforcement of local ordinances and misuse of administrative warrant, the bias policing and the unequal disparate treatment made to intimidate and harass Plaintiff. On several dates in April 2025 after Plaintiff emailed and called in her grievances about the Chief and his bias', telling Silberger on 4/18/25 and dates before that its best settled by a judge. It was Amanda Silberger who trolled Erickson on Facebook in Plymouth Massachusetts asking randomly questions under a fictious name of Melissa

10. Defendants conspired to deprive Plaintiff of her constitutional rights by coordinating actions between police officers, municipal officials, and third-party civilians, which included falsifying legal documents and misrepresenting facts to judicial officers to obtain warrants and effectuate Plaintiff's unlawful detention.

11. The conduct of Defendants was willful, wanton, and conducted with reckless indifference to the rights of Plaintiff, warranting compensatory and punitive damages.

## COUNT II
## 42 U.S.C. § 1983
## REPLEVIN

12. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

13. Plaintiff is the owner of, or has an interest in, the property which includes a Persian clowder and a Service Dog, which are considered sentient perishable AND valuable property.

14. Defendants wrongfully detained this property despite Plaintiff's superior right to possession of the said property.

15. The property was seized (taken unlawfully) detained and secreted by Defendants without Plaintiff's consent.

16. The wrongful detention of Plaintiff's property is causing ongoing harm to Plaintiff, including physiological harm, changes, diminishing health, resistant hypertension, emotional distress and deprivation of companionship and her chosen successful coping strategy.

17. On May 2, 2025, under the pretext of an administrative search warrant, Defendants seized Plaintiff's Persian clowder and Service Dog without providing any impoundment documents, violating

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                         *25-cv-4136*

Plaintiff's rights under both federal and state laws concerning due process and humane treatment of animals and secreted them against Ms.Erickson right to her property.

18. The administrative search warrant, authorized on May 1, 2025, and executed on May 2, 2025, was obtained based on an affidavit containing misrepresentations and omissions, which misled a judge to authorize said warrant, thereby facilitating the unlawful seizure of Plaintiff's property.

19. The seizure was conducted without exigent circumstances justifying the immediate seizure and detention of Plaintiff's sentient property, thereby violating Plaintiff's rights under the Fourth Amendment to the United States Constitution.

20. The property seized is unique and of special value to Plaintiff, as the animals provide a unique physiological response healing and nurturing, and physiologically enhancing Ms.Erickson's wellbeing being and emotional wellness. The uniqueness is not only supportive nurturing and adds stimulating companionship, which cannot be adequately compensated by damages alone.

21. Immediate possession of the property is necessary to prevent further harm to the animals and to restore them to a condition and environment meeting their physical and psychological needs.

22. Plaintiff has no adequate remedy at law, given the unique nature of the property and the ongoing harm caused by its wrongful detention.

**COUNT III**
**42 U.S.C. § 12132**
**29 U.S.C. § 794a**
**RETALIATION as a SEPARATE CLAIM OF DISABILITY DICRIMINATION**

23. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

24. Plaintiff is a qualified individual with a disability within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, and the Rehabilitation Act, 29 U.S.C. § 794.

25. Defendants had actual knowledge of Plaintiff's disability, as evidenced by the false allegations in the Petition for Involuntary Judicial Admission initiated by Defendants Herrick and Clemons, which improperly characterized Plaintiff's living conditions as a symptom of her disability.

26. Defendants are required by law to provide reasonable accommodations to individuals with disabilities, including Plaintiff, under the ADA and the Rehabilitation Act.

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*

27. Defendants failed to provide the necessary accommodations to Plaintiff, specifically by refusing to initiate an interactive process to determine appropriate accommodations for Plaintiff's disabilities, thereby violating Plaintiff's rights under the ADA and the Rehabilitation Act.

28. Defendants engaged in adverse actions against Plaintiff, which include the unlawful seizure of Plaintiff's service dog and therapy animals, the issuance of an Administrative Search Warrant based on falsified affidavits, and the involuntary commitment of Plaintiff without proper judicial oversight.

29. The adverse actions taken by Defendants were in response to Plaintiff's protected activity of asserting her rights under the ADA and the Rehabilitation Act, including her complaints to the Mayor and Police Chief regarding the discriminatory treatment she endured.

30. Defendants' actions were motivated by discriminatory animus towards Plaintiff's disability, as evidenced by the deliberate indifference and bias displayed by Police Chief Hamer and the actions of Officer Herrick and Nurse Clemons, which were condoned by municipal authorities.

31. The pattern of harassment and discriminatory acts by Defendants, including multiple instances of police misconduct and the biased enforcement of municipal codes, constitutes a pattern of retaliation and discrimination based on Plaintiff's disability.

32. The conduct of Defendants has caused Plaintiff significant harm, including emotional distress, loss of dignity, and deprivation of her civil rights, in violation of the ADA and the Rehabilitation Act.

33. Plaintiff's request for immediate relief, including the return of her service dog and therapy animals, is necessary to prevent further violations of her rights under the ADA and the Rehabilitation Act and to mitigate the ongoing harm she is suffering due to Defendants' discriminatory actions.

**COUNT IV**
**42 U.S.C. § 1983**
**MONEL LIABILITY**

34. Plaintiff incorporates all relevant paragraphs in this Complaint as though fully written here.

35. A claim for municipality deliberate indifference and failure to train  and supervise under 42 U.S.C. § 1983 requires the plaintiff to establish that the municipality had a widespread or a final decision by a policy maker (Scalf) to condon the Chief of Police to advise Ms.Erickson to bring suit against the City, and thereby condoning his inappropriate and retaliatory policing policy or custom that amounts to deliberate indifference to the constitutional rights of persons like Erickson affected by it. A Monel liability standard.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*

36. The City of Macomb, through its policymakers, including Police Chief Hamer, demonstrated a policy or custom of deliberate indifference by condoning and endorsing actions by law enforcement officers that violated established constitutional rights, specifically the rights protected under the Fourth and Fourteenth Amendments.

37. On multiple occasions, including but not limited to April 17, 23, 24, 28, 29, May 1, and 2, 2025, officers of the Macomb Police Department, under the command of Chief Hamer, engaged in conduct that included harassment, unlawful searches and seizures, and false arrests of the Plaintiff.

38. On May 1, 2025, Chief Hamer condoned the actions of Patrol Officer Bryce Herrick, who obtained an Administrative Search Warrant using an affidavit filled with misrepresentations and omissions, thereby misleading a judge to facilitate the trespassing and adverse possession claims of Steven Silberger on Plaintiff's disputed land.

39. The aforementioned warrant was executed on May 2, 2025, during which officers exceeded the scope of the warrant by unlawfully seizing Plaintiff's sentient property, including therapy animals and a service dog, without providing any impoundment documents as required by law.

40. The actions of the City of Macomb's officials were not isolated incidents but part of a broader pattern of behavior that demonstrates a policy of deliberate indifference. This pattern is further evidenced by the failure to provide Plaintiff with notices of the alleged ordinance violations or opportunities to address these at a zoning board hearing, as required by law.

41. The deliberate failure to initiate the necessary interactive process to accommodate Plaintiff's multiple disabilities, despite clear legal obligations to do so, further exemplifies the municipality's policy of indifference.

42. The municipality's actions and inactions, as directed and condoned by its policymakers, directly caused violations of Plaintiff's constitutional rights, leading to personal and property damages.

43. The municipality's deliberate indifference is the moving force behind the constitutional violations suffered by the Plaintiff, as these actions were taken with reckless disregard for the Plaintiff's federally protected rights.

44. The pattern of behavior by the City of Macomb's officials, including Chief Hamer and Patrol Officer Herrick, was ratified by the municipality when it failed to reprimand, discipline, or correct the actions of its officers, thereby endorsing the policy of deliberate indifference.

1ˢᵗ AMENDED VERIFIED COMPLAINT　　　　　　　　*H. Erickson　v　M Inman*
*25-cv-4136*

## COUNT V
## 42 U.S.C. § 12132
## 29 U.S.C. § 794a
## RETALIATION as a SEPARATE CLAIM OF DICRIMINATION

45. Plaintiff incorporates each paragraph of this complaint as if fully restated here and relies upon other later paragraphs detailing discriminatory conduct from Defendants state actors as mentioned throughout.

46. The Fourth Amendment of the United States Constitution guarantees the right of individuals to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

47. A search or seizure is unreasonable under the Fourth Amendment unless it is carried out pursuant to a valid warrant issued upon probable cause, supported by Oath or affirmation, or falls within a specific established exception to the warrant requirement.

48. On May 1, 2025, Defendant Patrol Officer Bryce Herrick, acting under color of law and within the scope of his employment by the City of Macomb Police Department, applied for and obtained an Administrative Search Warrant to search Plaintiff's residence located at 13 Hickory Grove, Macomb, McDonough County, Illinois.

49. The warrant application and the subsequent issuance of the Administrative Search Warrant were based on an affidavit by Patrol Officer Herrick that contained numerous misrepresentations and omissions of material facts, which misled the issuing judge as to the necessity and legality of the search warrant. In Herrick's Petition for Involuntary Judicial Admission, Herrick describes Erickson as "old and disabled" see perjured  Petitio(Exh.3).

50. Specifically, the affidavit submitted by Patrol Officer Herrick omitted relevant information regarding the nature of the complaints against Plaintiff, exaggerated conditions at Plaintiff's residence, and included outdated and irrelevant allegations to falsely portray Plaintiff as being engaged in ongoing criminal activity.

51. On May 2, 2025, Patrol Officer Herrick, along with other officers and city officials, executed the Administrative Search Warrant at Plaintiff's residence, during which they seized multiple animals and other personal property without providing Plaintiff any impoundment documents, in violation of both federal and state due process requirements.

52. The execution of the search and the manner in which the seizure of the animals was conducted exceeded the scope of the warrant, as the warrant specifically excluded the seizure of any animals, which was ostensibly issued to allegedly inspect for violations of municipal animal welfare ordinances and not to impound animals.

53. Patrol Officer Herrick's intent to investigate and gather evidence of criminal activity specifically animal cruelty, was motivated to aid and abet Steven Silberger's trespassing and building a fence. Today Herrick was successful in aiding and abetting Silberberg build his fence on Ms.Erickson property.

54. The actions of Patrol Officer Herrick and other involved officers did not fall within any of the exceptions to the warrant requirement that would justify either the search or the seizure as conducted.VI

55. The search and seizure were conducted without probable cause and in absence of exigent circumstances, and were based on an invalid warrant procured by deception, thereby constituting an unreasonable search and seizure in violation of the Fourth Amendment.

56. As a direct and proximate result of defendants' actions, Plaintiff suffered damages including the loss of sentient and real property, Physical injury, emotional distress, violations of constitutional rights.

**COUNT  VI**
**4th AMENDMENT 42 U.S.C. § 1983**
**WARRANTLESS ENTRY INTO PLAINTIFF'S HOME**

57 Plaintiff incorporates all paragraphs in this Complaint by reference as though fully written here.

58 The Fourth Amendment to the United States Constitution guarantees the right of individuals to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.

59 A search or seizure is typically unreasonable under the Fourth Amendment unless it is conducted pursuant to a judicially granted warrant, supported by probable cause and specifically describing the place to be searched and the persons or things to be seized.

60 On May 1, 2025, defendants Patrol Officer Bryce Herrick obtained a Administrative Search warrant by misleading Judge Heidi Benson, with omissions of relevant material facts, misrepresenting facts in several paragraphs including the paragraph he claims he asked Erickson to search her home and she refused; that the Treasurer's Office had no registrations from Ms.Erickson as to her dog or animals (not unusual and not correct and certainly not unlawful). Herrick's investigation also contains information that Ms. Erickson was just seen by her physician, no problem there and has injections into her knee, and moves with mobility devices and appears to state that her service dog, is used for balance, walking with or without a cane, walking up and down stairs and pulling her wheelchair – Herrick intentionally left those omissions out of his Affidavit. Herrick also omitted that Erickson has been complaining to the police about Silbergers and Camerons, her abutters for months, well before they started to complain about Erickson. And that Erickson only way to access her house is through the shared driveway, Ms.Erickson's house is the longest standing home and went through remodeling when Erickson arranged it to be remodeled after she purchased it

32

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v  M Inman*

*25-cv-4136*

61 Herrick omissions were intentional and if included would be a totally different case including her service dog, her disabilities, her complaints to the Police Chief about both citizen witnesses (Silberger and Cameron) and that the property was across the street from the Macomb Water and Sewer Treatment Plant at 1214 N. Randolf. There were other unidentified officers from the Macomb Police Department and/or McDonough Sheriffs Dept. who were around and who entered Plaintiff's residence located at 13 Hickory Grove, Macomb, McDonough County, Illinois, without a valid search warrant authorizing their entry for the purposes alleged at the time of entry.

62 Herrick's Police Report dated 4/19/25 concerning Steve Silberger's interview where Silberger discusses his numerous trespasses to build a fence after he had been served with a Cease and Desist Notice on or about 12/26/24 is surreal, as Herrick has a duty to Erickson and Silberger is discussing his trespasses, and plans to build over the disputed land totally ignoring the facts that Erickson had already attempted to eastablish a peaceful way to resolve the dispute and Silberger continues to trespass as if the Notice didn't mean anything is another evidence that shows the disabled members in Macomb are second class citizen and that to an objective observer, Silbergers mentions hiring a surveyor who he has to invite onto Ms.Erickson's property to survey,something he could have asked a judge to do, instead he trespasses and invites others to trespass, then hu says he has plans to build a fence and bought the material, requested a variance or something issued by the City all the while Erickson's notice is still valid and Silberger is attempting to ask Herrick by claiming Erickson is removing a stake, which is simply not true; Erickson has a past, Erickson has a smell, Erickson has let her dog run on his property – all of which does distract Herrick but they are all untrue and the only thing that really matters is the establishment of the legal status of the property by the service and recognition of the Cease and Desist Notice. Herrick ends his police report stating that he will investigate Erickson, and investigation her animals to see if the are OK. Herrick obtains an Administrative Search Warrant for the only purpose of gathering evidence for his criminal investigation, which invalidates the warrant. Nothing in Herrick Affidavit states that he is obtaining is because Lambert requested his assistance or appointed him, as the ordinance requires.

63 The entry into Plaintiff's residence on May 2nd 2025 was conducted under the pretext of an Administrative Search Warrant, which was ostensibly issued based on misleading statements and several omissions intended to mislead Judge Benson..

64 Herrick wrote in his Police Report of 4/19/25 (Exh. 9) his desire to investigate Erickson for a 15 year old false allegation of Animal Cruelty Herrick had no idea about the actual facts all he knew was what was published on the Internet made to sell readers to read more and encourage advertisers to pay for adds and to help wealthy landlords pay for a building renovation. Herrick didn't know that the Judge actually returned all of Ms.Erickson's animals, and that the Oldest continually operating appellate court in the western hemisphere (SJC) returned Ms.Erickson deceased animals to her after she argued her case successfully, in their court known as the SJC, and that the DA apologized to Erickson for the police misconduct surrounding her Great Dane. Ms.Erickson is expected to return to

1st AMENDED VERIFIED COMPLAINT                    H. Erickson   v   M Inman
                          25-cv-4136

argue her the reversal of her case based on science that didn't exist in the late 1850 in a case decided against her not based on science but based on human error.

65  The affidavit supporting the request for the Administrative Search Warrant, sworn by Patrol Officer Bryce Herrick, contained numerous misrepresentations and omissions of material facts, which misled the issuing judge regarding the necessity and legality of the warrant.

66  Specifically, the affidavit failed to disclose the ongoing disputes between Plaintiff and both abutting neighbors Steven Silberger (East), and Camerons (West)

   a.  Steven and Amenda Silberger received a cease & desist notice on 12/26/24 by Plaintiff attempting to establish the legal status of their properties,
   b.  Silberger's numerous trespasses (obtaining a surveyor, putting in stakes, purchasing materials to build a fence of the same exact area in that was disputed,
   c.  Herrick's Police Report of 4/19/25 states he was going to investigate Erickson for criminal animal cruelty because of 15 year old Internet media stories,
   d.  Herrick omits the fact that Cameron is a co-worker, fellow Police Officer in the City of Macomb Police Dept.and is exploiting Erickson for the easement which requires/restricts Cameron from interferences with the use of the shared driveway shared with neighbors #12, #11, #10 and for two months has been harassing Erickson over, after Plaintiff complained about her failure to clean up after her Great Dane resulting in biased police enforcement,
   e.  These instances of tainted investigations was relevant to the credibility of the complaints leading to the warrant request.

67.  Further, the affidavit exaggerated a suspicion theory Herrick pushed on with an alleged out-door-odor, and unobserved conditions within Plaintiff's dog (being tied outside for more than a day is outrageous Beautiful was never outside alone for more than a half-hour) unobserved inside her home suspicions from a hysterical suspicious middle aged woman with too much time on her hands and who was trying to exploit Erickson to take her home, and her land, while Amenda Silberger was a peeping stalker infront of Ms.Erikcson's windows and on the Internet on Facebook trolling as a fictious Macomb facebook user named Melissa___ . While the state of the animals therein inside, as evidenced by the descriptions provided in the affidavit compared to the actual conditions observed during the execution of the warrant, vary wildly

68.  The Administrative Search Warrant was used not only to investigate the alleged municipal code violations but also to gather evidence in support of potential criminal charges unrelated to the stated purpose of the warrant, thereby exceeding the scope of the warrant.

69.  The use of the Administrative Search Warrant to enter Plaintiff's home was a pretextual attempt to gather evidence for other motives, facilitated by the misrepresentations and omissions in the affidavit and the subsequent approval of the warrant.

1st AMENDED VERIFIED COMPLAINT                    H. Erickson  v  M Inman
                              25-cv-4136

70. As a direct result of the warrantless entry, Plaintiff suffered violations of her Fourth Amendment rights, leading to further legal and personal repercussions, including the unlawful seizure of her sentient property (therapy animals), the interference of her federal benefit of her home, which is taken under the guise of the improperly obtained warrant.

71. The actions of Chief Hamer, Patrol Officers Herrick, Hughes, Lambert, McMillen and Officers Jane and John Doe of the Macomb Police Department knowing entering Plaintiff's home without a valid warrant, reliant on an invalid warrant knowingly against established laws were intentional, willful, and in reckless disregard of Plaintiff's constitutional rights.

72. The actions of Chief Hamer, Patrol Officers Herrick to invite, condone and encourage McDonough County Animal Control officer Welch, Hughes, and Rossmiller to enter without rights, or exigency and to seize the Plaintiff's animals beyond the scope of the dubious warrant prohibiting such seize is especially egregious as the Animal Control Act, the Defendants knew or should have known and were charged with knowing and obeying completely failed to comply to the specific laws, and requirements forbids the taking of any animal against the laws contained therein: Illinois Animal Welfare Act  225 ILCS 605/ § 3.6 (e) states in pertinent part:

*"No Representative of an Animal Shelter may enter private property and remove an animal without permission from the property owner and animal owner, nor can any representative of an animal shelter direct another individual to enter private property and remove an animal unless that individual is an approved humane investigator (approved by the Department) operating pursuant to the provisions of the Humane Care for Animals Act"* IL Animal Welfare Act §3.6 (e)

## COUNT VII
## 4th AMENDMENT 42 U.S.C. § 1983
## UNLAWFUL SEARCH AND SEIZURE OF IMPRESSIONS

73. Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

74. The Fourth Amendment to the United States Constitution guarantees the right of individuals to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. In Illinois this Amendment was intentionally rewritten in its Constitution of 1970 with an emphasis on privacy at Article I section 2 within the home. Plaintiff doesn't have to be a Constitutional scholar to know and/or rely upon the seclusion of her home to ask it to be enforced, as most civilized societies members in Illinois agree and understand its meanings especially police officers.

75. A seizure of property is unreasonable under the Fourth Amendment, especially a seizure from inside one home, and if that property is unique and cherished, especially if its effect is to aid and/or needed for a disability. If the seizure is not conducted pursuant to a valid warrant and is not within an

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                              *25-cv-4136*

exception to the warrant requirement, all police and/or animal control officers know the established laws, the 4th Amendment and the Illinois Animal Welfare Act respectively.

76. On May 1, 2025, Defendant Officer Bryce Herrick, acting under color of law and within the scope of his employment with the City of Macomb Police Department, obtained an Administrative Search Warrant to search Plaintiff's residence located at 13 Hickory Grove, Macomb, Illinois, with a knowingly misleading Affidavit fully of misrepresentations and omitting numerous relevant details of material fact, intentionally mislead Judge Heidi Benson.

77. The warrant issued by the court was based on an affidavit by Defendant Herrick that contained numerous misrepresentations and omissions of material facts, which misled the issuing judge as to the necessity and legality of the search warrant, that is not why the Judge is mentioned as a Defendant, despite her ~10 years on the bench and probably has issued 100s of warrants that is also not why she is mentioned as a Defendant herein.

78. The search conducted pursuant to the warrant on May 2, 2025, exceeded the scope of the warrant as it involved the seizure of impressions and evidence beyond what was specified in the warrant, including but not limited to exclusion of the sentient "animal" property, the unlawful seizure of Plaintiff's sentient property consisting of her therapy animals and service dog, was also without consent as required in the Illinois Animal Welfare Act

79. The seizure of these impressions, pictures and video evidence was conducted without probable cause and did not fall within any exceptions to the warrant requirement, such as exigent circumstances or plain view doctrine, thus rendering the seizure unlawful under the Fourth Amendment.

80. The seizure of these impressions and evidence was conducted by reliance upon an invalid Affidavit Herrick and the misleading of a judicial officer of the Court, where thus unreasonable, thus rendering the seizures unlawful under the Fourth Amendment.

81. The actions of Defendants Hamer, Herrick, Hughe, and Welch and others involved uniformed or not were officers with intentional, willful, and reckless disregard to the established laws. It is not difficult to be concerned that an Administrative Search Warrant was being used to search someone's home, and a physically disabled persons home, a physically disabled person who happened to have gotten under the skin of Hamer, and his younger officers. All officers on scene were under 30 years old except for Hamer. All these officers condoned the other officers to continue despite the established legal standards and protections afforded by the Fourth Amendment.

82. As a direct and proximate result of the unlawful seizure, Plaintiff suffered damages including physical injury in her shoulders, bruising of her wrist that lasted months, emotional distress, violation of her privacy rights, loss of her home, all her property sentient and real, and deprivation and depreciation of her property without due process of law.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

83. The conduct of Defendant Hamer, Herrick, Hughes, Welch, Rossmiller and other unnamed officers of the City of Macomb Police Department and those McDonough County Animal Control Officers not all inclusive to Welch, represents a willful violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

## COUNT VIII
## 4th AMENDMENT 42 U.S.C. § 1983
## UNLAWFUL SEARCH AND SEIZURE

84. Plaintiff incorporates each paragraph of this complaint as if fully restated here.

85. The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures, which applies to state actors through the Fourteenth Amendment.

86. A search and seizure is typically considered unreasonable if it is executed without a valid warrant and without falling within an established exception to the warrant requirement.

87. Defendants upon their forced entry on May 2nd 2025 into Ms.Erickson's home seized Ms. Erickson when they ordered her to sit down on the floor of her home and get dressed, but not to move. Ms.Erickson was cooperative through the entire time, and did not present as a threat. This seizure did not end until Ms. Erickson was released from the hospital a month later on 6/3/25 when she was free to leave the hospital.

88. Defendants did not have a reasonable suspicion that Ms. Erickson had committed, was committing, or was about to commit a crime at any point during their seizure of Ms. Erickson.

89. Defendants did not have a reasonable suspicion to believe that Ms. Erickson was concealing a weapon or otherwise posed any danger to the officers or others at the time they patted her down and searched her pockets and handcuffed her behind her back then refused to remove the handcuffs that were causing her serious harm and tortuous pain.

90. Defendants acted under color of law when they searched and seized Ms. Erickson.

91. The actions of Defendants described herein violated the rights of Ms. Erickson to be free from unlawful searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution.

92. On May 1, 2025, Defendant Police Chief Jeff Hamer, authorized Patrol Officer Bryce Herrick, both acting under color of law and within their authority as a law enforcement officers, obtained an

Administrative Search Warrant based on Herrick's affidavit containing numerous misrepresentations and omissions of relevant facts, aimed at misleading the issuing judge, Heidi Benson

93. The warrant authorized by the court on May 1, 2025, explicitly limited the scope of search and seizure to specifically no seizure of animals at Plaintiff's residence located at 13 Hickory Grove, Macomb, McDonough County, Illinois.

94. Despite the specific limitations set forth in the warrant, on May 2, 2025, Chief Hamer authorized the forced execution of the warrant whereby Herrick and/or another uniformed officer force the front door open, by kicking-m the front door damaging the door and frame.

95. Hamer allowing, encouraging and authorizing Defendant Herrick to kick-in Plaintiff's front door, followed by ~13 other uniformed officers who were mainly on her front porch, the taking of Ms..Erickson's sentient property exceeded beyond the permissible scope by of the dubious warrant seizing most of Plaintiff's sentient property almost immediately after Ms.Erickson had been placed into Herrick's squad car and driven away. The seizure of Ms.Erickson's purebred Persian clowder of very calm and sweet purebred felines started around 10:30am – 11am and included her Service Dog (purebred English Setter, under one-year) whom both Hamer and Herrick knew would not be included in any lawful enforcement of an ordinance and/or seizure without any exigent circumstances nor consent justifying such seizure.

96. McDonough County Animal Control Officer Welch, at approximately 10:45am started to seize and place as many Persian cats belonging to the Plaintiff into various large plastic carriers and transporting them to the McDonough County Animal Shelter, without exigent circumstances and beyond the scope of the Administrative Warrant Welch relief upon he knew was against the established laws and those constitutional protections of the Plaintiff.

97. The seizure of Plaintiff's animals was conducted without providing Plaintiff with any impoundment documents, a procedural safeguard required under both federal and state law to ensure due process.

98. The actions of Defendant Herrick and other involved officers were not justified under any exception to the warrant requirement and exceeded the scope of the judicially authorized administrative search warrant.

99. By seizing property not described in the warrant and outside the scope of the judicial authorization, Defendants conducted an unlawful seizure, thereby violating Plaintiff's Fourth Amendment rights.

100.   The unlawful seizure inflicted significant emotional and physical distress upon Plaintiff, who relied on the seized animals for coping with her multiple disabilities, physical assistance, highlighting the cruel and unusual retaliatory, deliberate indifference and extreme deliberate unreasonable nature of Defendants' actions beyond the scope of any legal authority including and not limited to the Illinois Animal Control Act, Illinois Animal Welfare Act, Illinois Humane Care for Animals Act, White Cane Act, and the dubious warrant obtained by Herrick, under Hamers authority, as issued was without probable cause and thus unconstitutional.  Illinois Animal Welfare Act  225 ILCS 605/ *§* 3.6 (e) states in pertinent part:

*"No Representative of an Animal Shelter may enter private property and remove an animal without permission from the property owner and animal owner, nor can any representative of an animal shelter direct another individual to enter private property and remove an animal unless that individual is an approved humane investigator (approved by the Department) operating pursuant to the provisions of the Humane Care for Animals Act."*IL Animal Welfare Act §3.6 (e)

101.    The conduct of Defendants was intentional, willful, and undertaken with reckless disregard for Plaintiff's constitutional rights, particularly her Fourth Amendment rights against unreasonable searches and seizures.

102.    The collective and individual actions of Defendants, as described, were not isolated incidents but part of a broader pattern and practice of disregard for the constitutional rights of Plaintiff, indicating a failure of the municipality to train, supervise, and control its officers, thereby resulting in a deprivation of Plaintiff's Fourteenth Amendment rights.

103.    The deprivation of Plaintiff's rights under the Fourteenth Amendment was both intentional and reckless, carried out by Defendants under color of state law, which directly resulted in significant harm to Plaintiff.

104.    As a direct and proximate result of Defendants' actions, Plaintiff suffered damages including, but not limited to, homelessness, extreme physical distress and emotional distress, humiliation, loss of property, and deprivation of her constitutional rights.

**COUNT IX**
**4th AMENDMENT, 42 U.S.C. § 1983**
**FALSE ARREST**

105.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

106.    Defendant Herrick, under the supervision of Chief Hamer, arrested Ms. Erickson without probable cause when he placed handcuffs on her placing her arms behind her back to further the pain and punishment, while Ms.Erickson was not a threat, cooperative and politely responding to the officers, but refusing consent to search her home.

107.    Defendants acted under color of law when they arrested Ms. Erickson without probable cause.

108.    The actions of Defendants described herein violated the rights of Ms. Erickson to be free from unlawful seizures as guaranteed by the Fourth Amendment of the United States Constitution.

109.    A claim for false arrest under United States law, specifically within the jurisdiction of the United States District Court for the Central District of Illinois, requires the Plaintiff to establish that the Defendant intentionally confined the Plaintiff without consent and without lawful authority.

110.    On May 2, 2025, Defendants Clemons and Herrick conspired to and did obtain a Petition for Involuntary Judicial Admission of Plaintiff, by falsely alleging that Plaintiff was a harm to herself or others, which directly led to Plaintiff's confinement, although the Petition was only signed by Herrick, there is no judicial signature, Clemens although signed a Certificate with knowingly false and misleading information that she attested to without further facts except that Erickson was upset, that Ms.Erickson was a danger to herself or others is perjury. Clemens had a duty and a standard of care, Ms.Erickson's behavior did not ever establish any grounds for a Involuntary Admission

111.    The confinement of Plaintiff was without her consent, as evidenced by the involuntary nature of the judicial admission and the subsequent transport to Lake Behavioral Hospital, which occurred without a judicial signature authorizing such confinement, Ms.Erickson objected, was polite and cooperative.

112.    The confinement was without lawful authority, as the Petition for Involuntary Judicial Admission contained material misrepresentations by Defendants Clemons and Herrick, including false statements about Plaintiff's mental health and living conditions, and omitted critical facts that would negate the alleged grounds for Plaintiff's confinement.

113.    Defendants Clemons and Herrick acted under color of state law, as Clemons was an Emergency Room Nurse and Herrick was a Patrol Officer, both utilizing their positions to influence the process and outcome of the involuntary admission.

114.    The actions of Defendants Clemons and Herrick were intentional, aiming to deprive Plaintiff of her liberty without any valid basis, as part of a broader scheme of harassment and retaliation against Plaintiff, evidenced by multiple incidents of police misconduct directed at Plaintiff on various dates leading up to this false arrest.

115.    As a direct and proximate result of the false arrest, Plaintiff suffered damages including severe and prolonged emotional distress, harm to her reputation, and physical discomfort and indignity from being transported and confined against her will for thirty-three (33) days.

**COUNT X**
**4TH AMENDMENT, 42 U.S.C. § 1983**
**FALSE DETENTION**
**DEFENDANTS HAMER, CLEMONS, HERRICK, HUGHES, MDH, LAKE**

116.    The allegations of paragraphs herein are realleged and incorporated by reference as if fully set forth herein.

117.    Defendants Herrick, Hughes and under the supervision of Hamer arrested Ms. Erickson without an arrest warrant. The other Defendants participated in the false detention by

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*
                                *25-cv-4136*

providing municipal support, including services to transport and support staff to undertake the illegalities.

118.    Defendants unreasonably delayed releasing Ms. Erickson from custody by filing a perjured Petition for Involuntary Commitment where it required to list the behaviors (listed no signs and symptoms of mental illness, described no threats or behaviors supporting any claims of danger or inability to care for herself and was required to contain the occurrences and list of the names and addresses of witnesses, Herrick attests to "several" perjuring himself and only lists one witness his co-worker Cameron. Herrick intentionally perjured himself with known false statements "Several citizen complaints…" and then listed one Korri Cameron, a co-worker and abutter of Plaintiff whom is exploiting Erickson and violating the easements NON-obstructing CLAUSE in her shared driveway preventing and interfering with Erickson's attempts to visit her doctors and receive treatment for her painful arthritis and the  deliveries from Walmart and Amazon. Cameron started to harass Erickson when Erickson asked Cameron to pick up after her Great Dane dog, they share a driveway at #12 Hickory Grove as repeatedly stated by Erickson's realtor Gene Curtis a fiduciary who was responsible to Erickson for Cameron and Hamer's conduct which exploited Erickson's property rights.

119.    Herrick perjured himself when he lied about the three questions listed in the Petition for Involuntary Judicial Admission on page ___ : he answered by check marking all in the negative i.e. "I do not…"

I do *not* have a legal interest in this matter.  Herrick had just asked a judge for a search warrant to unlawfully search Ms.Erickson's home where perjured himself again.

I do *not* have a financial interest in this matter.  Herrick's job is in jeopardy if he doesn't imprison Ms. Erickson

I am *not* involved in litigation with the respondent. See explanations above, pg.2 of 5. Herrick intentionally perjured himself while immediately following the 3 questions on bias is a large blank space where he could have explained but choose to lie instead

120.    Defendants acted under color of law when they unreasonably delayed releasing Ms. Erickson and caused her detention until June 3rd, 2025 ~33 days.

121.    The actions of Defendants described herein violated the rights of Ms. Erickson to be free from unreasonable seizures guaranteed by the Fourth Amendment of the United States Constitution.

41

122.    Ms.Erickson suffered direct, consequential and proximate damages and injuries caused by Defendants she may not realize all the injuries she has incurred as of today.

## COUNT XI
## 4TH AMENDMENT, 42 U.S.C. § 1983
## EXCESSIVE FORCE

123.    Plaintiff incorporates each paragraph of this complaint as if fully restated here.

124.    Defendants Hamer, Herrick, Hughes and others intentionally used force against Ms. Erickson. Hamer authorized that the Officers use force to enter Ms.Erickson's home.

125.    The force Defendants used was unreasonable in light of the facts and circumstances, and including forcing Ms.Erickson's front door open.

126.    Defendants acted under color of law when they used unreasonable force against Ms. Erickson.

127.    The actions of Defendants described herein violated the rights of Ms. Erickson to be free from unreasonable seizures guaranteed by the Fourth Amendment of the United States Constitution.

128.    Ms.Erickson suffered direct, consequential and proximate damages and injuries caused by Defendants she may not realize all the injuries she has incurred as of today.

## COUNT XII
## 4TH AMENDMENT, 42 U.S.C. § 1983
## FAILURE OF BYSTANDER OFFICERS TO INTERVENE IN UNCONSTITUTIONAL CONDUCT

129.    The allegations of aforementioned paragraphs are realleged and incorporated by reference as if fully set forth herein.

130.    As alleged in these Counts, Defendants violated Ms. Erickson's constitutional rights.

131.    The bystander Defendants who were present but did not participate in the violations of Ms. Erickson's constitutional rights knew that the other Defendants were about to violate Ms. Erickson's constitutional rights.

132.    The bystander Defendants had a realistic opportunity to do something to prevent harm from occurring to Ms. Erickson.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*

133.    The bystander Defendants failed to take reasonable steps to prevent harm from occurring to Ms. Erickson.

134.    The bystander Defendants' failure to act caused Ms. Erickson to suffer harms

135.    Ms.Erickson suffered direct, consequential and proximate damages and injuries caused by Defendants she may not realize all the injuries she has incurred as of today.

## COUNT XIII
## 4TH AMENDMENT, 42 U.S.C. § 1983
## CIVIL CONSPIRACY

136.    The allegations of the preceding paragraphs are realleged and incorporated by reference as if fully set forth herein.

137.    On May 2nd, 2025 Defendants agreed to unlawfully search Ms. Erickson without reasonable suspicion or probable cause that Ms. Erickson was in the course of committing or had committed a crime. Defendants then unlawfully patted down and searched Ms. Erickson without reasonable suspicion, probable cause, or any other lawful justification.

138.    Despite awareness of all Defendants that Ms. Erickson was not committing a crime the Defendants arrested her anyway and to further her punishment handcuffed her behind her back knowing she had and was complaining about the arthritic pain in her shoulders while Herrick moved her to his squad car. Defendants had no lawful justification for continuing to detain Ms. Erickson.

139.    In the course of this unlawful conduct, Defendants reached an agreement among themselves to deprive Ms. Erickson of her constitutional rights and to protect each other from liability for depriving Ms. Erickson of her rights.

140.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity that actually deprived Ms. Erickson of her constitutional rights and to protect each other from liability for depriving Ms. Erickson of her rights.

141.    As a direct and proximate result of the illicit prior agreement referenced above, Ms. Erickson's rights were violated and she suffered injuries, including, but not limited to, physical abuse, imprisonment and emotional distress as described above and herein.

142.    Defendants together or apart, had a duty to care and reasonably serve the interests of the Plaintiff without malice, together conspired and acted willfully and wantonly with and/or without authority

## COUNT XIV
## PRIVACY
### Article I, § 6 of the Illinois Constitution

143.    The allegations of the foregoing paragraphs are realleged against all Defendants' and incorporated by reference as if fully set forth herein.

144.    Defendants unreasonably and unlawfully arrested, detained, searched and used force against Ms. Erickson. Defendants had a duty to care, together conspired and acted willfully and wantonly with or without.

145.    The actions of the Defendants described herein violated the rights of Ms. Erickson to be free from unreasonable searches, seizures, and invasions of privacy as guaranteed by Article I, Section 6 of the Illinois Constitution.

146.    As a direct and proximate result of the illicit prior agreement(s) referenced above, Ms. Erickson's rights were violated and she suffered injuries, including, but not limited to, physical abuse, imprisonment and emotional distress as described above.

147.    As a direct and consequential result of the illicit conduct referenced above, Ms. Erickson's rights were violated and she suffered injuries, including, but not limited to: physical abuse, imprisonment, deprivation of property and the pursuit of happiness, discrimination, liberty, freedom, and emotional distress as described above.

## COUNT XV
## 4TH & 14 AMENDMENT 42 U.S.C. § 1983
## EXCESSIVE DETENTION
### DEFENDANTS CONVENINGTON I & II, MARCEDO and LAKE BEH.HOSP.

148.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

149.    The Defendants (V. Covington, LLC, *dba* Lake Behavioral Hospital, V. Covington, Realty, LLC, *dba* Lake Behavioral Hospital, Cindy Marcedo) falsely detained Plaintiff without legal justification, in violation of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

150.    On or about May 9th, 2025 Plaintiff' notified Defendant Cindy Marcedo, CEO of Lake Beh.Hosp. the of the false detention of Plaintiff, against her will, and did nothing.

44

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson  v  M Inman*
                                        *25-cv-4136*

151.    Ms.Marcedo, worked in the same building that Plaintiff was located therein and was at work during the same period that Ms. Erickson was being held against her will. Marcedo had opportunity and notice and the obligation and duty to investigate Ms.Erickson's claims, and a standard of care. Despite Ms.Erickson's repeatedly daily demands to leave, Marcedo continued the unlawful detention.

152.    Ms.Marcedo, Covengton and Lake Beh. Hosp. Filled three (3) Petitions for involuntary Judicial Admission, filed with misleading and false medical recording and each were summarily denied, dismissed by Judge Bishop of Lake County.

153.    To establish a claim for false detention, Plaintiff must show that Defendants intentionally confined Plaintiff without lawful privilege and against Plaintiff's consent.

154.    On May 2, 2025, Defendants, acting under color of state law, detained Plaintiff at Lake Behavioral Hospital without a judicial signature consenting and/or authorizing such detention, thereby confining Plaintiff without consent.

155.    Defendants Herrick and Clemons conspired to obtain a Petition for Involuntary Judicial Admission by making false representations in the petition, including misstating Plaintiff's mental health condition and the condition of Plaintiff's home, to justify the confinement.

156.    The detention was executed without lawful privilege, as the Petition for Involuntary Judicial Admission lacked a judicial signature, which is a requisite legal formality for such a detention to be lawful under Illinois law.

157.    The false representations by Defendants Herrick and Clemons in the petition were material and directly led to the wrongful detention of Plaintiff, as these misrepresentations were relied upon in deciding to detain Plaintiff without a proper judicial review.

158.    Plaintiff did not consent to this detention and repeatedly expressed a desire not to be confined, making the detention against Plaintiff's will.

159.    The actions of Defendants Herrick and Clemons in fabricating the necessity of detention directly resulted in the violation of Plaintiff's constitutional rights to liberty and freedom from unlawful detention.

160.    As a direct and proximate result of the false detention, Plaintiff suffered damages including emotional distress, humiliation, and deprivation of liberty.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

161.   The conduct of Defendants was willful, wanton, and in reckless disregard of Plaintiff's rights, warranting an award of punitive damages to deter such conduct in the future and to serve as a warning to others in similar positions of authority.

## COUNT XVI
## 42 U.S.C. § 1983
## MALICOUS  PROSECUTION

162.   Plaintiff incorporates each paragraph of this complaint as if fully restated here.

163.   On or about 6/9/25 the City of Macomb by it's legal counsel, filed a multiple page complaint attaching illegally obtained and manipulated photographs of the private interior of Plaintiff's home, inappropriately entitled 'Complaint #2025OV118"(Exh4)

164.   In the manner described above, the Defendant Officers, officials, agents, lawyer(s) and Reporter's acting as investigators, agents and/or legal advisors individually, jointly, and with conspiring minds set out a conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of civil ordinance violations and separately criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so filing a Civil Action Complaint in the circuit court of McDonough County Complaint #2025-OV-118.

165.   In so doing, the Defendant Officers, officials, agents, lawyer(s) and Reporter (Darcy Shinberger)caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause and the Court would soon understand it didn't have subject matter jurisdiction, unjustly and against justice for all the Court refused, sadly failed to acknowledge the lack of jurisdiction. These judicial proceedings were instituted and continued maliciously, resulting in injury, public humility, reported incorrectly the false and misleading information so as to constitute defamation and liable as reported and published by Defendant Shinberger supported by the Western Illinois University, and it's new President Mindrup, the falsehoods contained therein has caused and is intended to cause thousands of people to believe negatively about Ms.Erickson and to form a belief of those falsehoods distributed by Shinberger and WIU and Mindrup. Plaintiff has suffered and will continued to suffer as these defamatory and libelous reporting is published on the internet and made to influence prospective jurors .

166.   The judicial proceedings were terminated in Plaintiff's favor on 7/22/25 and in a manner indicative of her innocence when this complaint #2025OV118 was initiated without subject matter and personal jurisdiction, aside from these herein federal claims which are persisted to vindicate Ms. Erickson of the wrongful outrageous conduct against her.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v  M Inman*
                    *25-cv-4136*

167.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth of Plaintiff's clear innocence.

168.    As a result of the Defendant Officers', Officials, Agents, Lawyers and Reporter's misconduct described in this Count, Plaintiff suffered loss of liberty, loss of her beloved therapy animals, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth herein.

**COUNT XVII**
**42 U.S.C. § 1983**
**4th and 14th AMENDMENT UNREASONABLE SEIZURE and DUE PROCESS VIOLATION FOR FAILURE TO NOTIFY PROPERTY OWNER OF ORDINANCE VIOLATIONS UNDER IPMC 107.1 AND MALICOIUS PROSECUTION DEPRIVING PLAINTIFF HER DUE PROCESS PROTECTIONS**

169.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

170.    Pursuant to the International Property Maintenance Code (IPMC) as adopted by local ordinance, notice of any alleged ordinance violations must be provided to the property owner prior to any enforcement action. See IPMC 107.1 notice must be delivered/served upon the property owner not any family member. Serving my 70 year old sister who lives 3 hours away from the City of Macomb, was inappropriate, harassing and evidence of the lack of training, in the civil action commenced to harass the Plaintiff the City states they served my sister, admitting failure to follow the authority of the IPMC. The City failed to attach any alleged notice, they claimed was the result of the illegal search and seizure on 5/2/25. The fact is they didn't issue a notice on 5/2/25 or within a reasonable amount of time according to the authority they relied upon, issuance of a notice on an inspection 85 days in the past is unreasonable, capricious, and arbitrary, and not fresh as to the IPMC, evidencing the total lack of authority to issue another random notice of violations under 107.1 on 7/24/25 thus the notice issued on 7/24/25 is void and unenforceable as it is arbitrary and relies upon not only a unlawful entry but also there was no preceding event in time – to rely on an illegal entry the evidence thereof is inadmissible under the Fruit-of-the-poisonous-tree Doctrin , and the US Supreme Court holdings in Wong Sun v US 371 US 471 (1963) that occurred and its ordinance language, plaining the City and it's 'code official' knew or should have known how to 'notice' properly and the manner and method used by Lambert was deliberate indifference and evidence of a lack of training.

171.    The IPMC 107.1 requires that such notice include a clear statement of the violations alleged, the steps required to remedy such violations, and a reasonable time period within which to comply. The City and Lambert's Notice issued on 7/24/25

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                    *25-cv-4136*

172.    Additionally, the IPMC mandates that if compliance is not achieved within the specified time, the property owner must be notified of the right to appeal the decision before a neutral arbiter or board. Defendants' actions in condemning Plaintiff's property based on evidence obtained from an unlawful search and seizure further constituted a substantive due process violation under the Fourteenth Amendment.

173.    On multiple occasions in May and June 2025, including on or about May 9th, 14, 23, 29, and July 9 and 10th 2025 Plaintiff requested the City, Lambert, Scalf and Inman (officials) and McMillen agents from the City of Macomb, to notify her of any suspected, alleged or written violations as required by the IPMC and the City refused, failed and without cause and authority commenced an action in the Circuit Court of McDonough County. The Action was knowingly and intentionally filed by the City Attorney and was without right or authority as it failed to comply with the laws and/or the IPMC the legal action to enforce was not supported by authority and was malicious prosecution.

174.    On or about the Plaintiff, filed as a respondent, a Motion to Dismiss for Lack of Subject Matter Jurisdiction as evidenced in the records attached the City had failed to ever provide the Plaintiff, and/or respondent, home-owner any notice of suspected violations and/or subsequent alleged ordinance violations based on the illegally obtained evidence. The City admitted that they failed to provide the due process required and withdrew their civil action on 7/22/25.

175.    On 7/24/25 the City and its officials, Scalf policy maker and Lambert issued a Notice of Violations based on the illegal search and seizure of the Plaintiff's home on 5/2/25 and placard her home for public embarrassment. None the violations or requested corrective actions would require the Plaintiff to be restrained from sleeping in her home, but allowed her to make corrections from 7am to 8pm everyday and required her to leave her home for no stated purpose or government interest from the hours of 8pm to 7am, the City's Notice of Violations were arbitrary, abusive and discriminatory and not supported by the illegally obtained evidence, although were entirely related to the unlawful search and seizure [3]conducted with a misleading Affidavit of Herrick (Exh.1b) that omitted relevant facts and misrepresented others as claimed herein this Complaint.

176.    Plaintiff sent the City and its attorney an email requesting reconsiderations based on the Plaintiff being homeless, and unable to afford a hotel and accommodations due to the unusual restrictiveness of the Corrective Actions limited her access and interfering with the federal benefits USDA 502

---

[3] In the entire month of June and July Plaintiff worked day and night to write her Complaint filing it on 7/29/25 in order to curtail her increasing damages and injuries as well as to save her beloved sentient property who has been living with the Plaintiff their entire lives for the last 13 years, while the Defendant has secreted information last seen with 2nd degree burns from shaving their coats with hot-burning blades while sedating them – never would the Plaintiff do such unnecessary harmful procedures on her very calm and sweet Persians. Before the unlawful seizure not one of Ms.Erickson's Persian would every struggle, bite or need to be sedated to be combed out, but they do have a thick cottony undercoat which come from their top-show quality gene pool. This deep concern for their safety is also made from a statement of Scripts that she consented to euthanizing 10 cats who were in the shelter. Not any one of my Persians were ill and I do not authorize euthanasia.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*

*25-cv-4136*

program. The City denied any reasonable accommodations and relief nor provided the necessary evidence that supported the claims of insect and/or rodent infestation and unsanitary conditions – which were not present. The City refused to provide any evidence of such conditions that weren't subjective.

177. On 7/30/25 Plaintiff sent an olive branch email to the Defendant Inman for a mutual respect after identifying the causes of the alleged conditions inside her home were caused by her ADHD Disability that causes disorganization. Plaintiff also stated that the evidence taken from her home is inadmissible under the Doctrine of the Fruit-of-the-Poisonous-Tree. Inman's response was immediate and retaliatory as is his policy ratifying the failure to notice, failure to respond and failure to train, and thus resulting in a failure to train. As a direct and consequential result of Ms.Erickson's olive branch to Inman he required Lambert to re-issue and post the red placarding on Ms.Erickson's front door which reads that a new inspection was committed on 7/31/25 (Exh.14) – this new 7/31/25 inspection was without a warrant, without consent of the homeowner (Ms.Erickson) without exigency and was wrongly and unlawfully motivated by retaliation.

178. These actions included the issuance of an Administrative Search Warrant on May 1, 2025, as evidenced by the document titled "ADMINISTRATIVE SEARCH WARRANT 5.1.25 AND RETURN 5.14.25," which authorized an inspection of Plaintiff's property for alleged violations.

179. At no time prior to the issuance of the Administrative Search Warrant or the subsequent enforcement actions did Plaintiff receive any notice of the alleged ordinance violations that purportedly justifying these actions, in direct contravention of the IPMC requirements.

180. Furthermore, Plaintiff was not provided with any subsequent notification detailing the specific violations allegedly found, the corrective actions required, nor was she informed of her right to appeal these findings, as mandated by the IPMC.

181. The failure of Defendants to provide required notices deprived Plaintiff of the opportunity to remedy the alleged conditions or to challenge the findings requiring such notice issuance(s) before any punitive actions were taken, including the impoundment of her animals and the condemnation of her property.

182. The actions of the City of Macomb, by and through its agents and employees, in failing to provide the required notices under the IPMC, constituted a violation of Plaintiff's rights under the due process clause of the Fourteenth Amendment to the United States Constitution.

183. As a direct and proximate result of these violations, Plaintiff has suffered significant damages, including but not limited to the loss of her property, deprivation of her property without due process, and emotional distress.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                              *25-cv-4136*

## COUNT XVIII
## 42 U.S.C. § 1983
## 14th AMENDMENT DUE PROCESS
## VIOLATION FOR FAILURE TO NOTIFY OF ANY SUSPECTED VIOLATIONS TO ORDINANCES PRIOR TO TAKING ANY COURT ACTION AS REQUIRED BY THE CITIES ORDINANCE CHPT 17-398 AND THE IPMC (GRANTS THE AUTHORITY)

184.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

185.    The Due Process of the municipalities Ordinance Chapter 17-398 requires that a municipal entity provide timely and adequate notice to a property owner when it alleges violations of municipal ordinances that may affect the owner's property rights or lead to punitive actions including legal actions.

186.    Plaintiff alleges that the Defendants, including the municipality and its agents, failed to provide any notice of the alleged suspected violations concerning the care and condition of Plaintiff's property prior to the issuance and execution of an administrative search warrant on May 1, 2025.

187.    These actions, or lack thereof, by the Defendants have effectively denied the Plaintiff the lawful procedure and due process promised under Chapter 17-398, leading to significant distress, loss of property, and impingement of her property rights without proper procedural safeguards.

188.    The Plaintiff asserts that these failures and omissions by the Defendants are not isolated incidents but are part of a broader pattern of disregard for the procedural rights of individuals, which is evidenced by the municipality's handling of the Plaintiff's case without adherence to the mandated legal standards set forth in Chapter 17-398 and IPMC 105.5 Right of Entry as adopted by the City in 2018. – 7years ago.

189.    As a direct and proximate result of these violations, Plaintiff has suffered significant damages, including but not limited to the loss of her property, deprivation of her property without due process, and emotional distress.

## COUNT XIX
## 42 U.S.C. § 1983
## 14th AMENDMENT DUE PROCESS
## VIOLATION FOR FAILURE TO NOTIFY OF ANY SUSPECTED VIOLATIONS TO ORDINANCES PRIOR TO TAKING ANY COURT ACTION AS REQUIRED BY THE IPMC

190.    Plaintiff incorporates all other paragraphs in this Complaint by reference as though fully written here.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                        *25-cv-4136*

191.　Under the 14th Amendment to the United States Constitution and applicable Illinois law, including the International Property Maintenance Code (IPMC) as adopted by the City in its local ordinance, entities and individuals are required to provide notice of any suspected violations or alleged ordinance violations concerning property maintenance and zoning regulations before taking enforcement actions the later includes court actions recently reestablished by the Illinois Appeals Court in Elgin in *DPH Aurora Properties, LLC v City of Aurora* (2015) para.42, and as held by the US Supreme Court in *LA v Patel*, 576 US 409 (2015) *DPH* Court finding an 'inspector to set it for a hearing on a refusal to inspect" the law is clearly established since the US Supreme Court in *Camera* 387 US at 540 (1963) residents have a 4th Amendment right to refuse entry, and a trained 'code official' licensed housing inspector would know those established laws, including that in 2015 the US Supreme Court held that Administrative Warrants are Unconstitutional without a precompliance hearing in front of a district judge" the facts in this case is that Defendant Lambert did not ask the Plaintiff as required in the IPMC section 105.5 Right of Entry, or Chpt 17-398 of the Macomb Ordinance, and she didn't refuse, but Affidavit Herrick claims Erickson refused his request for entry to inspect. These actions deprived the Plaintiff due process(among other things), required in the IPMC that the City alleged adopted While the US Supreme Court for the last 10 years in *LA v Patel* (2015) and since Camera 1963 (70 years) evidences the lack of training and the defendants deliberate indifference (City of Canton v Harris). Herrick Affidavit (Exh.1b) misrepresents the fact that he claims he received a refusal from Erickson denied him 'refused an inspection' as is her right accordingly but she never did, she never had conversation with Herrick, never meet him, and this perjured statement was intentional to mislead Judge Benson, and failed to also include several relevant omissions of fact that the citizen complaints were from those Plaintiff had complained about, served with a Cease and Desist Notice, and were exploiting Erickson over her property line, to both the Mayor and Chief who were bias. The above authorities where known and or should have been known by the City instead kicked in her front door to enforce a refusal, and suspicion of animal abuse as found in the Internet from stories (not Court documents that was nearly 15 and or 25 years old as alleged by Herrick. The truth is Herrick never met Erickson and he never received a refusal from her, although it would only trigger a hearing, not a Administrative Warrant that Hamer and Herrick could forcefully enter, by kicking in her front door, traumatizing Erickson who would be known to be traumatized by these actions. Lambert was required by the IPMC to talk with the homeowner, and then if necessary to ask for an inspection – that is reasonable, but by force kicking in her door was unreasonable. Plaintiff was deprived due process by the unlawful enforcement that deprived her of the process that was due.

192.　Defendants, including the City of Macomb and its agents, failed to provide Plaintiff with the required notices of alleged violations and a precompliance hearing if necessary concerning the maintenance and use of her property located at 13 Hickory Grove, Macomb, Illinois, before it took legal action by requesting an Administrative Search Warrant which would be a precompliance hearing that Erickson would be subpoenaed to attend.

193. Specifically, Plaintiff was not provided with any prior notice of the alleged violations that were used as the basis for the issuance of the Administrative Search Warrant dated May 1, 2025, as evidenced by the documents and testimony referenced in the Administrative Search Warrant (Exh.1) and its execution return (Exh.1c) defective return not filed by the officer and not including an Inventory as required by laws.

194. Furthermore this repeated conduct, Plaintiff was not provided a fair notice of the Zoning Board of Appeals hearing held on September 24, 2025, concerning her property, as required under the provisions of the IPMC and local ordinances. This failure is documented in the Zoning Board Decision issued on October 3, 2025, and 10/8/25 as claimed herein below, the repeated actions resulting in the lack of notices (request to speak about a suspected Ordinance violation, a Ordinance Violation, Impoundment documents, a Hearing by the ZBA, these are all non-notices required by law a sort of epidemic in Macomb evidences the pattern, practice and policy that the City repeatedly fails and/or repeated violates constitutional protections guaranteed by the established laws.

195. The failure to notify Plaintiff of the Zoning Board hearing deprived her of the opportunity to participate in the hearing, present her case, or contest the allegations against her property, thereby violating her due process rights under the 14th Amendment.

196. Additionally, the Defendants failed to provide Plaintiff with any impoundment documents or notices required by law following the seizure of her animals beyond the scope of the dubious Administrative Search Warrant on May 2, 2025. This failure is contrary to the requirements under the Illinois Animal Welfare Act, Animal Control Act, Illinois Humane Care for Animals Act, and related statutes.

197. The lack of notification and failure to provide impoundment documents significantly impaired Plaintiff's ability to reclaim her animals, seek proper care, or challenge the conditions of their impoundment, further violating her rights under state and federal law.

198. Each of these failures by the Defendants constitutes a separate and actionable violation of Plaintiff's rights to due process and equal protection under the law, as guaranteed by the 14th Amendment to the United States Constitution and enforced through 42 U.S.C. § 1983.

199. As a direct and proximate result of these failures to notify, Plaintiff has suffered significant damages, including tortious interference with her federal benefit under the USDA 502 program, physical harm, emotional distress, harm to her reputation, and financial losses related to the care and recovery of her property and animals.

1st AMENDED VERIFIED COMPLAINT                    H. Erickson  v  M Inman
                              25-cv-4136

## COUNT XX
## 42 U.S.C. § 1983
## 14th AMENDMENT DUE PROCESS
## FAILURE TO PROVIDE A FAIR HEARING ZONING BOARD APPEALS

200.    Plaintiff incorporates all other paragraphs in Complaint by reference as though fully written here.

201.    Under the Fourteenth Amendment to the United States Constitution, procedural due process requires that a municipality provide notice to a property owner before a zoning board is hearing that could affect the owner's property rights. Defendant City, through their final policymaker, City Attorney Scalf, refused to provide the access, names and reasonable accommodations according to the established laws resulting in the Plaintiff's injuries.

202.    The requirement for notice and fair hearing intended to ensure that a property owner has an opportunity to prepare a defense, present evidence, objections and cross-examine witnesses to any proposed actions and or alleged evidence including those that may adversely affect the Plaintiff's property of which an attorney has an ethical duty but a notice and hearing is required by established law that a professional and/or licensed lawyer is required making the deprivation here of Plaintiff's rights more egregious  Scalf ignored the standards and rules of practice.

203.    On September 24, 2025, the Zoning Board of Appeals of the City of Macomb convened a hearing without the Appellant and issued a decision regarding Plaintiff's property located at 13 Hickory Grove, Macomb, Illinois, which directly impacted Plaintiff's property rights, without providing the Appellant a fair hearing at a meaningful time in a meaningful manner, against the established laws, also discriminated against the Plaintiff based on her disability ignoring her multiple requests for reasonable accommodations.

204.    Plaintiff was not provided an fair and/or non-discriminatory opportunity to attend, present a defense, cross-examine witnesses or testify in her own request for an appeal to the Zoning Board of Appeals meeting held on September 24, 2025, nor was Plaintiff informed of the issues or itinerary, allowed reasonable accommodations (this claim of disability discrimination is set forth separately herein) to be discussed that pertained to her property.

205.    The failure to provide appropriate reasonable accommodations and opportunity to Plaintiff deprived her of the opportunity to present her requested appeal attend the meeting, present her case, cross-examine witnesses or contest the decision, thereby violating her procedural due process rights under the Fourteenth Amendment.

206.    The decision from the September 24, 2025, meeting was communicated via an email from Defendant, the City Attorney Scalf to Plaintiff on October 3, 2025 after 5:46pm, indicating that a decision affecting Plaintiff's property had been made (without her attendance) In fact the facts

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                        *25-cv-4136*

surrounding why Appellant wasn't present was not included in the Decision, as it should have been because the fact evidenced the disability discrimination depriving Plaintiff of her property interests unlawfully by intentionally failing to ensure the Plaintiff a fair hearing based on repeatedly denied and ignored reasonable accommodations requested for her disability to ensure she could attend. Emails to Scalf and Coker, requesting reasonable accommodations never were responded and not interactive process was undertaken, those emails were not answered. The 10-3-25 email by Scalf advised "official" written order would be provided subsequently from which an appeal maybe taken.

207.    On or about 10/9/25 a notice was received by Plaintiff regarding the ZBA's decision. This decision (Exh.13)issued on 10/8/25, signed by the ZBA, Chair, Defendant Rusner, as a state actor, together with the other members of the ZBA, named herein the content of which evidences the violations the Plaintiff's Fourteenth Amendment right to due process and equal protection by acting to deprive the Plaintiff a property interests without due process of law and doing so with discriminatory (based on disability) intent or by improperly applying regulations in a way that adversely affected the Plaintiff a known, documented and qualified person with disabilities, depriving Plaintiff of her property interest, by depriving her a meaningful opportunity at a meaningful time for a fair hearing and discriminating against her because of her disability. The fact that the ZBA chair and/or members wrote in their decision no fact about Ms.Erickson multiple disability accommodation requests to Scalf, to ZBA members and to Coker the alleged ADA Title II coordinator, evidences Plaintiff was ignored and was intentionally discriminated against for her disabilities.

208.    The ZBA Decision of 10/8/25 was motivated by discriminatory intent, and further evidence of a widespread pattern, practice and policy to ignore Plaintiff's a disabled constituent, complained that the inspection decisions were discriminatory, unlawfully obtained evidence and that her protected activity raising complaints while asking for reasonable accommodations requests formed the basis of retaliation. This Decision (adverse actions) violating the ADA Title II, Fair Housing Laws regarding the keeping of therapy animals and making reasonable accommodations to afford a disabled person to live independently with a disability and State and Federal Laws Plaintiff including the Illinois Human Rights Act

209.    Plaintiff, is physically and emotionally injured by the direct and consequential actions of the City and ZBA and was intentionally and completely publicly ridiculed by the actions of these Defendants, was denied attendance and forced to read a media article published to tens of 1,000's about the hearing that she was denied access to, with absolutely no mentioned of the discrimination and unfair hearing, the reporter, Darcie Shineberger (co-worker of Amanda Silberger) completely biased and only one-sided reporting in a unprofessional style that presented new evidence that Ms.Erickson was prevented from cross-examining, that evidence was false and misleading, defamatory and libelous as well as the other evidence found in other reports by Shineberger who was asked in August 2025 to correct the false and misleading reporting.  Defendants' actions are outrageous in a civilized world.

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                   *25-cv-4136*

210.    The ZBA knew or should have known that the interpretation of a disabled person with ADHD, like the plaintiff and her residence would be interpreted differently and/or affected by the disability where the Fair Housing Act, the ADA Title II and Illinois Human Rights Act prohibit discrimination based on the individual's disability.  ZBA completely disregards this evidence on interpreting/interpretations of a residential home of a disabled Person, ie. the Plaintiff, differently based on her disabilities involved and to make a reasonable accommodation for Ms.Erickson's disabilities including her ADHD, arthritis and need of Animal Therapy. The 10/8/25 Decision is completely void of any of these facts despite Plaintiff meeting all object criteria that support this her defense was denied and her access to present a defense denied. The hearing unfair and unlawful condoned, ratified, while ignoring encouraged by defendants causing substantial injury to Plaintiff

211.    If Plaintiff had been given a fair hearing she would have presented evidence proving the failure of the 'code official' to due process and the requirements of the IPMC Section 105.5 Right of Entry requires giving the home-owner notice and opportunity before seeking court action and court action was not commenced by Lambert, and neither Lamber or Herrick ever obtained a refusal from Erickson, as contained in Herrick's Affidavit, the affiant perjured himself when Herrick wrote that he entry into her home on 5/2/25 was unlawful as herein above claims, the Affidavit supporting probable cause had numerous misrepresentations of material fact, the Judge was deliberately mislead as that Patrol Officer, not the "code official" obtained the warrant to investigate Ms.Erickson to gather evidence of a crime (related to an unfounded allegation of animal cruelty); numerous omission that were intentionally excluded material facts in order to mislead the Judge including the Ms.Erickson had served the original "citizen complainant" Steve Silberer and his nosey wife Amanda Silberger a Cease and Desist Notice, to establish the legal status of the property because there is a valid legal issue as to a 40 year-old adverse possession issue making the Administrative Search Warrant invalid; the evidence from this otherwise unwarranted search would be suppressed, inadmissible under the Fruit-of-the-Poisonous-tree Doctrine, and *Wong Sun v US*, 371 US 471 (1963) and the at the ZBA was obligated to apply the holdings of the US Supreme Court, as established law, and the Plaintiff would have argued that the evidence that was presented of the interior of her residence was illegally obtained and that the ZBA was obligated to suppress it, and find that the evidence presented from only evidence obtained from outsider of Ms.Erickson constitutionally protected property was insufficient to support any code violation.

212.    The 10/9/25 ZBA Decision is completely void of any notice attempting to accommodation the Appellant's known identified disabilities and/or acknowledges any of the Plaintiff's claims that the allegedly Inspectors had deprived the Plaintiff of due process by failing to follow the International Property Maintenance Code "IPMC" requirements for notice and opportunity ***prior*** to taking courts actions, thus invalidating the not only the Inspectors authority under the IPMC but this entire ZBA actions. Plaintiff would have argued the ZBA was obligated to apply the laws and/or those requirements of the IPMC the City code official relied upon to give her authority.

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                *25-cv-4136*

213.    As of the filing of this Complaint, no reasonable accommodations have been offered, cured and/or actions to reconvene the ZBA or vacate their orders based on the above claims has been provided to Plaintiff, (evidencing unfair procedures no meaningful opportunity to be heard) further supporting emergency and preliminary injunctive actions by this Honorable Court. Plaintiff would have argued the ZBA was obligated to apply the laws and/or those requirements of the due process and fair hearings requiring a fair hearing where reasonable accommodations where needed to aid the disabled Appellant to present her case.  Appellant requested that the hearing take place during the day as she could not concentrate for more then 6 hours and it took 4 hours to travel on the Amtrak's schedule the time the ZBA Board scheduled there hearing she never received the noticed and instead they verbally told her it was at 5pm was too late and or near or after the time the last Amtrak train left and that other travel was not available and she required to be heard during the day before 4pm M-Sat. or that her epilepsy and ADHD would interfere with her concentration ability to present and defend. And she could not afford a hotel, and that her medications for her differing disabilities prevented her from traveling at night, and that she also required a wheelchair accessible room. Defendant never responded to any reasonable accommodation requests.

214.    The lack of timely and adequate notice to Plaintiff regarding 'it's question to the home-owner of a suspected ordinance violation' pursuant to the IPMC, a deliberate indifference from the fact that the code official did not have adequate training and took actions under Chpt 17-398 Macomb, Ordinance prior to attempting court action, deprived the Plaintiff of her 14 Amendment protections Zoning Board hearing has resulted in a deprivation of Plaintiff's property without due process of law, in violation of the Fourteenth Amendment.

## COUNT XXI
## 42 U.S.C. § 1983
## 14th AMENDMENT DUE PROCESS
## VIOLATION FOR FAILURE TO PROVIDE IMPOUNDMENT DOCUMENTS

215.    Plaintiff incorporates all paragraphs in this Complaint by reference as if fully rewritten here.

216.    The Fourteenth Amendment to the United States Constitution guarantees the right to due process, which includes the right to be informed of any governmental proceedings that directly affect Ms.Erickson's property interests and the opportunity to be heard at these proceedings. The Plaintiff has never received any impoundment documents, has never forfeited her sentient property and provided Notice of this fact on May 9th, 2025 (Exh.5) herein at and/or around page 92 email of Ms.Erickson hand written Complaint filed in the ILND heard by Judge Kocoras (Exh.O for Orders) refiled here – after the filing Defendant Welch, McDonough Co.Animal Control Officer for the McDonough Co. Animal Shelter, who unlawfully seized her sentient property beyond the scope of the dubious warrant at 11am on May 2nd, 2025 stated that the States Attorney for McDonough Co. Matthew Kwacala told him directly on Monday May 12th, 2025 that he was to hold the Erickson animals. On or about mid June 2025 again, Ms.Erickson overheard a telephone conversation with

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                   *25-cv-4136*

Welch and her sister, where Welch again repeats Kwacala instructions to Welch on the "holding". July 17th 2025 Ms.Erickson calls and spoke directly with Dana Moon, the Treasurer of McDonough Co. who is responsible to their animal shelter for all the funding of their new building (new Animal Shelter) Ms.Erickson was very succinct, direct and clear that she wanted her sentient property returned immediately and that she was *not* forfeiting any of them and will seek all lawful legal remedy to secure their return as politely as she possibly could to Dana Moon the V.P. of the Humane Society of McDonough Co. asking for the immediate return of her sentient property and without an answer in 10 days filed this instant action, giving the perpetrators a reasonable but least amount of time, as they already had 2.5 months to respond to Ms.Erickson's serious legal challenges and she was not willing to continue to leave her sentient property in their hands any longer.  Ms. Erickson filed this civil action on July 29th, 2025 the time for being polite, and patient has ended. The perpetrators have failed and secreted her property far too long, and those failure are exceptionally unlawful, intolerable and harmful.

217.    The Defendants have unlawfully seized her sentient property, beyond the scope of a dubious, unlawful warrant and failed to have consent, authorization or exigency unlawfully took, her beloved Persian clowder and English Setter Service Dog on May 2nd, 2025 and failed to provide her any due process, impoundment paper and have continuously secreted her property refusing to respond to a FOIA Request  from early October now under review at the IL AG's offices of the public access counselor in violation to the laws in Illinois.

218.    Defendants McDonough Co., its Board who oversees the Animal Shelter and employees and oversees the Animal Control Officers including Welch denied and/or otherwise failed to provide Plaintiff the required impoundment papers and due process required pursuant to the laws in Illinois and that her animals are a owned by her and the laws in Illinois recognize this fact. Impoundment papers were required to be served on Ms.Erickson and she has *never* received any and has made timely and regularly demands for their return as appropriate in this case and has been repeatedly ignored as is the pattern and practice of the Official and final policy makers in the County and in the City of Macomb.

219.    Ms.Erickson has never received an appropriate Search Warrant Return (Exh.1c), and what was filed on May 14th, 2025 made to defraud the Court, Heidi Benson who issued the Administrative Search Warrant, should have required an appropriate Return, the law requires the Judge to review the return to ensure the officer executing it is held accountable for anything seized – the Officer Herrick executed the Administrative Warrant as he attests to on May 2nd 2025 at 11am signing the document found at Exh.1b, Exh.1c is the Return filed on 5/14/25 the City's Attorney Defendant Scalf, then at Exh.1d is Affidavit Herrick (unsigned, see Scalf's email Exh.1e 'e' for 'email' claiming Scalf has the original unsigned Affidavit Herrick. And that is why Judge Heidi Benson is brought into this civil action, because she had a responsibility to justice and Ms.Erickson to ensure that the warrants return held the officer accountable and that the Return was appropriate, it is an

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v  M Inman*
                    *25-cv-4136*

administrative function, to which Judge Benson is held accountable since she failed to administratively ensure that the warrant return had a proper Inventory – it did not.

220.    The impoundment of Plaintiff's Therapy animals by a governmental entity constitutes a significant deprivation of property interests, thereby triggering the protections afforded by the Due Process Clause of the Fourteenth Amendment. When that property is also used as part of Ms. Erickson's disability accommodations the deprivation thereof has caused significant injury to Plaintiff.

221.    On or about May 2, 2025, agents of Defendants McDonough County, including McDonough County Animal Control Officers of the McDonough County Animal Shelter in Macomb, IL, Officers Welch, Hughes, and Rossmiller acting under color of state law, entered the home of Plaintiff without exigency, consent, authorization or right, seized from inside her home and allegedly impounded numerous purebred valuable animals belonging to Plaintiff from inside her residence located at 13 Hickory Grove, Macomb, McDonough County, Illinois (Exh.2b Warranty Deed), most individually trained to help Ms.Erickson cope with her disabilities. Defendants' returned to Ms.Erickson home on a few other dates and seized other Persians inside her home, constituting unlawful entries, trespasses and seizures due in part to the manner the in which these sentient property was taken, recklessly handled and carelessly impounded/seized and unlawfully seized against the laws and Ms.Erickson rights including the Illinois Animal Welfare Act 225 ILCS 605/ § 3.6 (e) see herein below.

222.    Defendants failed to provide Plaintiff with any impoundment documents at the time of or subsequent to the seizure of her beloved animals, this was deliberate and intentional. After reading Plaintiff's handwritten pleadings Judge Kocoras found that these animals were therapy animals – NOT PETS and this Honorable Court had though it was difficult to read Ms.Erickson's lengthy writings her handwritten pleadings were written in marker, not her choice as it was either maker or crayon. Ms.Erickson was determined to be heard and to save her family clowder of Persians she has lived with their entire lives. Their taking very harmful to them and she herself is suffering the physical deterioration their training and company has helped and aided Ms.Erickson therein. They are all which are considered her property under the established laws, knew or should have known where Ms.Erickson's abode was located to send the documents, refused upon multiple request. The seizure was unlawful against the Illinois Animal Welfare Act:

223.    Illinois Animal Welfare Act 225 ILCS 605/ § 3.6 (e) states in pertinent part:
*"No Representative of an Animal Shelter may enter private property and remove an animal without permission from the property owner and animal owner, nor can any representative of an animal shelter direct another individual to enter private property and remove an animal unless that individual is an approved humane investigator (approved by the Department) operating pursuant to the provisions of the Humane Care for Animals Act."*                    Illinois Animal Welfare Act *§*3.6 (e)

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

224.    The failure to provide impoundment documents deprived Plaintiff of the necessary information to understand the basis of the impoundment, the condition and location of her impounded property, and the procedural steps available to contest the impoundment and seek the return of her property.

225.    The failure to serve and lack of impoundment documents is part of the widespread pattern, practice and policy of the Defendants and evidences the lack of training necessary to comply with the laws and prevented Plaintiff from assessing the well-being of her animals, from verifying compliance with statutory care requirements by the impounding agency, and from effectively utilizing legal remedies to regain possession of her property.

226.    By failing to provide the required impoundment documents, Defendants have usurped the laws, denied Plaintiff an opportunity to be heard, to prevented her the opportunity to challenge the propriety of the impoundment, and to assert her property rights, all in violation of the Due Process Clause of the Fourteenth Amendment.

227.    As a direct and proximate result of the Defendants' actions, Plaintiff has suffered injuries and continues to suffer physical and emotional injuries and distress, anxiety, and deprivation of her property without due process of law, that has negatively affected her wellbeing.

**COUNT XXII**
**405 ILCS 5/2-601(c)**
**CIVIL CONSPIRACY TO FALSIFY MEDICAL RECORDS**

228. Defendant Herrick falsely arrested Plaintiff in her home on 5/2/25 after a forceful and unlawful entry, without valid warrant, exigency or cause, dragged her out of her home because she would not consent to the search and seizure not because she was not cooperating it is because Herrick presumed Ms.Erickson would consent to his authority she said no as is her right *Camera*. Herrick instead planned on getting rid of Ms.Erickson so the Silbergers could build their fence on Ms.Erickson's property with absolutely no interferences from the courts, and in order to aid and abet the Silbergers in their civil and criminal trespasses

229. Herrick then asked his approximately 10-15 uniformed officers to surround Erickson on her porch, crashing into and throwing her 15 or so, seedling trays (104 cells to a tray) handcuffed Ericksons hands behind her back while she cried out in immense pain from her arthritis, Herrick laughed and refused to handcuff Erickson differently like with her hand in front so not to torture her, Herrick with force threw her into her wheelchair and drove her to the McDonough District Hospital "MDH" and encouraged the ER staff Megan Clemens to falsify medical records made unlawful under 405 ILCS 5/2-601(a) knowingly made false statements that Ms. Erickson *is in a condition that immediate hospitalization is necessary for her protection and/or the protection of others*. Clemons knew or should have known that

59

Plaintiff was not a harm to herself and/or to others Clemens wrote maliciously that Ms.Erickson threw water on the floor, No she did not. Clemens misrepresented Ms.Erickson's fast speech which was fast because Ms.Erickson is on medication for ADHD and that this entire event was very traumatizing. Ms.Erickson has a right to refuse medical treatment, and not have to be falsely reported on by Clemens who denied Ms.Erickson the standard of care and committed malpractice by writing knowingly wrong medical records and as the Statute details the Petition must include *a detailed reason for the assertion, including symptoms, acts, and behavior* together with *the time and place…*". pursuant to 405 ILCS 3-601(c) prohibits and makes it punishable for making knowingly false statements.

230. Both Defendants Herrick and Clemens conspired conduct included fabricated evidence not all inclusive to their attachments and contributions contained in the Petition under this statute but in the Certificate and Petition they both agreed to write and sign. They both failed to provide any details and were unable to obtain a doctor's signature on a required InPatient Certificate (Exh.3) except for the other fabricated statements Herrick made 'Ms.Erickson was covered in feces' not one of several Hospital surveillance cameras in the ER or at it's front doors of the ambulance bay where Herrick parked his squad car, captured any visible evidence of such a claim. Ms. Erickson was dressed in a black short-sleeved T-shirt, face & arms exposed, and not one spot, stain or blotches on any part of Ms.Erickson's exposed skin, or clothes has anything close to resembling feces, a mark, stain or blemish.

231. Herrick made several knowingly false statements, prohibited and made unlawful by 405 ILCS 3-601(c) including statements: Herrick intended to include when he first entered Ms.Erickson's home on 5/2/25 under his guise of a administrative search warrant and within seconds of his entry started to manipulate the interior, upon entering Ms.Erickson's home Herrick picks up the new HDTV 70" x30"x15" box and throws it into the kitchen infront of Ms.Erickson's new extra large stainless steel stackable washer-dryer intending to block it, then hand written Supplement to his Petition For Involuntary Judicial Admission (Exh.3) start's with an access issue , it sure appeared that Herrick had practice at this type of fraud he created – he wrote "*Access to the washer & dryer*", "*it did not appear as though the residence had air conditioning*" there were two obvious portable AC units one was installed in a window visible from the street and one was on wheels next to her bed with an extension exhaust to a window.

232. "*Patient is **elderly** & **disabled**, it becomes clear patient cannot adequately care for her basic needs, nor the hoard of animals*" The details on *clarity* or what was required in a Petition like this are missing. "*hoard*" is not factual or objective and inaccurately describes the area "*Brief inspection of the residence did not reveal a clean cooking surface nor any food.*"{emphasis **bold** added}at the front door was the groceries delivered the day before, and the refrigerator was full! These statement were rehearsed and supports claimed discrimination based on age and disability. Allegations of 'no food' is inconsistent with objective evidence of the photos of the interior of Ms.Erickson's new

60

stainless-steel Frigidaire freezer compartment full of bags of frozen steaks, vegetables, fruit and ground sirloin (see herein below). This picture also evidences that the inspection was not for the enforcement of the IPMC or any code as the code doesn't attempt to regulate the inside of a refrigerator, and intentionally avoids personal property altogether. See Emergency Motion For TRO Exh. 4 manipulation of the contents of the refrigerator, Welch is seen taking food out of the freezer throwing it on the floor and pulling our bags and ripping them open taking pictures as he goes – see Exh.4 TRO.  If items inside are frozen, the question is answered as of function but this is not a question of function or food and becomes the basis of another claim of a 4th Amendment violation based on the principles of an unlawful search of places not in plain view regardless if the equipment is working. This picture provides more evidence of intent and fabrication of further constitutional deprivations made in retaliation of Ms.Erickson's *protected activities* evidences thereof herein at Exhibit 4 TRO. This picture and it's counterpart is strong evidence in support of the claim that these Defendants were manufacturing evidence of the interior of Ms.Erickson home in order to obtain the desired intent to deprive her of her property, unlawfully, and as part of the purported fraudulent taking, under a guised allegation of condemnation action, that the City had no authority to commence therewith because not only of the City's failures and refusal to follow the due process protections found in the IPMC §102 Scope, §105 Duties of Code Official; §107 Notice, §109.4 Method and Content of Notice.

233. Ms/Erickson knows what her home looked like, contained and is best at determinations of where and what an odd picture is contains and if it demonstrates a manipulation and the content thereof shows this manipulation and property staging as the associated pictures in Exh.4 TRO exam of ADHD shows/demonstrates, and shows/depicts the same frozen bags of food that were inside her freezer are now on the floor immediately in-front of the refrigerator and evidences another act of fabricated and manipulated evidence to appear as rubbish. There is no rubbish, debris, waste or garbage in her home and nothing more than a <15% saturated litter box not isolated into a white scented 4 mill thick trash compactor bag, because Ms.Erickson carried the bag outside and into her waste management system recepical that was last picked up on Wednesday two days before the unlawful entry and ruse occurred on Friday 5/2/25. The pictures evidence clean litter boxes, clean floors, clean and round (fat) Persians that are not afraid of the very unusual active going on around them, because they were raised with love and in a trusting environment, that allowed them to thrive and be happy with plenty of well loved cat trees. Ms.Erickson uses hardwood pellets and has several 40lb bags she moves them from the outside three seasons porch to the inside.Hard wood pellets absorb urine, very well contain feces and do nothing to control the odor like clay litter does. But because clay litter doesn't degrade in landfills it lasts over a 1000 years (it never degrades its clay) while hardwood pellets degrade immediately, the trade off significant to save the environment is more important to Ms.Erickson and her Persians appears to tolerate and now prefer pellets over clay that can get stuck between their toes, Ms.Erickson is not effected nor can differentiate any odors inside but has evidence of her neighbor's cat defecating and urinating on her property and around her bushes, which attracts additional loose and/or feral cats to visit and spray on Ms.Erickson's bushes this type of out-door-cat activity explains odors detected by others outside

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*

*25-cv-4136*

caused by those loose unfamiliar felines not under Ms. Erickson's control or her responsibility but caused by her abutters Cameron's action of keeping, feeding and leaving food outside for these animals and the wildlife. Generally the Camerons are responsible for their own complaints encouraging the cause of odors that are not under Ms.Erickson's control. Ms.Erickson who uses a humane lighting system outside during the evening to prevent deer from eating Ms.Erickson garden bulbs and vegetation. When the ~15 uniformed officers unlawfully entered Ms. Erickson's home on 5/2/25, they pulled Ms.Erickson out (refused to allow her to use one of her mobility devices (four prong cane) on her front porch where hundreds of seedlings sprouting in approximately 15 large seedling trays of over a 104 cells/units each the police had such distain they unnecessarily tossed the trays over destroying weeks of gentle consistent work in germination, a year to obtain the equipment and seeds and carelessly appeared amused at destroying this horticultural endeavor that covered her front porch.



Fig.1

234. Picture shows food, Petitioner Herrick add falsified medical records and misrepresents the conditions in Ms.Erickson home as having no food, these allegations support Ms.Erickson claims of perjury as there is evidently not a 'n0o food' issue based on objective evidence not a subject inconsistent bias police officer.

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*

235.    Herrick suborned Defendant ER Nurse Megan Clemons to falsify medical records and create a Involuntary Commitment Petition against Ms. Erickson's interests under 5/3-601(a) stating knowingly false representations that Ms. Erickson should be subject to involuntary admission on an inpatient basis without providing any material facts in support thereof Clemons personal observations all the facts in support were from Herrick's hearsay grand exaggerations and misrepresentation including that "Ms.Erickson was covered in feces" when not one of several surveillance cameras in the ER recorded anything on Ms.Erickson's clothes, skin, hair or face that resembled anything close to feces, mud, dirt or anything else nothing "covered with feces" was an intentional false material statement, made to support the imprisonment, commitment and false detention of Ms.Erickson who was justifiably upset being the victim and subject of horrific home intrusion (by police officers like Herrick who insisted on handcuffing Erickson's hands behind her back and who kicked-in her front door, while several other uniformed police entered her home without a warrant, consent or exigent circumstances and dragged her out, arrested her, handcuffed her hands behind her back causing her extreme pain in her shoulders, causing her to cry-out which appeared to make Herrick enjoy the moment of being tortured due to his handcuff, injuring her arthritic shoulders. Plaintiff today, 6 months later still is unable to put her hands behind her back, and has pain in her shoulder and wrist from this incident that won't heal. Herrick forced Plaintiff's arms behind her back and no officer attempted to intervene, or lessen the tortured treatment, she refused medical treatment that caused Herrick to be enraged, and lash out at Ms.Erickson when he attempted to convince the EMTs on scene to "just get her out-of-here", "take her away, bring her to the hospital and put her in a psych ward" Herrick drove Plaintiff himself to the ER of MDH knowingly falsely promising to transport the Plaintiff's wheelchair with her. Then leaving her expensive Invacare wheelchair outside in the rain with no covering.

236.    On 5/2/25 Herrick encouraged the ER staff including Defendant Megan Clemons, RN to falsify the medical record(s) with knowingly false information including an intentionally unsupported, vague statement about Ms. Erickson Clemons knew was based on Herrick's hearsay and that Plaintiff did not have any symptoms of a mental illness that could not be explained by the sudden violations to her privacy, and those of arthritis, epilepsy, ADHD and dyslexia.

**COUNT XXIII**
**PERJURY**
**720 ILCS 5/32-2**
**DEFENDANTS CLEMENS, HERRICK AND SCALF**

237. Herrick and individually Clemons, AND Scalf as Scalf assisted Herrick in his Perjury both intentionally and knowingly made false statements in documents intended to be filed in court and presented to a judge entitled <u>Affidavit Herrick</u> dated 5/1/25 filed by Herrick not Clemons, and the <u>Petition For Involuntary Judicial Admission</u> filed by both Herrick and Clemons and created together, intending their false statements to be read by a judge and to secure a prolonged detention of Erickson. The Affidavit was to secure an unreasonable search warrant with the Affidavit Herrick and a prolonged detention with the Petition intended to further deprive the Plaintiff of rights and protections under the US and Illinois Constitutions and the laws cited herein above on perjury.

238. Herrick prepared his Affidavit Herrick (Exh.1d) for a legal proceeding knowing these statements were false and misleading and that it was filed with the intent to be read by a judge and sought to harm Ms.Erickson and not for justice. Herrick intended to violate several important and pivotal laws with the use of his knowingly false statements and omissions and to use it to further another unlawful scheme, a ruse and/or intentionally procure the false imprisonment and illegal deprivation of property from Ms. Erickson (legal proceeding in condemnation and/or legal taking in the Illinois Taking Clause proceeding and when asked in the Petition (Exh.3) if he were involved in any legal proceedings with Erickson (Respondent) Herrick again lied and perjured himself by answering he had not/no involvement in any legal proceedings . In violation to ILCS Chpt 720 Section 5/32-2 and the false statement was material to the proceeding, and is a class 3 felony.

239. Clemons knowingly made official entries in Ms.Erickson's medical records including false and material misrepresentations that Plaintiff was a threat to herself and/or others without supporting the statement with actual statements. All of the hallways and entrances of the ER at McDonough District Hospital are recorded by surveillance cameras and these recordings support the fact that both Herrick and Clemons made intentional and knowing false statements Herrick: "Erickson is covered in feces" Erickson was recorded by several surveillance cameras in the ER and coming into the ER not one recorded any marks, staining or blotches on Erickson's exposed skin, face, hair or clothes. Herrick's false statement was at the time relevant and he knew it to be false. Herrick made this perjured statement to increase the likelihood of being granted the Involuntary Commitment Petition what the basis of her observations was and that such an immediate hospitalization was necessary. Clemons and Herrick's actions where knowing and willful, in violation  5/3-601(c) knowingly making material false statements in a petition for involuntary commitment .

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

240. Clemons a willing participant knowingly included perjured statements in Erickson's medical records to further assist in Herrick's unlawful purpose she knew was intended to imprison Erickson in a mental institution as far away as possible in order to aid the all City and all County Defendants' including defendants Silberger (was planning on installing a fence and with Erickson gone had no opposition to the zoning committee and/or like authorities with Erickson's absence Silberger will confiscate Erickson's property without any resistance. Herrick and other's, as mentioned herein, plan to get rid of Erickson so the City and County would be relieved of the complaints the Mayor's Office was involved in, especially with Mayors new agenda that relied upon its misrepresentations as to the new tax issue. Mayor Inman's belief that Erickson's criticisms are a burden when they are a valuable civics lesson that strengthen the community in hearing different view points except for to relieve the City's FOIA Officer and co-accomplice Scalf from answering Erickson's FOIA Requests, to relieve Dana Moon the Treasure for the McDonough County from responding to Erickson's request for a waiver of the registration fees for her Service Dog and to relieve Chief of Police Hamer from issuing criminal trespass actions against the Silbergers, and Cameron, and from the city transportation department from its duty to transport Ms. Erickson to her doctors and physical therapists offices.

241. Clemons false material facts aided and abetted the defendants believed Plaintiff was a threat to herself and/or others without recording what the basis of her observations was and that such an immediate hospitalization was necessary. Clemons and Herrick's actions where knowing and willful, in violation  5/3-601(c) knowingly making material false statements in a petition for involuntary commitment .

242. Defendant Herrick perjured himself and made several misrepresented statements of fact material for the intended purpose of obtaining 1. Administrative Search Warrant 2. Taking Erickson's property, and 3. Deprivation of Constitutional Protections resulting in injury 4. False Imprisonment by knowingly making a material false statement in the affidavit

243. Herrick also filed a fraudulent petition for Involuntary Commitment (Exh.3) Herrick endorsed and filled out the Petition, at the MDH the morning of 5/2/25 in an effort to imprison, falsely detain, defame Erickson's character and imprison her against her will, secured transportation of Erickson to Lake County (four hours away) with Clemons help to defraud the Judge who would review such a Petition and the medical insurance companies that insured Ms. Erickson with these unnecessary medical expenses.

1st AMENDED VERIFIED COMPLAINT                    H. Erickson   v  M Inman
25-cv-4136

245. Defendants knew and are liable for the described fraudulent conduct that has caused Ms. Erickson false imprisonment for over 32 days, homelessness, and loss of her safety of her home and the enjoyment of her therapy animals and privacy.

246. At approximately 11am Erickson arrived at the Defendant McDonough District Hospital ER "MDH" where Defendant Clemons originally met and treated Erickson for shock upon her arrival Erickson described the fraudulent forced search and seizure, trespasses and mistreatment, her shoulders in significant pain Herrick caused and whom he kept unprofessionally laughing at Erickson suffering his assaults and torture Herrick had caused upon her from 10am kicking in her front door, entering her home without a warrant, seizing her, falsely arresting Ms, Erickson and tortuously and needlessly handcuffing her hands behind her back causing severe pain from the arthritis in her shoulders. Ms. Erickson was justifiably upset and in severe pain shocked.

247.. By Noon Clemons and Herrick agreed to work together, while Herrick suborned perjury Clemons agreed to state false, materially relevant and intentionally fabricated medical records including knowingly making false statements to perpetuate the scheme that Erickson has a mental defect/disease see page 1 Inpatient Certificate

248. By 1pm Clemons agree to sign her signature and fill-out the Illinois preprinted form for Involuntary Commitment Petition knowingly and falsely stating by checking the box Is in need of immediate hospitalization for the prevention of such harm."

249. Clemons also checked the box Involuntary inpatient admission and is in need of immediate hospitalization." Clemons knew she was perpetuating a fabrication initiated by Herrick and that she personally examined the Plaintiff, and checked the box answering Ms. Erickson *A person with mental illness who, because of this mental illness is unable to provide for his or her basic physical needs so as to guard herself from serious harm, without the assistance of family or others, unless treated on an inpatient basis*." Herrick had suborned perjury from Clemons who knew Erickson was not a harm to herself or others.... nor did she fit the five criteria to Involuntary Commitment Petition in Illinois.

250. At 1pm Herrick and Clemons conspired to secure the false imprisonment of Erickson violating  5/3-601 (c) Clemons and Herrick acts and statements were false, fabricated, wonton, reckless and tortious acts were the direct and proximate cause of Ms. Erickson's harm, which includes but is not limited to humiliation and emotional distress and false imprisonment by knowing providing false statements in violation of  5//3-601 is a Class A

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*

misdemeanor. The above conduct by Herrick, Clemons, Moon, and Scalf substantially aided and abetted the fraudulent scheme which harmed Erickson.

1st AMENDED VERIFIED COMPLAINT                          *H. Erickson   v   M Inman*
                                    *25-cv-4136*

## COUNT XXIV
## AIDING AND ABETTING FRAUD
## 720 ILCS 5/32-2

251. Defendant Herrick knew his statements where false and the preprinted form for Illinois Petition for Involuntary Commitment provided clear advanced warnings about making a false statement liable for the described fraudulent conduct that has caused Ms. Erickson false imprisonment for over 32 days, homelessness, and loss of her safety of her home and the enjoyment of her therapy animals and privacy.

252.Defendant Clemons knew her statements where false and that she was perpetuating multiple frauds not only to harm Ms.Erickson her character and those medical insurance companies.

253. Herrick provided knowingly false and intentionally fabricated materially relevant statements when he filled out the Illinois form Involuntary Commitment Petition, at page 2 of 5 in the middle of the page #2 Is a box to fill-in, Herrick intentionally and knowingly provided false statements: "After several citizen complaints of the odor…from patients residence…" Herrick lists only one witness Korri Cameron, his co-worker, Cameron is a Ms Erickson's abutter who is in a legal dispute over the easement Cameron is exploiting Erickson this is exculpatory facts  Herricks intentionally maliciously excludes. Also fails to list witnesses Herrick claims Several citizens complaints the inference is there is no other witnesses, Herrick's statements are false and misleading.

254. Herrick check marks off the three boxes at the bottom of the Illinois Involuntary Commitment Petition, page 2 (bottom) check marked:

   I **do not**  have a legal interest in this matter (He had just submitted a Affidavit to Judge Benson in the 9th Judicial Circuit Court and sought a fraudulent Search Warrant, Herrick knew or should have known his checking that box was intentionally false.

   I **do not**  have a financial interest in this matter   Herrick committed fraud and actionable misconduct knows that judgments would potentially cause him his job.

   I **do not**  involved in litigation with the respondent (Ms. Erickson) by filing for an wrong AND unjust, unreasonable Administrative Search Warrant and filing a Affidavit with numerous false statements Herrick was certainly involved in litigation against Ms. Erickson, and failing to check off and/or recognize the consequences of his actions by checking off the three boxes knowing those answers to be false is perjury, the Defendants knew or should have known the following laws 5/3-601 Involuntary admission; Petition (c) Knowingly making a materially false statement in the petition is a Class A misdemeanor.

WHEREFORE, Plaintiff HEIDI K. ERICKSON, respectfully requests that this Court enter a judgment in her favor and against Defendants City of Macomb, et al defendants and McDonough County et al defendants, and as-yet unknown employees of the City of Macomb, McDonough County, and Humane Society of McDonough Count, MDH, Clemens and the Covingtons I & II, Lake Beh. Hosp and Demarcedo, Silbergers, Camerons, Gene Curtis, WIU, Mindsrup, and Shineberger awarding compensatory damages, punitive, special and costs, attorneys' fees, and other costs against each Defendant, punitive damages against each of the Individual Defendants, and any other relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, HEIDI K. ERICKSON, hereby demands a trial by jury pursuant to Rule of Civil Procedure 38(b) on all issues so triable.

## PRAYER FOR RELIEF

THEREFORE, Ms. Erickson respectfully requests the following relief: the immediate return of her sentient property, and unfettered access to her home, with a stay-away-orders restraining Defendants.

1. Issue emergency temporary Orders restraining Defendants from interferences with Ms. Erickson's Therapy Animals (purebred Persian felines) taken from her residence on 5/2/25, Orders restraining any surgical or chemical interventions, treatments, alterations, for immediate unhindered access to same and her home at 13 Hickory Grove Macomb, IL 61455

2. Order all Defendants to stay-away from 13 Hickory Grove, Macomb, Il 61455 by the minimun distance of 1.5 football fields and to refrain from the driving on Hickory Grove to access the Macomb County Club. All Defendants to stay away and have no contact, attempted contact, no telephone calls, no third party calls, no email or in-person contact and to remain at a minimum distance of 500 yards from the front & back doors of said residence (enforceable by US Marshalls) and for all Defendants to use this court's clerk's offices, judge's deputy and ecf to contact with and answer discovery requirements

3. Order a US Marshal to be posted at 13 Hickory Grove, Macomb, IL 61455 24/7 at the front door of her home for a security assignment 24 hours a day for at least 90 days of random assignments.

4. For the Sheriff of McDonough Co. and/or its Animal Control Officers, to assist in the immediate return of Ms. Erickson's Service Dog, a purebred English Setter, female named Beautiful pictured

Beautiful Shine, MC9560000017652886  Service Dog DOT Exh, 10, pg122

5. Issue emergency orders for preliminary injunctive relief directing the Sheriff of McDonough Co. to assist, retrieve and transport all sentient property, all Therapy Animals purebred Persian felines

1st AMENDED VERIFIED COMPLAINT                    H. Erickson  v  M Inman
                    25-cv-4136

seized by Defendants on 5/2/25 (including kittens born to Ms.Erickson's female Persians (Saphire, Bella, Powder, Lilie, seized by Defendants including Service Dog

A. Issue a declaratory judgment that Defendants **thrice** violated Ms. Erickson's right to be free from unreasonable searches, seizures, and invasions of privacy guaranteed by the **Fourth Amendment** of the United States Constitution and Article I, Sections 6 of the Illinois Constitution, and as a direct and consequential result of Defendants excessive force and outrageous conduct that she was harmed to the extent the law recognizes as unjust, unfair and detrimental.

B. Issue a declaratory judgment that Defendants **twice** violated Ms. Erickson's right to be free from hate and **Discrimination based on disability, and age**, as guaranteed by congressional intentions in the Americans with Disabilities Act President Bush signed into law over 30 years ago in the summer of 1990 and as guaranteed by Article I, Sections 17, 18 & 19 of our unique Illinois Constitution, and as a direct and consequential result of Defendants conduct that she was harmed to the extent the law recognizes as unjust, unfair and detrimental.

C. Issue a declaratory judgment that Defendants twice violated Ms. Erickson's vital right to be free from deprivations of **due process and equal protections**, guaranteed by the both Constitutions of the United States and of Illinois and as a direct and consequential result of Defendants conduct that she was harmed to the extent the law recognizes as unjust, unfair and detrimental.

D. Issue a declaratory judgment that Defendants violated Ms.Erickson'right's and deprived her of her property without due process and as a direct and consequential result of Defendants conduct she was harmed to the extent the law recognizes as unjust, unfair and detrimental.

E. Issue a declaratory judgment that Defendants violated Ms.Erickson'right's to be free from malicious prosecutions and that as a direct and consequential result of Defendants conduct she was harmed to the extent the law recognizes as unjust, unfair and detrimental.

I. Make findings of fact that the defendants conduct was intentional, reckless and malicious and that they are liable for the direct and consequential harms.

II. Make findings of fact that the defendants conduct was discriminatory, retaliatory and unjustified, that Defendants are liable for the direct and consequential harms the Plaintiff suffered as a direct and consequential result.

III. Make findings the defendants owed a duty of care and or a fiduciary duty they breached this duty.

IV. Make findings that the Defendants conduct in condoning the unlawful conduct complained of herein, are systemic policy errors that require correction.

V. Make finding that the Defendants conduct was conspired, willful, deliberate and not to be tolerated in a civilized world requiring immediate changes in leadership.

VI Make findings that the City of Macomb and their agents and employees are liable for the wrongs committed against the Plaintiff.

VII Make findings that the County of McDonough and their agents and employees are liable for the harms committed against the Plaintiff and her Therapy Animals.

1ˢᵗ AMENDED VERIFIED COMPLAINT　　　　　　　　　*H. Erickson　v　M Inman*

*25-cv-4136*

VIII Make findings that the each individual Defendants, MDH, Lake Beh. Hosp, Demarcedo, Curtis, Mindrup, Shinberger, Silberger, WIU is liable for the wrongs committed against the Plaintiff.

i. Compensatory damages, in an amount to be ascertained at trial.

ii. Punitive damages, in an amount to be ascertained at trial, for Defendants' intentional and/or willful and wanton conduct described herein.

iii. Special damages

iv. Treble damages because

iv. Attorneys' fees, costs, and expenses, pursuant to 42 U.S.C. § 1988 and the Illinois Civil Rights Act of 2003, 740 ILCS 23/1 et seq.

v. Such other and further relief as this Court may deem just and proper.

**DATED**: October 22nd, 2025        Respectfully submitted: *Heidi K. Erickson*, October 22nd, 2025
/s H.Erickson  pro se Dated 10/22/25  Heidi K.Erickson

## CERTIFICATE OF SERVICE

The undersigned, an pro se H.Erickson hereby certifies that on Octobert 22, 2025, she attempted to finalize and electronically file this 1st Amended Complaint before midnight 10/21/25 and because of software issues caused running multiple pages the computer she was using with only 4 ram of memory could not handle it and kept freezing u. THUS she file this foregoing FIRST AMENDED VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL to be filed electronically using the Court's recognized email system which will distribute on CM/ECF system which will send notification of such filing to all parties and attorneys of record who are CM/ECF participants.

EXHIBIT      TYPE                                                                                    PAGE#
Exhibit  O  ORDERS  25-cv-5249, C.Kocoras, J 6/26/25      …      …      …      …      Page 65

Exhibit 1 Administrative Search Warrant, return                                                    Page 67
Exhibit 1b AFFIDAVIT HERRICK( )            …      …                                            Page 70

Exhibit 2      email, warrant deed Service Dog verifications amended affidavit HKE…   Page 77
               13 Hickory Grove, Warranty Deed, HOME                                    Page   78
Exhibit 3  Herrick's Perjured PETITION for INVOLUNTARY JUDICIAL ADMISSION,  Page 80
Exhibit 4      City of Macomb, Dismissal of civil action 7/22/25   …      …      …      Page 85
Exhibit 5      Protected Activity email defendant non-forfeiture   …      …      …       Page 95
Exhibit 6      Notice of violation dated 7/24/25 from observations on 5/2/25      …      Page 98
AFFIDAVITS HIPPCHEN    …      …      …      …      …      …      …      …      Page 101
               ERICKSON    …      …      …      …      …      …      …      …      Page 102
               DR.FRASER  …      …      …      …      …      …      …      …      Page 103
                DR.ERDMANN      …      …      …      …      …      …      …      Page 104
               DR. ERDMANN      ..      …      …      …      …      …      …      Page 105
Exhibit 7-8-9  Protected Activity outline, emails to chief and Mayor Inman      …      Page 106
Exhibit 10 DOT SERVICE ANIMAL FORM and email sent 4/29/25                        page 122

1st AMENDED VERIFIED COMPLAINT                          *H. Erickson   v   M Inman*
                                   *25-cv-4136*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests of this Honorable Court:

A.  Immediately hear the Plaintiff on her Motions for an Evidentiary Hearing on Her Emergency Motions for Relief TRO and Preliminary Injunction.

B. Grant judgment in favor of Plaintiff on all claims and for the remedies sought in each claim;

C. Issue a judicial determination of the rights, duties, and obligations of the parties hereto;

D. Enjoin Defendants from any further violations of Plaintiff's constitutional rights under the 4th and 14th Amendments, from any acts of discrimination based on disability, and from any further unlawful seizures or detentions of Plaintiff or Plaintiff's property;

E. Issue a Temporary Restraining Order and a Preliminary Injunction to immediately halt the unlawful detention and custody of Plaintiff's sentient property, including the immediate return of Plaintiff's Therapy Animals and Service Dog, pursuant to all types of relief and FRCP Rule 64 and relevant state statutes; including the immediate restraint of Defendants from interferences of Plaintiff's home, federal benefits and issuances of stay-way Orders.

F. Award Plaintiff actual damages, including but not limited to compensatory, punitive, and special damages, in an amount to be determined at trial, with the appropriate multiplier for statutory and punitive damages under 42 USC §1983, §1988;

G. Grant Plaintiff the maximum economic, non-economic, actual, statutory, emotional, general, special, punitive, and other damages available under federal and state laws, including but not limited to those provided under §§ 12101-12213, §12132, §3601 §794a (under ADA Title II, The Rehabilitation Act)

H. Award Plaintiff attorney fees with the appropriate multiplier plus her costs and expenses of litigation, as allowed under 42 USC §1988 and other applicable statutes including the Illinois Civil Rights Act of 2003, 740 ILCS 23/1 *et seq.*;

I. Award Plaintiff such other relief that the Court deems appropriate, including but not limited to housing, transportation, costs, declaratory relief affirming the violations of Plaintiff's rights and the unlawfulness of Defendants' actions.

**JURY DEMAND**
PLAINTIFF HEREBY DEMANDS A JURY ON ALL TRIABLE MATTERS.
Respectfully Submitted,  Heidi Kristine Erickson, Dated Chicago, IL 10/22/25

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

**EXHIBIT O**

**ORDERS**

**Judge Kocoras, ILND June 26th 2025**

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                                              *25-cv-4136*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Heidi K. Erickson,                    )
                                      )
            Petitioner,               )
                                      )        25 C 5249
      v.                              )
                                      )        Judge Charles P. Kocoras
                                      )
City of Macomb, Lake Behavior         )
Hospital, and, D. Marco,              )
                                      )
            Respondents.              )

## ORDER

Petitioner's notice of motion for July 1, 2025 [17], is stricken as the Court is resolving all pending motions in this order. There is no need for Petitioner to appear before the Court on July 1st. Petitioner's motion for reconsideration [8], temporary restraining order [9], and for oral argument and emergency motion [16] are denied. Petitioner is advised that this case is complete, and she should make no additional filings in this case other than a notice of appeal. Petitioner's motion to proceed *in forma pauperis* [14] is granted because she demonstrates she is impoverished. This case remains closed.

## STATEMENT

Petitioner Heidi K. Erickson filed this *pro se* habeas corpus petition alleging that she was wrongfully arrested from her home in Macomb, Illinois on May 2, 2025. She was a patient at the Lake Behavioral Hospital in Waukegan, Illinois when she filed her case a week after her arrest on May 9, 2025. As Petitioner was arrested one week prior, the Court dismissed the case without prejudice for failure to exhaust her available state court remedies. The Court understands that she has been released from the hospital and is homeless in Chicago. Dkt. # 9, at 5. Petitioner filed a pro se appearance and provided her email to the Court allowing her to receive ECF notices.

Petitioner now brings the timely motion for reconsideration of the Court's dismissal under Rule 59(e) of the Federal Rules of Civil Procedure. Dkt. # 8. The motion does not suggest that the Court made a manifest error of law or fact in dismissing this case. *Barrington Music Prod., Inc. v. Music & Arts Ctr.*, 924 F.3d 966, 968 (7th

25-cv-5249  C.Kocoras,J.  ORDERS        Exh O

EXHIBIT 'O' for ORDERS

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

Cir. 2019). Instead, Petitioner attempts to effectively raise a new case against the Macomb city officials responsible for her arrest under 42 U.S.C. § 1983. Dkt. # 8.

This is improper for three distinct reasons. First, a party cannot raise new arguments or claims in a Rule 59(e) motion for reconsideration. *Banister v. Davis*, 590 U.S. 504, 508 (2020). Second, Petitioner invoked habeas corpus and that is how the Court resolved this case. Petitioner cannot convert her case into a new civil rights suit. *Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2005). Petitioner is advised that the Court is not: (1) making a final decision on the merits of her civil rights claims raised in her motion for reconsideration; (2) she must instead file her claim as a civil rights suit pursuant to the normal limitations on frivolous filings; and (3) refiling will result in consequences including being responsible for the filing fee. *Id*. at 389. Finally, Petitioner is advised that a civil rights suit challenging her arrest in Macomb, Illinois must be filed before the United States District Court for the Central District of Illinois. 28 U.S.C. § 1391(b).

Petitioner's motion for a temporary restraining order, Dkt. # 12, is denied because she seeks to enjoin the City of Macomb and its officials regarding her home in Macomb and her use of therapy animals. However, these issues relate to her Section 1983 claims that must be filed before the Central District of Illinois. This Court is an improper forum for these claims and the associated TRO request. Petitioner's motion for oral argument and emergency relief on her TRO request, Dkt. # 16, is also denied.

Petitioner's motion for leave to proceed *in forma pauperis*, Dkt. # 14, is granted because Petitioner has demonstrated that she is impoverished.

Petitioner's notice of motion for July 1, 2025, Dkt. # 17, is stricken as the Court is resolving all pending motions in this order. There is no need for Erickson to appear before the Court on July 1st. Petitioner is advised that this case is complete, and she should make no additional filings in this case other than a notice of appeal. This case remains closed.

It is so ordered.

Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: 6/26/2025

2

25-cv-5249 C. Kocoras, J. ORDERS          Exh O

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*
                              *25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-cv-_____

HEIDI ERICKSON, *Plaintiff*


v.


CITY OF MACOMB, Et. Al., *Defendants*


**COMPLAINT**
**In support of this Complaint**


# EXHIBIT 1
## 1a. Administrative Search Warrant, issued on 5/1/25
## 1b. With Affidavit Herrick

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                    *25-cv-4136*

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
McDONOUGH COUNTY, ILLINOIS

CITY OF MACOMB,

Plaintiff

MAY 1 4 2025

vs.                                      Case No. 2025MX 155

HEIDI ERICKSON,                                              IAN A. FISCHER
                                                             CIRCUIT CLERK
Defendant.

### ORDER AND ADMINISTRATIVE SEARCH WARRANT

Upon review of the affidavit submitted by Bryce Herrick, I find probable cause exists to believe that violations of municipal ordinances and/or the Humane Care for Animals Act may be occurring at the subject property.

**IT IS HEREBY ORDERED** that officials of the City of Macomb Police Department, including Animal Control personnel and/or law enforcement officers, are authorized to enter and inspect the premises at:

### 13 Hickory Grove, Macomb, McDonough County, Illinois

for the limited purpose of investigating violations related to the care, treatment, and housing of animals as well as property maintenance in a sanitary condition, under:

- 510 ILCS 70/1 et seq. (Humane Care for Animals Act); and

- Sections 6-3, 6-51, 6-71, 6-72 of the Macomb Municipal Code. Section 305.1 of the International Property Maintenance Code as adopted in Section 7-121 of the Macomb Municipal Code

This inspection must occur during daylight hours (8:00 a.m. to 6:00 p.m.) and within ten (10) days of the date of this warrant. This inspection shall include the primary residence, and shall include any outbuildings or structures where animals may be kept.

This warrant does **not** authorize the removal or seizure of animals or property **unless** such removal is required under exigent circumstances or authorized under a separate warrant or statutory provision.

**IT IS SO ORDERED.**

Entered: 5/1/25

_Heidi A Benson_

Judge
Circuit Court of McDonough County, Illinois

1a. ADMINISTRATIVE SEARCH WARRANT, 5/1/25

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*

*25-cv-4136*

**AFFIDAVIT**

State of Illinois
County of McDonough

I, Bryce Herrick, being first duly sworn, on oath state as follows:

1. I am employed as a Patrol Officer with the Macomb Police Department and have the authority to investigate and enforce municipal and state animal welfare regulations.

2. The subject property is located at 13 Hickory Grove, Macomb, McDonough County, Illinois, in the jurisdiction of the City of Macomb and is owner-occupied, owned by Heidi Erickson.

3. Based on:

   o A citizen complaint received on April 18, 2025.

   o My personal observations and/or supporting documentation are as follows:

      1. My research located several animal cruelty cases in Massachusetts as reported by local media outlets.

      2. One such incident was in 2003 where an estimated 60 dead felines were taken from Erickson's apartment, and she was convicted of animal cruelty.

      3. In 2009 Erickson was the subject of numerous complaints from neighbors in Plymouth, MA of her apartment having an overwhelming stench; investigators in that case discovered deceased felines and remove 8-11 cats and a Great Dane from the resident. This case was resolved in 2011, and Erickson was convicted of animal cruelty and sentenced to a 2.5 year suspended sentence.

      4. A CHRI inquiry into Erickson revealed several prior convictions for disorderly conduct, resisting a peace officer as well as animal cruelty charges.

   o An additional citizen complaint received April 23, 2025, alleged concerns of the welfare of Erickson's dog and potential indoor animals. The complainant indicates a persistent and overwhelming odor emanating grom the home, so strong that on certain days the windows are kept closed. Concerns were also raised concerning the treatment of the dog as it is kept on a 6-foot lease outside for days at a time.

Affidavit Herrick, pg.1

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v    M Inman*
                        *25-cv-4136*

- On April 23, 2025, I inquired with the McDonough County Treasurer, and they were unable to locate any records of Erickson registering the animals within McDonough County.

- On April 23, 2025, I traveled to 13 Hickory Grove, Macomb, McDonough County, Illinois in an attempt to speak with Erickson. As I approached the residence, I would detect the odor or animal feces and urine emanating from within the residence. All doors and windows to the residence were closed at that time. I knocked on the door several times and received no answer. While standing at the door, I could detect the odor of animal feces/urine and at times could smell the odor of animal decomposition as there was a strong sulfur and methane smell coming from within the residence. I went to the back of the house and observed a medium-sized spaniel-bred dog tethered to the back porch. The lead of the tether was extensively tangled leaving the dog only about 6-7 feet of space to roam. Erickson was observed and upon request, refused to speak with officers and retreated into her residence.

I have reasonable cause to believe that violations of the Humane Care for Animals Act (510 ILCS 70/) and/or municipal ordinances (Sections 6-3, 6-51, 6-71, 6-72 of the Macomb Municipal Code. Section 305.1 of the International Property Maintenance Code as adopted in Section 7-121 of the Macomb Municipal Code) are occurring at the property, including but not limited to:

- Failure to provide humane shelter or veterinary care.

- Keeping animals in unsanitary, overcrowded, or hazardous conditions.

- Excessive number of animals, hoarding, or cruelty.

- Failure to promptly remove and dispose of feces deposited by animals.

- Tethering in violation of 510 ILCS 70/3.

- Failure to maintain the interior of the structure in a sanitary condition (305.1 of the International Property Maintenance Code, adopted by the Macomb Municipal Code).

4. I have attempted to obtain the consent of the property owner/occupant to conduct an inspection, which has been refused.

5. An inspection is necessary to determine whether conditions exist that violate local and state animal welfare laws as well as the International Property Maintenance Code.

Affidavit Herrick, pg.2

1st AMENDED VERIFIED COMPLAINT                         *H. Erickson  v  M Inman*
                                    *25-cv-4136*

6. Therefore, I respectfully request that the Court issue an **Administrative Search Warrant** authorizing City officials and/or Animal Control Officers, with the assistance of law enforcement if needed, to enter the property located at 13 Hickory Grove, Macomb, McDonough County, Illinois, between the hours of 8:00 a.m. and 6:00 p.m., within ten (10) days of the warrant's issuance, to inspect for violations of municipal animal cruelty ordinances and state animal welfare laws.

**FURTHER AFFIANT SAYETH NOT.**

_____

Bryce Herrick
Patrol Officer, Macomb Police Department

Date: _____

Subscribed and sworn to before me this ___ day of _____, 2025.

_____

Notary Public

**Exh.1b**

**See email from City Attorney acknowledging the affidavit wasn't signed on her system**

1st AMENDED VERIFIED COMPLAINT                    _H. Erickson   v   M Inman_
                              _25-cv-4136_

80



Lisa Scalf
to me ▾
Jun 24, 2025, 12:45 PM

Heidi:

You are absolutely correct. I do believe there was a FOIA request to which I have not responded and I apologize for my oversight. I will try to get that to you this week. Attached is the Affidavit of Officer Herrick per your request. I do not have a copy of the signed Affidavit as it was filed with the Application for Search Warrant which is impounded.

Sincerely,
Lisa Scalf

**macomb illinois**

**Lisa Scalf**
City Attorney/FOIA Officer

City Hall
232 E. Jackson St.
Macomb, IL 61455

E: lscalf@cityofmacomb.com
P: 309-833-4373
F: 309-836-5070

www.cityofmacomb.com

NOTICE: E-MAIL TO OR FROM CITY STAFF MAY BE SUBJECT TO DISCLOSURE PURSUANT TO THE ILLINOIS FREEDOM OF INFORMATION ACT.

Exh.1c email confirmation of Affidavit Herrick's missing signature, from the lawyer who helped Officer Herrick write his Affidavit – that why she (Lisa Scalf) City Attorney has an unsigned copy.

81
1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*



IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
McDONOUGH COUNTY, ILLINOIS

FILED

MAY 1 4 2025

IAN A. FISCHER
CIRCUIT CLERK

CITY OF MACOMB,
    Plaintiff

vs.                                             Case No. 2025MX /55

HEIDI ERICKSON,
    Defendant.

### RETURN OF ADMINISTRATIVE SEARCH WARRANT

Following application and request by the City of Macomb, this Court executed an Administrative Search Warrant on May 1, 2025, at 1:37 p.m. and entered an Order authorizing such Warrant on the same date.

The City of Macomb, by the Community Development Director and Rental Housing Inspector, with the assistance of the Macomb Police Department, executed the warrant on May 2, 2025, at 11:00 a.m. During the execution of the warrant, numerous animals were discovered within the premises in various stages of health, unsanitary conditions and some appearing malnourished. The McDonough County Animal Shelter was contacted and impounded the animals, obtained medical evaluations and the City believes they are currently housing them pursuant to impoundment procedures.

Dated: May 13, 2025                         CITY OF MACOMB

                                            By: _____
                                                 Lisa M. Scalf
                                                 City Attorney

Lisa M. Scalf
City Attorney, City of Macomb
232 E Jackson St
Macomb IL 61455
309-833-4373
lscalf@cityofmacomb.com

Exh.1c

Administrative Search Warrant Return, filed by City Attorney L.Scalf, not the Officer who executed warrant, and there is no INVENTORY

82

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*

*25-cv-4136*

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
McDONOUGH COUNTY, ILLINOIS

CITY OF MACOMB,
Plaintiff

vs.

HEIDI ERICKSON,
Defendant.

Case No. 2025MX 155

FILED
MAY 1 ᴇ 2025
IAN A. FISCHER
CIRCUIT CLERK

### ADMINISTRATIVE SEARCH WARRANT

THE PEOPLE OF THE STATE OF ILLINOIS TO ALL PEACE OFFICERS AND
PUBLIC HEALTH OFFICIALS IN THE STATE OF ILLINOIS:

YOU ARE COMMANDED FORTHWITH to enter the house and premises located at 13 Hickory Grove, Macomb, McDonough County, Illinois and to make a diligent and careful search and inspection for and to determine compliance with the care, treatment, and housing of animals under the Humane Care for Animals Act and compliance with the International Property Maintenance Code pursuant to the Macomb Municipal Code. Inspectors are permitted to video tape or photograph the search.

Entered: 5/1/25

Reidi A. Gorton
Judge

Time: 1:37 PM

I executed this Administrative Search Warrant by served the above named persons and/or premises on ___05/02/25___ at ___11:00___ am/pm.

Dated: 05/02/25     Bryce Herrich #173
Officer/Municipal Official

OR

I did not execute this warrant within 10 days of the time of issuance, and it is hereby returned to this Court as void and not executed.

Dated: _____     _____
Officer/Municipal Official

Exh.1d.

Officer signed on 5/2/25, that he executed the warrant at 11am - wrong executed it closer to 10:15am - 10:30am, Sentient property was taken by 11am beyond the scope of the warrant.

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

**EXHIBIT 2**

a.   EMAIL McDonough Co. Treasurer Dana Moon, Registration Waiver Request for Service Dog

b. Plaintiff's Warranty Deed

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*
                                        *25-cv-4136*

Plaintiff was waiting for the weather to warm up to register her Service Dog, she wasn't going to do it in January, and as long as she did it by Mother's Day (5/11/25) and/or July 4th 2025 there should be no problems but she was not given an opportunity.

Group Exhibit A

MCDONOUGH COUNTY, IL RECORDERS OFFICE
Document #: 2023-2135

Date Recorded: 8/17/2023 8:35:58 AM
ELECTRONICALLY FILED

## WARRANTY DEED

THE GRANTOR, B. NORRINE DIEKE, an unmarried person, of Macomb, Illinois, for and in consideration of $10.00 and other good and valuable consideration, in hand paid, CONVEYS AND WARRANTS TO HEIDI KRISTINE ERICKSON, of Rockford, Illinois, the following described real estate:

Lot 13 of Hickory Grove Subdivision of that part of the Waterworks Addition known as Hickory Grove and as shown in a Plat recorded in Surveyor's Record B, at page 146, in the Recorder's Office of McDonough County, Illinois, and being more particularly described as commencing at an iron pipe stake situated at the center of Section 30 in Township 6 North, Range 2 West of the Fourth Principal Meridian in said County, being also the Northwest corner of the West 70 acres of the Southeast Quarter of said Section 30, said stake being shown by a plat of survey recorded in Surveyor's Record F at page 304 of said Recorder's Office, and from said stake run thence South (assumed) on the quarter section line 263.55 feet for a point of beginning and from said point continuing South on the section line 182.38 feet, thence South 89° 00' West 855.00 feet to a point which is 20 feet South of the south edge of the existing paved public roadway and being also the South line of that land described as tract #2 by Ordinance 262 of the City of Macomb turning over control to the Commissioners of the Macomb Park District; running thence easterly on a line that is 20 feet South of, and meandering parallel to said roadway to the point where said roadway turns northerly, and thence continuing on a line 20 feet South of the private drive to the Macomb Country Club, to the quarter section line and the point of beginning. TOGETHER WITH existing easements for ingress and egress to the Glenwood Park Roadway, situated in the County of McDonough and the State of Illinois.

PIN:  11-200-939-00
PROPERTY ADDRESS:   13 Hickory Grove, Macomb, IL 61455

(The above warranties are subject to the taxes for the years 2022 and 2023 and all subsequent taxes, which said taxes the Grantee assumes and agrees to pay.)

Page 1 of 2

EXH. 2a warranty deed pg1

1st AMENDED VERIFIED COMPLAINT          *H. Erickson   v   M Inman*
                    *25-cv-4136*

situated in the County of McDonough, in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of this State.

DATED: July 6, 2023.

*B. Norrine Dieke*
B. NORRINE DIEKE

STATE OF ILLINOIS　　　)
　　　　　　　　　　　　) SS.
COUNTY OF McDONOUGH　)

I, the undersigned, Notary Public in and for said County, in the State aforesaid, do hereby certify that **B. NORRINE DIEKE**, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that she signed, sealed and delivered the said instrument as her free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and notarial seal on July ~~15~~, 2023.
　　　　　　　　　　　　　　　Aug

*Leah M Metzalf*
NOTARY PUBLIC

Official Seal
Leah M Metcalf
Notary Public State of Illinois
My Commission Expires 8/6/2027

THIS INSTRUMENT PREPARED BY:　　　　　MAIL SUBSEQUENT TAX BILLS TO:

FLACK, McRAVEN & STEPHENS　　　　　　Heidi Kristine Erickson
32 West Side Square, P.O. Box 359　　　　　13 Hickory Grove
Macomb, Illinois 61455　　　　　　　　　　Macomb, IL 61455

Page 2 of 2

EXH. 2b WARRANTY DEED

1ˢᵗ AMENDED VERIFIED COMPLAINT　　　　　　*H. Erickson　v　M Inman*
*25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-cv-_____

HEIDI ERICKSON, *Plaintiff*

v.

CITY OF MACOMB, Et. Al., *Defendants*

**COMPLAINT**
**In support of Complaint**

**EXHIBIT 3**

**3a. Perjured Petition For Involuntary/Judicial Admission, dated 5/2/25 at 12:52pm**

**3b. Inpatient Certificate, 5/2/25, at 1pm (1300)**

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson  v  M Inman*
*25-cv-4136*



**EXH.3a**

HERRICK'S **PETITION FOR INVOLUNTARY JUDICIAL ADMISSION**, pg. 2/5

HERRICK's PERJURY: Translation of boxed paragraph lists no criminal activity
"After several citizen complaints of the odor of animal feces & decomposition emanating from patients residence, administrative search warrant was executed to inspect the property. Inside the residence city employees discovered an animal hoard consisting of at least 12 cats & 1 dog, emaciated & unkempt{sic}. The residence did not appear inhabitable due to the amount of feces & hoarded items. Patient's residence is nearly inaccessible." {emphasis in bold added}

HERRICK required to lists "ALL WITNESSES" states "**several citizen complaints...**"
Herrick intentionally makes false statements listing one witness a co-worker Korri Cameron (Plaintiff's abutter) who is continually harassing Plaintiff's use of a lawful easement. Cameron daily blocks, and interfers w/ Ms. Erickson's use & access of their shared driveway, easement. Herrick just secured a administrative search warrant and is contemplating criminal charges certainly has a legal, and financial interests (Job security) and is in litigation with the SW.
ANSWERS CHECKED BOXES:      I do not have a legal interest in this matter.
                            I do not have a financial interest in this matter.
                            I am not involved in litigation with the respondent.      **Exh 3**

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                            *25-cv-4136*



**EXH.3a.**

## PETITION FOR INVOLUNTARY JUDICIAL ADMISSION
### SUPPLEMENTARY PAGE is FURTHER HERRICK PERJURY

### Translation/Transcribed

"Access to patent's {sic} washer & dryer cannot happen{sic} due to the hoard. It did not appear as though the resident had air conditioning. In varifyios {sic} with proper authorities, none of the animals are receiving veterinary care or registered. As patient is <mark>elderly & disabled</mark>, it becomes clear patient cannot adequately care for her basic needs nor the hoard of animals. Brief inspection of the residence did not reveal a clean cooking surface <mark>nor any food</mark>. Patient has an extensive history of animal cruelty & has been labeled as a compulsive animal hoarder."          These statements are Perjury

Inconsistent w/ photographs of a freezer full of steaks and frozen vegetables

Herrick appears to have included this paragraph as a Supplement to his perjured Petition for Involuntary Judicial Admission dated 5/2/25 @12:52pm          **Exh 3b**

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*



EXH.3a

**Herrick's Petition for Involuntary Judicial Admission, pg 3/5**

Exh. **3c 3/5**

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                    *25-cv-4136*



EXH.3b

**Herrick's Petition for Involuntary Judicial Admission, pg 3/5**

## INPATIENT CERTIFICATE

Signed by Defendant Megan Clemons, Perjured's herself and fails in her duty of care, breached the standard of care and negligence by falisfying medical records, signing a certificate and could not obtain a 2nd Certificate from a doctor because the doctors in the ER didn't want to participate in Herrick's scheme to falsify medical records and imprison Ms.Erickson no reasonably prudent ER doctor or nurse would make the false statements Clemons breached her obligations, duty and applicable professional standard of care this failure was negligence and directly caused and contributed to Ms.Erickson's harms and injuries.

_____Exh.3d

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

**EXHIBIT  4**

CITY FILED CIVIL ACTION 25-OV-118 TO ENFORCE ORDINANCE CLAIMING
ENFORCEMENT POWERS UNDER IPMC WHEN IT FAILED TO FOLLOW IPMC
REQUIREMENTS OF DUE PROCESS, CITY NEVER SERVED IPMC NOTICE SECITON 107.1
COURT DIDN'T HAVE SUBJECT MATTER JURISDICTION

THERE MUST BE YEARS OF MALICOIUS PROSECUTIONS FILED CASES WHERE THE CITY
FAILED TO FOLLOW BASIC DUE PROCESS REQUIRMENTS BEFORE THEY FILED A CIVIL
ACTION – THAT IS PART OF THE NEED FOR THIS HONORABLE COURT'S ACTIONS
BECAUSE THERE ARE PROBABLY HUNDREDS OF RESIDENTS AFFECTED MY CASE WAS
#**118** SO ASSUMING THERE WAS AT LEAST 117 CASES IN 2025 ALONE, OF DUE PROCESS
VIOLATIONS OV = ORDINANCE VIOLATIONS CAUSED BY A FAILURE TO TRAIN THEIR
EMPLOYEES IN TRAINING

92

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*
                        *25-cv-4136*

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
McDONOUGH COUNTY, ILLINOIS

CITY OF MACOMB,
Plaintiff

vs.                                        Case No. 2025OV118

HEIDI ERICKSON,
Defendant

### ORDER GRANTING MOTION TO DISMISS

THIS CAUSE coming before the Court on Plaintiff's Motion to Dismiss, the Court being fully advised in the premises, FINDS that the motion is well taken and should be granted.

IT IS HEREBY ORDERED:

1. Plaintiff's Motion to Voluntarily Dismiss Without Prejudice is GRANTED.

2. This case is dismissed without prejudice.

3. Each party shall bear their own costs and fees.

ENTERED: _____7/22/2025_____        _____Raymond A Cavanaugh_____
                                          JUDGE

Prepared by:
Lisa Scalf
City Attorney
City of Macomb
232 E Jackson St
Macomb, IL 61455
309-833-4373
lscalf@cityofmacomb.com
6287297

Exh 4a

1st AMENDED VERIFIED COMPLAINT                 *H. Erickson   v   M Inman*
                    *25-cv-4136*

93



IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
McDONOUGH COUNTY, ILLINOIS

FILED
JUN 0 9 2025
IAN A. FISCHER
CIRCUIT CLERK

CITY OF MACOMB, ILLINOIS,
a municipal corporation,

Plaintiff,

v.                                                        Case No. 2025OV 15

HEIDI KRISTINE ERICKSON,

Defendant.

## COMPLAINT FOR SANITATION VIOLATIONS AND PUBLIC NUISANCE
(Request for Abatement and Entry Order)

NOW COMES the City of Macomb, an Illinois municipal corporation, by and through its legal counsel, and for its Complaint against the Defendant, Heidi Kristine Erickson, alleges as follows:

1. Plaintiff, the City of Macomb, is a duly incorporated non-home rule municipality located in McDonough County, Illinois, and is empowered to enact and enforce ordinances to protect the health, safety, and welfare of its residents.

2. Defendant, HEIDI KRISTINE ERICKSON, is the owner and/or occupant of the real property commonly known as 13 Hickory Grove, Macomb, McDonough County, Illinois ("Subject Property"), ownership as set forth in the Attached Exhibit A being a Warranty Deed conveying ownership of the Subject Property to the Defendant. Plaintiff is not aware of any conveyance of the property from the Defendant and, upon information and believe, the Defendant is the sole owner and occupant of the Subject Property.

3. Jurisdiction and venue are proper in this Court pursuant to the Illinois Code of Civil Procedure and the Illinois Municipal Code, 65 ILCS 5/1-1 et seq., because the Subject Property is located within the territorial jurisdiction of this Court.

4. The City of Macomb has adopted and enforces the International Property Maintenance Code (IPMC) by reference, as authorized under Illinois law and its municipal code.

5. The IPMC provides as follows:

   o Section 301.2: the owner of the premises shall maintain the premises in compliance with the provisions of the IPMC and shall not occupy or permit

**Exh. 4b** City Complaint

Malicious Prosecution

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                    *25-cv-4136*

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
MCDONOUGH COUNTY, ILLINOIS

Case No. 2023 OV 118

CITY OF MACOMB,
*Complainant,*

v.

**VERIFIED MOTION TO DISMISS COMPLAINT**

HEIDI K. ERICKSON,
*Respondent*

**EXHIBIT 4
NOTES**

IPMC Section 105.3 Right of Entry

Where it is necessary to make an inspection to enforce the provisions of this code, or where the code official has reasonable cause to believe that there exists in a structure or on any premises a condition that is contrary to or in violation of this code that makes the structure or premises unsafe, dangerous or hazardous, the code official is authorized to enter the structure or premises at all reasonable times to inspect or perform the duties imposed by this code. If the structure or premises is occupied, the code official shall present credentials to the occupant and request entry... If entry is refused, the code official shall have recourse to every remedy provided by law to secure entry.

Respondent has never received a notice or a request for inspection from the code official, and the code official has never provided same to the Respondent at 13 Hickory Grove (premises) or her abode from 5/2/25 to 6/2/25, despite the Complainant knowing it secured her abode on 5/2/25 and received a request for service thereat on 5/14/25.

IPMC §107.2 Notice of Violation (2018 version, updated in 2024 under section 109.4.2
The code official shall serve a notice of violation or order in accordance with Section 109.4 [service]

IPMC §109.4 Notice: Whenever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given in the manner prescribed in Sections 109.4.1 and 109.4.2 to the owner or the owner's authorized agent, for the violation as specified in this code.

IPMC §105.5 Notices and orders
The code official shall issue all necessary notices or orders to ensure compliance with this code, in accordance with Section § 107. ¶, C § 105.1

RESPONDENT'S VERIFIED MOTION TO DISMISS                                    74                        Exh.4C

1st AMENDED VERIFIED COMPLAINT                          *H. Erickson    v   M Inman*
                          *25-cv-4136*

FILED
McDonough Co. Circuit Court
9th Judicial Circuit
Date: 7/9/2025 10:56 AM
Ian A. Fischer
2025OV118

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
MCDONOUGH COUNTY, ILLINOIS

Case No. 2025 OV 118

CITY OF MACOMB,
*Complainant,*

v.

**VERIFIED MOTION TO DISMISS COMPLAINT**
(2-619, 2-615, want of subject matter and personal jurisdiction)

HEIDI K. ERICKSON,
*Respondent*

### BACKGROUND

NOW COMES Heidi K. Erickson, *pro se* by special appearance, moves this Honorable Court to dismiss this action for want of subject matter jurisdiction, and defects in the Complaint. Movant, co-owner (with United States Department of Agriculture "USDA" through the 502 Direct Loan Program: "established by Congress with a clear intent authorized under the Housing Act of 1949" the question of *ownership* is not answered solely by Complaint's arguments and attachments of a deed, Complaint ¶2; serious defects and insufficiencies in Complaint exists Compl ¶4 relies on adopting the authorizations granted under the International Property Maintenance Code ("IPMC") while referring to an out-dated version of the IPMC from 2018 (Compl at Ex.B) is an incurable defect. The IPMC is published by the ICC and updated every 3 years 2021 and 2024. The 2024 version of the IPMC (Exh.3) uses different language advising in Chapter 1 Scope and Administration §102 "*extensively reorganised*". Complainant's use of the outdated/superceeded version of the code is impermissible by the language of the code. Also, the 2024 IPMC defines *owner* as an "*agent having legal or equitable interest in the property*" Definitions §202 (Exh.3). In fact the USDA, has a very strong interest in the subject property and is not amenable to a state court action that is best answerable in a federal court. To note this winter the Director of the Illinois USDA approved in excess of $4000.00 in improvements to the heating and ductwork systems inside the subject property and in June 2025, Secretary Robbins is now involved in an eminent domain issue whereby the City of Cranberry Hill, NJ is attempting to take a family owned farm away from two private citizens who happen to be veterans. Also, the fact that Complainant knows about Respondent's federal complaint docketed 25-cv-5249 initiated and served on 5/9/25 (Exh.1.pg4[1]), 31-days before this instant action was filed is evidence of both a pending action and Complainant's forum shopping. Respondent is actively pursuing her federal 42 USC §1983 action originally filed in the Central District of Illinois "CDIL" naming the same parties, issues, dates, set of facts and circumstances found in the instant Complaint. The only difference here is that Respondent's case is published on Pacer, made available through ecf and was actually served on the Complainant via email on 5/9/25 (Exh.pg3) and doesnt rely on misrepresentations of fact, importantly Judge Kocoras, of the Northern District of Illinois "NDIL" has issued His Orders on jurisdiction:

> "*Petitioner's motion for a temporary restraining order, Dkt. # 12, is denied because she seeks to enjoin the City of Macomb and its officials regarding her home in Macomb and her use of therapy animals. However, issues relate to her Section 1983 claims that must be filed before the Central District of Illinois.*"
> C.P. Kocoras, J., 6/26/25 Dck #19 25-cv-5249 (Exh. 1)

The important fact left out of Complaint, is a fact raised in front of Judge Kocoras, that the City has no authority to enforce the IPMC because the City failed to follow the Duties prescribed thereunder, Due Process requirements required by the IPMC makes *waiving* sections impermissible §102 Scope. Complainant *never* served Respondent

---

[1] Exhibit 1 evidences Complainant's knowledge of Respondent's abode and pending federal action since 5/9/25 docketed 25-cv-5249, Part 2 includes a screenshot of sent emails denoting recipients addresses, dates. Part 1 is Judge Kocoras's Orders issued 6/26/25 regarding jurisdiction; Part 2 evidences Respondent's sister (Pat) emailed Petition to City Mayor Michael Inman (mayor@macomb.com); Part 3 is a screen shot of Respondent's inbox noting all ecf filings accessible to Complainant a named party in 25-cv-5249. Respondent's hospitalization in Waukegan, IL from 5/2/25 - 6/2/25 was at the unclean hands of Complainant it's failure to serve deliberate.

RESPONDENT'S VERIFIED MOTION TO DISMISS                                       1

Respondent by Special Appearance Motion To Dismiss filed 7/9/25 (action dismissed 7/22/25)Exh. 4d

1st AMENDED VERIFIED COMPLAINT                          *H. Erickson   v   M Inman*
*25-cv-4136*

with a required §105.5 *notice of violation served in accordance with Section 109.4* as required under the authority bestowed at IPMC §105: Duties and Powers of the Code Official. Specifically, Complainant's 'code official' as defined in IPMC Definitions §202 'Code Official' is appointed and required to to comply to all sections including IPMC §105.2.2 Determination of Compliance part 2 at page 26 hereinbelow - highlighted

"*Shall not have the effect of waiving requirements specifically provided for in this code or other applicable codes and ordinances.*" {emphasis added}

## AFFIRMATIVE DUTY

The code official has an affirmative Duty to serve a *notice of violation* that includes how it is served and contains a curative provision (order). Notice and opportunity is affirmatively required before any enforcement action is initiated and where it has as herein this instant action, the Complainant is without authority to enforce:

§105.5 *notice of violation served in accordance with Section 109.4* .

§107.2 Notice of violation. The code official shall serve a notice of violation or order in accordance with §109.4.

§107.3 Prosecution of violation. *Any person failing to comply with a notice of violation or order served in accordance with §109.4*

The facts are undisputed Complaint para 15 "*has not sent written confirmation of the conditions.*" confirms it failed to serve the required notices consistent with the requirements of the IMPC which requires affirmatively in at least three sections of the IMPC 2024 §105.5, 107.2 and §109.4 "*shall issue a notice of violation upon the owner*" are the builtin due process protections conditioning authority on those due process protections.

## RESPONDENT NEVER RECEIVED NOTICE and COMPLAINT ADMITS para 15

Respondent has *never* received the required notice(s) and Complainant's undisputed fact that it has not sent the written documentation, despite numerous requests to serve Respondent, many from Respondent herself, and other requests from her sister Pat the City refused. Pat is not responsible for any part of the Respondent's home, maintenance or reliable party to convey complete information as the Complainant attempt to arue that mere telling Pat the contents of a Notice that the Complainant did not attach to it's instant Complaint here supports the inference that Complainant has no notice and if it does the notice is also inconsistent with the IPMC complaiance requirements on the Notice form and contents:

§107.2 Notice of violation "*The code official shall serve a notice of violation or order in accordance with §109.4*"

and is older then the RespondentThe City, it's code official have a duty required by the IPMC §105 is not allowed to waive any of the code sections, meaning Complainant and/or it's code official shall not pick and choose which sections of the code to follow, require and/or enforce.

§105.2.2 "*Shall not have the effect of waiving requirements specifically provided for in this code or other applicable codes and ordinances*"

## UNDISPUTED FACT COMPLAINANT REFUSED TO PROVIDE NOTICE

Complaint para 15 states "*has not sent written documentation of the conditions.*" (Compl. Para 15) The IPMC notice requirements especially where the affirmative word *shall* is used in the code "*shall not waive a requirement of the IPMC*", especially a requirement centered on the due process protections and rights of the home owner i.e. notice and opportunity, the Notice shall be served, shall be in the form...

Respondent never received any notice, as required was a victim of an unreasonable search and seizure US v Grey and has lost everything. The Complainant has unclean hands, unidentified code official with a duty required by the authority IPMC. Complainant didn't just fail to serve her *notice* and allow her any *opportunity to cure* it refused to do either. It had nearly a full month from May 2nd, 2025 to June 2nd, 2025 to provide Respondent reasonable

RESPONDENT'S VERIFIED MOTION TO DISMISS                                                          2

1ˢᵗ AMENDED VERIFIED COMPLAINT                                *H. Erickson   v   M Inman*

*25-cv-4136*

notice and opportunity and infringed on the Respondent's due process rights, and thus Complainant, the City and its code official have no authority to file this instant action is unnecessary duplicative litigation.

To recapitulate, this court has no subject matter jurisdiction because the Complaint is defective in that it has no authority to enforce the IPMC when it refused, failed and/or simply did not provide the Respondent due process by the required duty of providing the Respondent notice and opportunity and also failed to attach this required notice to its Complaint. In addition, the Complaint was served by email and asks for abatement therefore it requires to be served on the Respondent's person, this defect is intentional and repeated all the while there is a pending federal action naming all the parties, events, circumstances, dates and is derived from the same nexus in controversy.

§107.2 Notice of violation *"The code official shall serve a notice of violation or order in accordance with §109.4"*

§109.4 Notice. *Whenever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given in the manner prescribed in §109.4.1 and §109.4.2 to the owner or the owner's authorized agent, for the violation as specified in this code. Notices for condemnation procedures shall comply with this section.*

§109.4.1 Form. *Such notice shall be in accordance with all of the following* (i.e. **notice** and **opportunity**)
  1. *Be in writing.* And 2. *Include a description of the real estate sufficient for identification.*
  3. *Include a statement of the violation or violations and why the notice is being issued.* {emphasis added}
  4. *Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.* {emphasis added}
  5. *Inform the property owner or owner's authorized agent of the right to appeal.* {emphasis added}
  6. *Include a statement of the right to file a lien in accordance with §107.3.*

§109.4.2 Method of service. *"Such notice shall be deemed to be properly served where a copy thereof is served in accordance with one of the following methods:*
  1. *A copy is delivered personally.*
  2. *A copy is sent by certified or registered mail addressed to the owner at the last known address with the return receipt requested.*
  3. *A copy is delivered in any other manner as prescribed by local law. If the certified or registered letter is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice. Service of such notice in the foregoing manner upon the owner's agent or upon the person responsible for the structure shall constitute service of notice upon the owner.*

Complainant's refusal to comply with the requirements of the authority IPMC 2024 removes this Honorable court's subject matter jurisdiction, and thus the Complainant may not proceed with a prosecution because it failed to issue and serve Notice pursuant to IPMC 2024 §105.5, §107.2 and §109.4.2 depriving Respondent of due process.

  §107.3 Prosecution of violation. *"Any person failing to comply with a notice of violation or order served in accordance with §109.4… If the notice of violation is not complied with, the code official shall institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation…"*

Complainant told the Respondent's social worker that she had no appeal rights *"there are no appeals from our decisions"*, Respondent asked a social worker to ask Complainant to mail the documents and 2 questions of the City in effect 'did [it] send the Notice to [Respondent]' and "was the placard on the Respondent's house contained appeal information", the answer was "no" and that *"it did not"* and *"because our decision is final there are no appeals"* Complainant offered one answer as to why it took these actions; "because of alot of stuff" these answers are inconsistent with the enforcement powers, requirements and authority of the IPMC 2024 which is appealable as follows:

RESPONDENT'S VERIFIED MOTION TO DISMISS                                           3

1st AMENDED VERIFIED COMPLAINT                                    *H. Erickson   v   M Inman*
                                                 *25-cv-4136*

98

## BOARD OF APPEALS

B101.1 Scope. "*A board of appeals shall be established within the jurisdiction for the purpose of hearing applications for modification of the requirements of this code pursuant to the provisions of §106 (Means of Appeals). The board shall be established and operated in accordance with this section, and shall be authorized to hear evidence from appellants and the code official pertaining to the application and intent of this code for the purpose of issuing orders pursuant to these provisions.*"

B101.2 Application appeal "*Any person shall have the right to appeal a decision of the code official to the board.*"

## COMPLAINANT WAIVED IMPERMISSIBLE REQUIREMENTS OF THE IPMC

Respondent received US mail from the federal court when at the hospital in Waukegan, IL during the month of May 2025. Complainant had the opportunity, duty and received numerous requests to send the Respondent the required notice and opportunity. Complainant's refusal to issue and serve the required notice amounted to a waiver of the requirement against the requirements found in §105.2.2

§105.2 Determination of compliance. *The code official shall have the authority to determine compliance with this code, to render interpretations of this code and to adopt policies and procedures in order to clarify the application of this code's provisions. Such interpretations, policies and procedures:*

1. *Shall be in compliance with the intent and purpose of this code.*
2. *Shall not have the effect of waiving requirements specifically provided for in this code or other applicable codes and ordinances.* {emphasis added)

Thus this Honorable Court should dismiss this action because it does not have subject matter jurisdiction over this controversy.

## COMPLAINANT KNEW OF RESPONDENTS ABODE SINCE 5/2/25

Complainant knew of the Respondent's address in Waukegan since 5/2/25 when it's employee police officer Herrick, secured the temporary residence for Respondent with his perjured Petition For Involuntary Commitment, Respondents request for a copy of the Notice on 5/14/25, Respondent's sister Pat repeated request during the entire month of May 2025 and until June 3rd for the Complainant to serve the Respondent with all documents and notices. Respondent received US Mail on her filings from the federal court (NDIL) at the hospital in Waukegan and Respondent would have received Complainant's notice if it had sent it to her as required by the IPMC and/or cause her to be served by a process server. Complainant's brazen, unclean hands have caused the Respondent to have no knowledge what so ever of what in fact was the Notice claiming as to the alleged violations (even her sister Pat didn't know and/or could not recall what the City had said in any kind of sufficient detail to give the Respondent fair notice certainly Respondent was deprived due process without the Notice as required by the IPMC §§105.2, 105.5, §107.2 and §109.4.1 her during the entire month of May 2025 at the hospital in Waukegan it knew Respondent was thereat and it cannot rely upon merely telling her sister Pat (Compl para 14) "the remediation that would be necessary…" Pat is 70 years old and doesnt understand technical details, service by Pat is unfair.

Pursuant to the IPMC 105 Duties and Powers of the Code Official enforcement of the provisions of this code (i.e. the 2024 IPMC version and not the 2018 outdated version, requires, the code official to comply to all duties required of code officials consistent with the 2024 IPMC 105.2.2

§ 105.2 Determination of compliance. *The code official shall have the authority to determine compliance with this code, to render interpretations of this code and to adopt policies and procedures in order to clarify the application of this code's provisions. Such interpretations, policies and procedures:*

1. *Shall be in compliance with the intent and purpose of this code.*
2. *Shall not* have the effect of *waiving requirements* specifically provided for in this code or other applicable codes and ordinances [emphasis added}

RESPONDENT'S VERIFIED MOTION TO DISMISS                                      4

1st AMENDED VERIFIED COMPLAINT                      *H. Erickson   v   M Inman*

*25-cv-4136*

The IPMC is deliberate in it's construction in using the affirmative 'shall' in "*Shall not* have the effect of *waiving requirements* specifically provided for in this code or other applicable codes and ordinances." {emphasis added}

The importance of placement in the code emphasizes the strength of those requirements granting authority in scope, application, duties and rights of both the code official and property owner.

## CODE CONSTRUCTION
### IPMC SCOPE AND ADMINISTRATION

This maybe a little redundant but it supports this Motion To Dismiss in that the language of the IPMC protects the due process rights of those for which enforcement is sought: "IPMC Chapter 1 establishes the **limits of applicability** of the code and describes how the code is to be applied and enforced. The provisions of Chapter 1 establish the authority and duties of the code official appointed by the authority having jurisdiction and also establish the rights and privileges of the design professional, contractor and property owner. {emphasis added}

Complainant refused to serve the Respondent the required notice of violation(s) inconsistent with the Code's requirements in three areas: §105.5, §107.2 and 109.4; in addition to the Scope :

IPMC Scope §102.1 General. "*Where there is a conflict between a general requirement and a specific requirement, the specific requirement shall govern. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern*"

DUTY of Code Official §105.5 Notices, despite numerous requests this fact is undisputed Complaint para.15 includes "The City...has not sent written documentation of the conditions." Written documentation (notice) is required by the IMPC 2024 and *shall not* be waived (*id*):

§105 Duties and Powers of the Code Official and at §105.5 Notices and orders "*The code official shall issue all necessary notices or orders to ensure compliance with this code, in accordance with §107.*"

§107.2 Notice of violation. "*The code official shall serve a notice of violation or order in accordance with Section §109.4.*"

The Complainant referencing IPMC 2018 version (Complaint Exhibit B) has no authority to enforce the IMPC 2024, which according to the preface, scope and applicability:

§102.1 General. "Where there is a conflict between a general requirement and a specific requirement, the specific requirement shall govern. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern."

§101.2 Scope. "The provisions of this code shall apply to all existing residential ... and all existing premises and constitute minimum requirements and standards for premises, sanitation... a reasonable level of safety from fire and other hazards, and for a reasonable level of sanitary maintenance; the responsibility of owners, ...occupants; the occupancy of existing structures and premises, and for administration, enforcement and penalties."

The defects in the Complaint are serious issues that deprives this Honorable Court of subject matter jurisdiction. The code official has a duty to serve the *notice of the violation* upon the owner and instead of just failing to serve it it refused. Complainant knew exactly where the Respondent's new abode was in Waukegan since it's employees

RESPONDENT'S VERIFIED MOTION TO DISMISS                                    5

1st AMENDED VERIFIED COMPLAINT                                    *H. Erickson   v   M Inman*
*25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

**EXHIBIT  5        PROTECTED ACTIVITY**

PATRICIA HIPPCHEN (plaintiff's sister emails all Defendants on 5/9/25 federal law suit



**Heidi** ▣ 9:48 AM (6 minutes ago) ☆ ☺ ↩ ⋮
to silver.circles2022 ▾

——— Forwarded message ———
From: Pat Hippchen <hipp.pat@hotmail.com>
Date: Mon. Jul 7, 2025, 5:23 AM
Subject: Fw: EmergencyFilingFederalCtFw: H.E.
To: heidi.kristine.erickson@gmail.com <heidi.kristine.erickson@gmail.com>

From: Pat Hippchen <hipp.pat@hotmail.com>
Sent: Friday, May 9, 2025 3:43 PM
To: mayor@macomb.com <mayor@macomb.com>; jhammer@macombpolice.com <jhammer@macombpolice.com>; cdemarco@lakebehavioralhospital.com <cdemarco@lakebehavioralhospital.com>; kgrant@lakecountyil.com <kgrant@lakecountyil.com>; mcas@macomb.com <mcas@macomb.com>; mcif@gmail.co <mcif@gmail.co>; blakeleyfarms@gmail.com <blakeleyfarms@gmail.com>
Subject: EmergencyFilingFederalCtFw: H.E.

To whom it may concern, please find that this is one of two emails [the second shall follow immediately]. Filed today, to insure both the safety and return of Miss Heidi K. Erickson's property. Served on behalf of Miss Heidi K. Erickson, 13 Hickory Grove, Macomb, IL  61455.
heidi.kristine.erickson@gmail.com

From: Vangelica Langley-Taylor <vlangleytaylor@lakebehavioralhospital.com>
Sent: Friday, May 9, 2025 8:15 AM
To: hipp.pat@hotmail.com <hipp.pat@hotmail.com>

1st AMENDED VERIFIED COMPLAINT *H. Erickson  v  M Inman*
*25-cv-4136*



-------- Forwarded message --------
From: Pat Hippchen <hipp.pat@hotmail.com>
Date: Mon, Jul 7, 2025, 5:23 AM
Subject: Fw: EmergencyFilingFederalCtFw: H.E.
To: heidi.kristine.erickson@gmail.com <heidi.kristine.erickson@gmail.com>

From: Pat Hippchen <hipp.pat@hotmail.com>
Sent: Friday, May 9, 2025 3:43 PM
To: mayor@macomb.com <mayor@macomb.com>; jhammer@macombpolice.com <jhammer@macombpolice.com>; cdemarco@lakebehavioralhospital.com <cdemarco@lakebehavioralhospital.com>; kgrant@lakecountyil.com <kgrant@lakecountyil.com>; mcas@macomb.com <mcas@macomb.com>; mcil@gmail.co <mcil@gmail.co>; blakeleyfarms@gmail.com <blakeleyfarms@gmail.com>
Subject: EmergencyFilingFederalCtFw: H.E.

To whom it may concern, please find that this is one of two emails [the second shall follow immediately]. Filed today, to insure both the safety and return of Miss Heidi K. Erickson's property. Served on behalf of Miss Heidi K. Erickson, 13 Hickory Grove, Macomb, IL 61455.
heidi.kristine.erickson@gmail.com

From: Vangelica Langley-Taylor <vlangleytaylor@lakebehavioralhospital.com>
Sent: Friday, May 9, 2025 8:15 AM
To: hipp.pat@hotmail.com <hipp.pat@hotmail.com>

Notice to Defendants 5/9/25 sent to City, County Board Chairman Eric Blakeley (his wife Karen Blakeley, is the veterinarian allegedly looking over my Sentient Property) and Covenington Lake Beh.Hosp, Cindy Demarco and others about my Therapy Animals and holding me against my will.

103

1ˢᵗ AMENDED VERIFIED COMPLAINT                *H. Erickson   v   M Inman*
*25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

EXHIBIT   6

CITY 7/24/25
NOTICE OF VIOLATIONS PURSUANT TO IPMC 107.1

DEFECTIVE BECAUSE
AGED,
ARBITRARY
NO REASONABLE GOVERNMENT INTEREST
BASED ON A WARRANTLESS ENTRY
EVIDENCE AND OBSERVATIONS INADMISSIBLE AND UNLAWFUL
EVIDENCE BASED ON A HOMEOWNER'S DISABILITY
OBSERVATIONS INTERPRETED AGAINST A DISABLED INDIVIDUALS RESIDENCE
UNLAWFUL INTERPRETATION UNDER FAIR HOUSING ACT
IN ILLINOIS BASED ON AN UNLAWFUL INVASION OF PRIVACY
IN ILLINOIS UNCONSTITUTIONAL
CITY'S ACTION FOLLOW PROTECTED ACTIVE, EVIDENCE OF RETALIATION

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*



**Office of Community Development**
Miranda Lambert,
Community Development Director
309.833.4944

## NOTICE OF VIOLATION
### (Pursuant to Section 107.1 of the 2018 International Property Maintenance Code)

**Date of Notice**          July 24, 2025
**Case/Reference No.:**      EN25-0316
**Person Responsible or**    Heidi Kristine Erickson
**Owner of Record:**
**Address of Violation:**    13 Hickory Grove, Macomb, McDonough County, Illinois

Dear Ms. Erickson,

This letter serves as **official notice** that a recent inspection of the property located at the address above has revealed violations of the 2018 International Property Maintenance Code (IPMC) adopted by the City of Macomb.

Pursuant to **Section 107.1** of the IPMC:

"The code official shall serve a notice of violation or order to the person responsible for the maintenance of the premises or the owner of record."

The following violations were observed on May 2, 2025:

| Code Section* | Description of Violation | Corrective Action Required |
|---|---|---|
| Sections 301.2, 305.1, 305.3 and 308.1 | Within the premises, officials observed the accumulation of refuse, rubbish, garbage and waste; the presence of insects and rodents; general unsanitary conditions throughout the premises; a smell emanating from the premises creating a nuisance to nearby residents | Remove all refuse, rubbish, garbage, and waste located within the premises to eliminate the smell creating a public nuisance |
| Section 309.1 | Structures shall be kept free from insect and rodent infestation and those found with insects and rodents shall be promptly exterminated by approved processes. | Treat for the removal of insects and rodents |

*All references are to the 2018 International Property Maintenance Code, as adopted by the Macomb Municipal Code.

Exh. 5 pg 1

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                                    *25-cv-4136*

**Correction Deadline:**  All violations must be corrected on or before August 21, 2025.

**Right to Appeal:**  You have the right to appeal this notice in accordance with Section 111 of the IPMC. Appeals must be filed in writing with the Code Enforcement Office within 20 days of date of this notice.

**Failure to Comply:** Failure to comply with this notice may result in legal action, including issuance of citations, fines, or abatement of the violations by the City at your expense. Any action taken by the City to abate the violations on the premises shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

If you have any questions regarding this notice or need assistance in achieving compliance, please contact our office at 309-833-4944

Sincerely,

Miranda Lambert
**Community Development Director**

NOTICE WHO THE FINAL POLICY MAKER IS                                        **Exh. 5a**

1ˢᵗ AMENDED VERIFIED COMPLAINT                                        *H. Erickson    v   M Inman*
*25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

**EXHIBITS AFFIDAVITS**

1.  PATRICIA HIPPCHEN (plaintiff's 70 yr old sister)

2.  HEIDI K. ERICKSON (plaintiff)

3.  DR. RICHARD FRASER, DIPLOMATE OF 4 MEDICAL BD & STATE DISABILITY EVAL.

4.  DR. ANTHONY ERDMANN, I & II, DIPLOMATE NEUROLOGY and PYCHIATRY

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                    *25-cv-4136*

FILED
McDonough Co. Circuit Court
9th Judicial Circuit
Date: 7/9/2025 2:37 PM
Ian A. Fischer
2025OV118

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
MCDONOUGH COUNTY, ILLINOIS

Case No. 2025 OV 118

CITY OF MACOMB,
*Complainant,*

v.

Efiled In Support Of
VERIFIED MOTION TO DISMISS COMPLAINT
(2-619, 2-615, want of subject matter and personal jurisdiction)

HEIDI K. ERICKSON,
*Respondent*

**AFFIDAVIT PATRICIA A. HIPPCHEN**

1. I, Pat Hippchen, do depose the following: I am the older sister of the above captioned Respondent I lovely refer to herein as "Heidi" and supply these facts as they maybe helpful.

2. On May 2nd, 2025 at around 3pm, Heidi called me from the Emergency Room at the McDonough District Hospital and told me she was being transferred to another hospital in Waukegan, IL a four hour drive away when the McDonough District Hospital had available beds. I was confused why they had to transfer her so far and deeply concerned for her safety because it seemed all so unnecessary: Heidi was lucid, coherent, well aware of her circumstances, and upset of being dragged out of her home.

3. In early May 2025, and before I sent the 5/9/25 email attaching the Federal Complaint to the responsible parties of the City of Macomb and the County of McDonough, I asked the City of Macomb many times to send all documents it had for Heidi to her at the hospital.

4. It was apparent to me that the City of Macomb knew exactly where Heidi was including the name and address of the hospital.

5. I told the City of Macomb, more than once, that I was not responsible for my sister Heidi's home, her bills and or for passing on any information to her, most of which I could not understand especially when they were legal documents.

6. I had to tell the City of Macomb more than once to send all documents to Heidi as I was not their intermediary, but they kept insisting to the point I was growing increasingly frustrated that I could not satisfy all their unreasonable demands.

_Pat Hippchen_  , 7/9/25

I, Pat Hippchen, attest to the above under the pains and penalties of perjury and sign under oath this 9th Day of July 2025

/s Pat Hippchen, signed under the pains and penalties of perjury Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure [735ILCS 5/1-109],the undersigned certifies that the statements set forth in this instrument are true and correct,except as to matters thereinstated to be on information and belief.

_Brenda Lynn Story_

OFFICIAL SEAL
BRENDA LYNN STORY
NOTARY PUBLIC, STATE OF ILLINOIS
COMMISSION NO. 1001999
MY COMMISSION EXPIRES DECEMBER 23, 2028

1st AMENDED VERIFIED COMPLAINT                          *H. Erickson   v   M Inman*
*25-cv-4136*

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
MCDONOUGH COUNTY, ILLINOIS

Case No. 2025 OV 118

CITY OF MACOMB,
Complainant,

v.

AFFIDAVITS In Support Of
VERIFIED MOTION TO DISMISS COMPLAINT  (2-619,
2-615, want of subject matter and personal jurisdiction)

HEIDI K. ERICKSON,
Respondent

### AFFIDAVIT HEIDI K. ERICKSON

1. I, Heidi K. Erickson, do depose the following: I am the co-owner of 13 Hickory Grove, Macomb, IL as referred to in the above-captioned matter, defectively filed against my and those interests of the co-owner United States Dept.of Agriculture herein "USDA" I provide the following to aid this Honorable Court.

2. I am a person who lives independently with multiple physical disabilities, (none are psychology) including dyslexia (verified by Affidavit Kenneth Dinklage, Harvard University Expert attached at Exh.1) I also suffer from, arthritis, anxiety, and a sleep disorder, I use Animal therapy as a coping strategy verified in the attached Affidavits Richard Fraser, MD, Affidavit Randolf Catlin, MD and Affidavits Anthony Erdmann.

3. I have used animal therapy my entire life, in order to cope with the severities of my disabilities, and this animal therapy with multiple cats has been recommended and supported by the attached Affidavits I attach Affidavits Richard Fraser, MD and Randolf Catlin, MD who have verified the necessity and recommendations to my continued use of animal therapy.

4. I love my animals dearly and would never put any in harms away. I have taken scholarly University level coursework in advanced biological systems at Harvard University and at an agricultural university specializing in animal husbandry including infectious disease, microbiology, biochemistry, animal husbandry, animal: nutrition, physiology, anatomy, law and comparative anatomy. I am the third in succession to a generational tradition of owning and caring for multiple purebred cats, mainly Persian felines and exhibiting them at cats shows. In my professional opinion the photographs attached to the Complainant's defective Complaint (four to a page) depict healthy, well-feed, and relaxed Persian cats. These cats do not show fear (a sign of abuse) and/or disease and appear to have several climbing apparatuses for exercise that appear worn from regular use is another sign they are healthy and happy..

5. On 5/9/25 I asked my sister Pat to fax my hand written complaint to the Central District of Illinois and am filing the rest of my federal complaint pursuant to the recent Orders of Judge Kocoras, NDIL, in the CDIL against the City of Macomb who has been retaliating against me for my civic duties requesting FOIA responses, now under investigation by a Special Attorney General of Illinois, Caleb Briscoe.

I, Heidi K. Erickson, attest to the above under the pains and penalties of perjury and sign under oath this 9th Day of July 2025

/s Heidi K. Erickson, signed under the pains and penalties of perjury Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure [735ILCS 5/1-109],the undersigned certifies that the statements set forth in this instrument are true and correct,except as to matters thereinstated to be on information and belief.

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*



## SUPPLEMENTAL AFFIDAVIT RICHARD FRASER, MD

I am supplementing a recent Affidavit I executed on July 14th, 2008 in order to provide this information in case it is helpful. In regards to paragraph #3 I wrote "In summary, Ms. Erickson has a number of disabilities" to further that point I recommended animal assisted therapy with the of multiple cats.

Ms. Erickson use of animal assisted therapy is necessary for her to cope with her disabilities. She is at risk of nocturnal seizures, social isolation and several emotional disturbances which lead to lack of sleep, impaired ability to maintain employment, increased anxiety and impair her functioning during the day from the lack of sleep caused by sleep deprivation brought on by stress and anxiety. Ms. Erickson use of multiple cats in her home has had successful results in ameliorating her symptoms, aiding her in reducing panic attacks, disturbed sleep patterns and nocturnal epileptic episodes. Each cat has a specific function to aid Ms. Erickson. Felix offers tactile stimulation, and orientation - the cuddles, purrs and maintains contact with Ms. Erickson during a nocturnal episode also providing auditory stimulation which often reduces the negative effects of recovery from a nocturnal seizure. Beautiful is trained to the same function but is white in color and trained to follow Ms. Erickson around especially during periods Ms. Erickson sleep walks during an episode of a nocturnal seizure – this behavior is unique to Beautiful and is not as consistent from either Felix or Boo Boo but is highly functional to relax and provide Ms. Erickson with assurances of her surroundings and is especially important to orient Ms. Erickson if she becomes awake in an unfamiliar place of her apartment other then her bed. Boo Boo is specifically adapt at sitting on Ms. Erickson's chest to comfort her and orient her when Ms. Erickson is experiencing a night mare and/or starts to hyperventilate and/or scream. Boo Boo's function is unaffected by Ms. Erickson's screaming and therefore specifically adapt to continue providing a functional support when Felix or Beautiful maybe hesitant during those types of more physical episodes. Boo Boo, Felix and Beautiful offer tactile stimulation, comfort, reduce anxiety when Ms. Erickson experiences a panic attack either at night or during the day and therefore their function important. Each cat separately provides a separate function and each cat in combination offers Ms. Erickson the ability to enjoy her housing and provide her important accommodations to copy with her disability. Therefore I recommend the continued use of all three cats

Ms. Erickson has severe emotional disabilities that would be irreparably harmed if these 3 cats were removed ti  n her home.

rickson's service dog offers her minor social protection when Ms. Erickson is out in the public and
              The dog is trained to detect the onset of seizures and this function
      with minor non aggressive social deterent by staying with Ms. Erickson is she suffers a narcoleptic episode.

These functions of her multiple cats and dog ameliorates Ms. Erickson's disability and allows her to better cope with daily life.

By signing hereafter I attest that the above paragraphs are true under the pains and penalties of perjury.

ichard Fraser, MD   July 25th, 2008

### EXH.2 AFFIDAVIT RICHARD FRASER, MS

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                        *25-cv-4136*

## Anthony C. Erdmann, MD

*mailing address:*

2464 Massachusetts Avenue    190 Pemberton Street    Lynn Community Health Center
Suite 201    Cambridge, Massachusetts 02140    23 Central Avenue
Cambridge, Massachusetts 02140      Lynn, Massachusetts 01901

### AFFIDAVIT OF ANTHONY C. ERDMANN, MD

M[_____] 1/8/1960) has been in treatment with me since 4/11/2011. She suffers from Post-Traumatic Stress Disorder, Attention Deficit/Hyperactivity Disorder, Panic Disorder, and Dyslexia. She also has multiple medical problems which are currently active. Stress, particularly time pressure, will destabilize her and interfere with her cognitive functioning, which is already marginal because of her disabilities, a problematic living situation, the events of the last several months, and the lack of animal therapy. I recommend she be allowed generous extra time as a reasonable accommodation to her disabilities.

Signed under the pains and penalties of perjury this 22 nd day of October, 2011



Anthony C. Erdmann, MD
*Diplomate, American Board of Psychiatry and Neurology*

Fax 617 - 639 - 0443     aerdmannmiami@gmail.com     Phone 617 - 429 - 8026

Page 1 / 1  —    + 

EXH.. AFFIDAVIT I ANTHONY ERDMANN, MD

## Anthony C. Erdmann, MD

*Mailing address:*

| | | |
|---|---|---|
| 2464 Massachusetts Avenue | 190 Pemberton Street | Lynn Community Health Center |
| Suite 201 | Cambridge, Massachusetts 02140 | 23 Central Avenue |
| Cambridge, Massachusetts 02140 | | Lynn, Massachusetts 01901 |

### AFFIDAVIT OF ANTHONY C. ERDMANN, MD

M[          ] has been in treatment with me since 4/11/2011. Today is our 28th visit. Although [   ] is careful and looking for an explanation of the hostility [   ] has faced, I can find no evidence of paranoia, delusions, or any other psychosis.

Signed under the pains and penalties of perjury this 13th day of June, 2011

Anthony C. Erdmann, MD
*Diplomate, American Board of Psychiatry and Neurology*

EXH.. AFFIDAVIT II ANTHONY ERDMANN, MD

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*

*25-cv-4136*

112

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-cv-_____

HEIDI ERICKSON, *Plaintiff*

v.

CITY OF MACOMB, Et. Al., *Defendants*

**COMPLAINT**
**In support of Complaint**

**EXHIBIT 7**

Mayor Michael Inman's statement about his new agenda, published by Dylan Smith WGEM 4/16/25

Evidence of the US Cencus Reports 2010 and 2020 taken during the current Mayor's tenure evidences that under the current mayor (Inman) the City of Macomb lost nearly a quarter of its residents ~25% without the closure of a large business is important statistics. And when coupled with the Mayors statements made to constituents that are evidence of false statements to a reporter for a major news outlet in Rural Illinois WGEM (Macomb public TCV) about the manner in which the leadership in The City of Macomb communicate to his constituents is the basis of his ethical makeup and demonstrates how this leadership communicates and finds it ok to misrepresents facts on important tax issues effecting all citizens is disturbing – Mayor Inman said *"Its not a new tax* is an intentional false and misleading statement and this is being given as part of Inman's agenda. Herein used as part of the evidence that Inman doesn't state the truth and his ethics must under review for his manner, policy and practices authorized and employed to communicate with his constituents is evidence in this Complaint in the Central District of Illinois Federal Court that challenging and questioning government officials is necessary to expose this manner of false communications, agenda misrepresentations, policy and practices of miscommunications and intentionally false and misleading information. The City of Macomb's like it's Mayor a native, and graduate of WIU is inbred, very inbred and has a problem with the lack of trust and training education and exposure to modern advancements including in the laws and the manner in which you include your communities for example the City of Macomb, discrimination policy and hate reflects the sentiments found in Officer Herrick's writing found in his Affidavit and perjured Petition for Involuntary Judicial Admission (commitment) see Supplement where he uses his own manipulation (he threw the >65" TV box in front of Ms.Erickson's new Washer & Dryer manipulating the interior of Ms.Erickson's home on 5/2/25 and in his words

*"Access to patients washer & dryer cannot happen due to the hoard…"* and describes Ms.Ericskon as *"elderly & disabled it becomes clear patient cannot adequately care for her basic needs, nor the hoard {sic} of animals…"* Herrick is bias, his training inadequate and overly influenced by policy and practice of retaliation and misrepresentation.

Herrick is evidently trying to unlawfully institutionalize Ms.Erickson against the Supreme Court's holding in *Olmstead* and discriminate against her due to age and disability. Herrick adds "hoard of 12 cats" is clowder, this not a hoarding issue. Illinois doesn't not have a law limiting the number of cats living or owned by a resident, Macomb has no ordinance limiting the number of cats either. Herrick is a rookie patrol officer and not a mental health specialist. Ms Erickson doesn't have a severe mental illness or mental illness related to hoarding cats. see Anthony Erdmann, MD two affidavits attached to Ms.Erickson's Affidavit at Exhibit 5 at page 212, 221 & 222 during a time when Ms. Erickson was stigmatized with false criticisms

VERIFIED COMPLAINT                    *Erickson  v  City of Macomb, et al.*    7/29/25
                                                                                      208

PROTECTED ACTIVITY
DISCOVERING THE DELIBERATE INDIFFERENCE AND WIDESPREAD PATTERN AND
PRACTICE OF DISCRIMINATION AND MISINFORMATION (MISREPRESENTATIONS FROM
LEADERSHIP FINAL POLICY MAKERS

1st AMENDED VERIFIED COMPLAINT                              *H. Erickson   v   M Inman*
                            *25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-cv-_____

HEIDI ERICKSON, *Plaintiff*

v.

CITY OF MACOMB, Et. Al., *Defendants*

## COMPLAINT

## EXHIBIT 8
## EMAILS TO CITY OF MACOMB, POLICE CHIEF JEFF HAMER

May 2nd, 2025 (day of the warrantless search and seizure)
April 30th 2025
April 29th, 2025
April 28th 2025

April 23rd, 2025
April 22nd, 2025

**PROTECTED ACTIVITY**

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*



(Exh.8a)Screen shot Chief Hamer emails

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v    M Inman*
                    *25-cv-4136*



Exh. 8b  email 4/22/25 a screen shot of a string of 13 emails over time 4/22 – 5/2/25 10 days Culminating in the unlawful ruse, conspired unwarranted search and seizure and the condoning of Retaliation by the City of Macomb and the McDonough County

**Protected activity** Complaining/opposing discrimination, bias policing

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                                                        *25-cv-4136*



**Protected activity** Complaining/opposing discrimination, bias policing

Complaining about abutters Silberger's continued trespassing request to enforce a Cease & Desist Notice is a criminal trespass, Chief Hamer refuses bias, discrimination, denied equal opportunity to services

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*

*25-cv-4136*



1st AMENDED VERIFIED COMPLAINT    *H. Erickson  v  M Inman*
*25-cv-4136*

## Fwd: Mayirs Notice Sec.6-131 Enforcement Officers  Inbox ×

**Heidi**
to silver.circles2022

8:50 PM (0 minutes ago)

---------- Forwarded message ----------
From: **Heidi** <heidi.kristine.erickson@gmail.com>
Date: Wed, Sep 18, 2024, 4:42 PM
Subject: Mayirs Notice Sec.6-131 Enforcement Officers
To: <jhamer@macombpolice.com>, Melissa Worley <mworley@cityofmacomb.com>, <mayor@cityofmacomb.com>

Melissa Worley, Liason for the Mayor of the City of Macomb,
Chief of Police, City of Macomb

RE: City of Macomb Mayor condoning employee failures of service, retaliation, discrimination and abuse with not exclusively refusal of Police & Waste Management Services, Ordinance Violations and continuation thereof after notice is abuse.

Mayor of the City of Macomb,
I refer you to last week's email and those others sent regarding the overcharging of missed and/or failures of waste management. Biw it appears that your police department, by it Chief is encouraging, condoning and permitting his officers to refuse and fail to effect the Citues Ordinances not all exclusively cited herein below but to continue a harassing campaign to further damage and injure me and my property, intentionally meant to harm the aforementioned including my dignity and respect.

The following list of ordinance violations and specific language found therein condition this email notice which in these new electronic days, actual notice, to you and your Chief of Police who is refusing to enforce per Ordinance as above subject, and encouraging his officer to continue violating same, is outraggeous in a civilized society, and must cease and desist now. This situation, appears can only be resolved through a court action as stated in these Ordinances but common respect is always applicable and yet not accomplished here despite my peacefully notifying and discussing this concerning escalating problem. I will consider all lawful and reasonable remedies to relieve the damages, injuries and continued unlawful conduct and abuse. I know have over a $125,000.00 of damages and injuries and will not be a victim of your ruthless or retaliatory management.

Section 6 22 Dogs Running at large
Violations since August 2023 to today 9/18/24, the penalty prescribed is $100 a day for each and everyvday the violation continues, and "all damages"

Section 6-34 Certain dogs a Nuisance. "... [A]nd any dog ... which may in any manner unduly disturb the quiet of any person... is hereby declared a nuisance..."

**Protected activity** Complaining/opposing discrimination, bias policing

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
                              *25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

**EXHIBIT 9**

**City of Macomb Zoning Board Decision 10/8/2025**

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*
*25-cv-4136*

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*

*25-cv-4136*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

25-CV-4136

H. K. ERICKSON

v.

M. INMAN, CITY OF MACOMB, IL

**EXHIBIT 10**

**US Dept. of TRANSPORTATION SERVICE DOG FORM SENT TO MCDONOUGH COUNTY ON OR ABOUT 4/29/25**

1st AMENDED VERIFIED COMPLAINT                    *H. Erickson    v   M Inman*
                                       *25-cv-4136*



SSA Direct Deposit
Fraud Prevention Bl

OMB Control Number: 2105-0576
Expiration Date: 09/30/2027



## U.S. Department of Transportation Service Animal Air Transportation Form

**Warning:** It is a Federal crime to make materially false, fictitious, or fraudulent statements, entries, or representations knowingly and willfully on this form to secure disability accommodations provided under regulations of the United States Department of Transportation (18 U.S.C. § 1001).

PLEASE REFER TO THE U.S. DEPARTMENT OF TRANSPORTATION
SERVICE ANIMAL AIR TRANSPORTATION FORM INSTRUCTIONS WHEN COMPLETING THIS FORM

**A.   Service Animal Handler Information**

Service Animal Handler's full Name:  Heidi Kristine Erickson

Phone:  (312) 848-3332          Email:  heidi.kristine.erickson@gmail.com

☒ I attest that a service animal is required to accompany me, or the passenger with a disability traveling with me, in air transportation.

**B.   Service Animal Identification and Health Information**

Animal's Name:  Colorful Dreams aka Shine    Animal's Description (including weight and color):  English Setter, Tri-color, female

weight ~60lbs, DOB 8/2/2024, Rabies & full vacinations by 11/24; WSDA Cert.of Vet.Inspct11/6/24; MC9560000017652886

☒ I attest that the animal:
- Does not have fleas or ticks or a disease that would endanger people or other animals.
- Is vaccinated for rabies.

Date vaccination expires in the animal 11/05/2025
(mm/dd/yyyy)

Veterinarian's Name (signature **not** required):  Ana Kidder, VT60884487, WA., USA    Phone:  (360) 678-1881

**C.   Service Animal Task Training**

☒ I attest that the animal has been individually trained to perform a task to assist with a disability.

Name of Task Trainer or Training Organization:  H. K. Erickson (self)    Phone:  (312) 848-3332

**D.   Service Animal Behavior Training**

☒ I attest that the animal has been trained to behave in a public setting.

Name of Behavior Trainer or Training Organization:  H. K. Erickson (self)    Phone:  (312) 848-3332

☒ I understand that:
- The animal must be under the control of the Handler at all times.
- A properly trained service animal does not act aggressively by biting, barking, jumping, lunging, or injuring people or animals, and does not urinate or defecate on the aircraft or in the gate area.
- If the animal shows that it has not been properly trained to behave in public, then the airline may treat the animal as a pet by charging a pet fee and requiring that the animal be transported in a pet carrier, or denying transport.

☒ I attest that, to the best of my knowledge, the animal has not behaved aggressively or caused serious injury to another person or animal. If you are unable to make this attestation, please explain why:

**E.   Other Assurances**

☒ I understand that:
- The animal must be harnessed, leashed, or tethered at all times in the airport and on the aircraft.
- If the animal causes damage, then the airline may charge the Handler for the cost to repair it, as long as the airline would also charge passengers without disabilities to repair similar kinds of damage.
- I am signing an official document of the U.S. Department of Transportation, and if I knowingly make false statements on this document, I can be subject to fines and other penalties.

Handler's Signature:  *H. K. Erickson*    Date:  04/27/2025
(mm/dd/yyyy)

**Exh.10**

123

1ˢᵗ AMENDED VERIFIED COMPLAINT                    *H. Erickson   v   M Inman*
*25-cv-4136*

**DOT SERVICE ANIMAL DOCUMENTATION, ATTESTED TO BY H.K.ERICKSON**

 Gmail

Heidi <heidi.kristine.erickson@gmail.com>

**County Tag Waiver Re: Animal registration letter**

2 messages

**Heidi** <heidi.kristine.erickson@gmail.com>                                    Tue, Apr 29, 2025 at 6:04 PM
To: Dana Moon <dmoon@treasurer.mcdonough.il.us>, "McDonough Treasurer, Daina Moon, Macomb IL. Assessors Tax Bill"
<kw-durkin@comcast.net>

Dana Moon, McDonough County Treasurer
Re: Service Dog -Dog Registration,  Waiver Request

Dear Dana,
Please find the attached (McDonough County screen shot provision to waive pet registration fees ) and my attachment of
state verification of health (WSDA Vet.Inspection) with proof of rabies vaccination signed by a licensed veterinarian
(11/06/24) documenting your requirements for a license and tag and request a waiver by copying this email to Kevin
Dunkin oversight animal control for McDonough County (kw-durkin@comcast.net)

Also, I attest that my dog is in-training and has learned tasks as a service animal for my disability and while I attach the
U.S. Department of Transportation Service Animal Form to support the basis of those facts under oath that are relevant,
regarding this waiver without fully disclosing the details in the third factor related to my request for any fees waived based
on my reciept of SSDI, Medicare, and other federal and state benefits/funds that place an undue financial burden on me
to afford the counties fees. Thank you for your time, consideration and response. Take care.

Sincerely,
Heidi K. Erickson
13 Hickory Grove
Macomb, IL 61455

On Tue, Apr 29, 2025, 4:43 PM Dana Moon <dmoon@treasurer.mcdonough.il.us> wrote:

> Hi,
>
> Attached is the letter that we sent out earlier this year regarding dog and cat registrations.
>
> Thanks,
>
> Dana



DANA M. MOON
McDonough County Treasurer

#1 Courthouse Square, Macomb, IL 61455

1ˢᵗ AMENDED VERIFIED COMPLAINT                                    *H. Erickson   v   M Inman*
                                        *25-cv-4136*



Larger copies will be submitted UPON REQUEST INCLUDES RABIES AND HEALTH CERTIFICATIONS

1ˢᵗ AMENDED VERIFIED COMPLAINT                *H. Erickson   v   M Inman*
                                                    *25-cv-4136*