UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
25-cv-4136

HEIDI ERICKSON, *Plaintiff*

v.

MICHAEL INMAN, Et. Al., *Defendants*

FILED
2/21/2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## PLAINTIFF HEIDI ERICKSON'S VERIFIED MOTION FOR EXTENSION OF TIME TO REPLY TO DEFENDANT'S RESPONSE DATED 2/20/25 AND TIME TO RESPOND

1. Plaintiff, *pro se* files this VERIFIED <u>Motion</u>  Upon having just been released from the Saint Mary's Hospital in Chicago, IL during the last 10 day s of being held against her will and having been readmitted to another Hospital in the western edge of Chicago, IL where she was dumped at the alleged services for the homeless an alleged 24/7 shelter/warming center that is not as advertised a 24/7 warming center and/or shelter services for the City of Chicago, IL this is after she was promised the services thereof and refused all assistance because she is 65 years old and uses a wheelhchair.

2. Plaintiff has only been able to read the first 3-4 pages of the Defendant's Response filed today 2/20/26 and requests the opportunity to reply to any statements, arguments and of course the allegations of requesting a no-contact Order to her Complaint filed timely and accurately while having not debt and/or legal and lawful monitory indebtedness with the City and the County Defendants the later, who have not responded today.

3. Ms. Erickson, requests the opportunity to Respond to the Defendant(s) both the City's several page Response and the County's inability and the Defendants that should still be Defendants (McDonough County Humane Society who have custody of the Sentient Property belonging to the Plaintiff)

4. Plaintiff believes that the entire deprivation of her of rights secured by the Constitution and the rightful ownership of her property both Real and Sentient has been recognized and is entirely being unlawfully withheld from her is the question what other Constitutional rights to her unalienable property, sentient and real.has the Defendants taken from her, this entire ordeal is taking its toll and should have taken this harmful turn.

### THE RIGHT TO LIFE, LIBERTY and the PURSUIT OF HAPPINESS

5. All those animals unlawfully taken from Plaintiff are still Plaintiff's unalienable property, sentient therapy animals and Plaintiff's $75,000 estimated at now twice that amount if not three times the amount has maintained her taxes, throughout this unbelievable events, is deprived the basic decency of her home during the winter.

### THE VERIFICATIONS ON AFFIDAVITS AND ATTESTATION OF SERVICE

6. By signature hereinabove, I attest under the pains and penalties of perjury that the facts herein are true, and that the attached three Affidavits from Medical Experts Docters Dinklage, and Erdmann, I & II both were treating Ms.Erickson at the time of their diagnosis and recommendations found therein these Affidavits were legible and submitted in the 7th Circuit a few years ago.

7. Plaintiff has now filed the above Motions on Disability and they associated Affidavits as the Defendants have now been served and have access to all the motions and pleadings in this above captioned matter.

8.

9.

**Therefore for all the above and the information sent her email sent on 2/20/26 the reasons for this extension is in reason through to Saturday at 3pm. To enable the Plaintiff to review the Defendant's Response filed on 2/20/26/**

**Respectfully submitted**: *Heidi K. Erickson*,

By signature hereinabove, I attest under the pains and penalties of perjury that the facts herein are true, and that the attached three Affidavits from Medical Experts Docters Dinklage, and Erdmann, I & II both were treating Ms.Erickson at the time of their diagnosis and recommendations found therein these Affidavits were legible and submitted in the 7th Circuit a few years ago.

February 20th, 2026   /s Heidi K.Erickson
Dated Chicago, IL

Plaintiff Heidi K. Erickson's Experts treating Specialists (if any of these document blurry please advise and I will replace)
That listed

**EXHIBIT LIST**

EXH. 1 KENNETH DINKLAGE
EXH. 2a    AFFIDAVIT ANTHONY ERDMANN (April)
EXH. 2b    AFFIDAVIT ANTHONY ERDMANN (Oct.)

25-cv-4136                                              2
Motion For Disability Related Accommodations              *Erickson v Inman*,



**Harvard University**
University Health Services
75 Mt. Auburn Street
Cambridge, MA 02138



August 29, 1994

AFFIDAVIT FROM KENNETH T. DINKLAGE, PH.D.:

I am a clinical psychologist (Ph.D. from Harvard University in Clinical Psychology, 1956) who has been Psychologist to the University Health Services, Harvard University, since January of 1959. My duties in that role involve a broad clinical practice of psychotherapy and psychological testing with students and employees of the university. Concurrently I developed into a specialist in assessing learning disabled students. In each of my 35 years at UHS, I examined between 60 and 100 students in order to document their disability and to recommend accommodations. For those 35 years Harvard has acknowledged that within it's highly talented student body there are those with that built-in limitation of specific learning skills known as dyslexia. This is a neurologically based (one is born with it) language processing disorder impairing the individual's reading, spelling and expository writing abilities. Frequently there are unusual difficulties in learning a foreign language. There are persisting difficulties with spoken language as well.

Dyslexia [also called specific language disability, or according to the diagnostic manual of the American Psychiatric Association, a specific developmental reading (or writing or arithmetic) disorder], comes in all degrees of severity, from very slight to very severe. It is unrelated to intelligence; one speaks of a learning disability only in those of average or higher intelligence where there are dramatic discrepancies in language processing skills, i.e. peculiar deficits in contrast to what one would expect given the individual's intelligence, education and effort.

The most common accommodations provided by the university to students with dyslexia have been a waiver of their foreign language requirement (which was provided long before there were federal laws mandating accommodations) and/or extra time on in-class examinations. In extreme and rare cases, oral exams or other ad hoc accommodations have been made. It is frequently recommended that dyslexic students get individual and sometimes specialized tutoring support for their writing, that they use a word processor with a spelling and grammar check and, where they have trouble taking notes, to tape their lectures.

                , referred to subsequently as the plaintiff, came to me in the spring of 1992 at the suggestion of Louise Russell who was coordinator of resources for students with disabilities at Harvard College. I saw the plaintiff on a courtesy basis since, as an extension school student, she did not have UHS health care coverage. She wanted to discuss the implications of disclosing to Extension Division officials that she had a learning disability. She was worried particularly about any stigmatization this might cause, thus jeopardizing her graduate school plans.

Ex1a

If this Exhibit 1, is difficult to read try a 27" monitor (not a cell phone) or ask Plaintiff for an additional copy – this Affidavit Kenneth Dinklage was legible to the 7th Circuit Court of Appeals, as were the two following Affidavits Anthony Erdmann I and II

-2-

AFFIDAVIT FROM KENNETH T. DINKLAGE, PH.D., continued:

After our discussion the plaintiff decided disclosure made sense since she needed extra time on her exams and that would only be granted if she had a documented learning disability. Her prior documentation had been obtained in 1984, and therefore more recent testing was required.

I examined the plaintiff by means of interview, a writing sample and an abbreviated testing battery (Davis Reading Test, Wide Range Achievement Test and partial Wechsler Adult Intelligence Scale). Her language processing difficulties were quite obvious and an extensive testing battery was not required to see that she had a learning disability of sufficient severity to warrant extra time on her exams. At the plaintiff's request, I wrote a letter to this effect on April 15, 1992, to Owen Peterson, Coordinator of Services for students with disabilities at the Harvard Extension School.

After the plaintiff got over the hump of disclosing her disability, she acknowledged subsequently that further accommodations were warranted by the extent of her learning disability. At her request, I wrote two further letters on her behalf on February 22, 1993, and March 15, 1993. All three letters are appended and incorporated into this affidavit.

From my initial examination and from subsequent meetings with the plaintiff, it has become clear that her specific developmental learning disability impairs her processing of both oral and written language and both the understanding (decoding) and expressive (encoding) of that material. The degree and extent of the pattern of her learning disability compromises her reading, writing, speaking and listening skills.

Because of their difficulties with communication, people with learning disabilities sometimes show poor social judgement and I have certainly observed this in some of my interactions with the plaintiff. How much of that can be attributed to her learning disability and how much to her personality make-up would be hard to determine. The factors are thoroughly entwined and enmeshed at this point.

I, Kenneth T. Dinklage, Ph.D., sign this document and attest under the pains and penalties of perjury that the information herein is true.

_Kenneth T Dinklage_       _August 29, 1994_
Kenneth T. Dinklage, Ph.D.       Date

Ex1b

## Anthony C. Erdmann, MD

Mailing address:

2464 Massachusetts Avenue
Suite 201
Cambridge, Massachusetts 02140

190 Pemberton Street
Cambridge, Massachusetts 02140

Lynn Community Health Center
23 Central Avenue
Lynn, Massachusetts 01901

### AFFIDAVIT OF ANTHONY C. ERDMANN, MD

M▓▓▓▓ has been in treatment with me since 4/11/2011. Today is our 28th visit. Although ▓ is careful and looking for an explanation of the hostility ▓ has faced, I can find no evidence of paranoia, delusions, or any other psychosis.

Signed under the pains and penalties of perjury this 13th day of June, 2011

*/s/ Anthony C. Erdmann*
Anthony C. Erdmann, MD
Diplomate, American Board of Psychiatry and Neurology

Ex 2a AFFIDAVIT ANTHONY ERDMANN, I

AFFIDAVIT ANTHONY ERDMANN, II

## Anthony C. Erdmann, MD

mailing address:

2464 Massachusetts Avenue  
Suite 201  
Cambridge, Massachusetts 02140

190 Pemberton Street  
Cambridge, Massachusetts 02140

Lynn Community Health Center  
23 Central Avenue  
Lynn, Massachusetts 01901

### AFFIDAVIT OF ANTHONY C. ERDMANN, MD

M█████████████ (1/8/1960) has been in treatment with me since 4/11/2011. She suffers from Post-Traumatic Stress Disorder, Attention Deficit/Hyperactivity Disorder, Panic Disorder, and Dyslexia. She also has multiple medical problems which are currently active. Stress, particularly time pressure, will destabilize her and interfere with her cognitive functioning, which is already marginal because of her disabilities, a problematic living situation, the events of the last several months, and the lack of animal therapy. I recommend she be allowed generous extra time as a reasonable accommodation to her disabilities.

Signed under the pains and penalties of perjury this 22nd day of October, 2011

Anthony C. Erdmann, MD  
Diplomate, American Board of Psychiatry and Neurology

Fax 617-639-0443   aerdmannmiami@gmail.com   Phone 617-429-8026



EXH.. AFFIDAVIT I ANTHONY ERDMANN, MD

Ex2b