E-FILED
Thursday, 02 April, 2026  01:00:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| HEIDI ERICKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04136-SLD-RLH |
| | ) | |
| MCDONOUGH COUNTY, CITY OF | ) | |
| MACOMB, V. COVINGTON, LLC d/b/a | ) | |
| LAKE BEHAVIORAL HOSPITAL, V. | ) | |
| COVINGTON REALTY, LLC d/b/a LAKE | ) | |
| BEHAVIORAL HOSPITAL, JEFF | ) | |
| HAMER, BRYCE HERRICK, MIRANDA | ) | |
| LAMBERT, BILLIE MCMILLEN,[1] LISA | ) | |
| SCALF, ZACH WELCH,[2] WENDY | ) | |
| HUGHES, JOE ROSSMILLER, MEGAN | ) | |
| CLEMENS, MICHAEL INMAN, SCOTT | ) | |
| COKER, and JOHN/JANE DOE | ) | |
| OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court is Plaintiff Heidi Erickson's motion for a preliminary injunction and

order of replevin, ECF No. 22.[3]  For the reasons that follow, the motion is DENIED IN PART

and GRANTED IN PART.

---

[1] A declaration filed by Defendants indicates that this name is spelled Billie McMillen, not Billy McMillin.  *See* McMillen Decl., Resp. Ex. B, ECF No. 54-2.  The Clerk is directed to update the spelling on the docket.

[2] A declaration filed by Defendants, as well as Defendants' response to the motion for a preliminary injunction, indicates that this name is spelled Zach Welch rather than Zack Welch.  *See* Welch Decl., Resp. Ex. A, ECF No. 54-1; Resp. 1, ECF No. 54.  The Clerk is directed to update the spelling on the docket.

[3] Erickson also requested a temporary restraining order, but the Court already ruled that it would not grant a temporary restraining order without notice.  *See* Dec. 23, 2025 Text Order.  "When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements."  11A *Federal Practice & Procedure* § 2951 (3d ed. Sept. 2025 Update).  Thus, the Court treats this as a motion for a preliminary injunction and request for an order of replevin only.

1

## BACKGROUND[4]

The Macomb Police Department obtained a search warrant for Erickson's home at 13 Hickory Grove, Macomb, Illinois 61455. Defendants Bryce Herrick (a Macomb police officer) Jeff Hamer (then Chief of the Macomb Police Department), Miranda Lambert (a code official), and Billie McMillen (another code official), among others, executed the warrant on May 2, 2025. At some point, Defendants Zach Welch, Wendy Hughes, and Joe Rossmiller, all McDonough County animal control officers, came to the site and seized Erickson's service dog and Persian clowder and brought them to the McDonough County Animal Shelter. Erickson was arrested and brought to the McDonough District Hospital. Subsequently, Erickson was involuntarily admitted to Lake Behavioral Hospital. After these events, Defendant City of Macomb ("the City") marked Erickson's home for violations of the property maintenance code, preventing Erickson from accessing her home except during certain hours to abate the violations.

Erickson's motion—which spans 142 pages with exhibits and complains of wide-ranging conduct—eventually states that she seeks the following relief:

1) an order requiring Defendants associated with the City and McDonough County ("the County") to "provide all information as to all sentient and animal property alive and/or otherwise";

2) an order restraining Defendants from interfering with her sentient property—namely, her service dog and Persian cats, dead or alive—and requiring Defendants to return them to her;

3) an order restraining Defendants from interfering with her entry to, occupation of, and unfettered use of her home and shared driveway; and

---

[4] See the Court's January 27, 2026 Order, ECF No. 35, for further background and analysis of Erickson's First Amended Complaint, ECF No. 36.

4) an order restraining Defendants from contacting her and requiring Defendants to stay 100 yards from her.

Mot. Injunction 71–72.  She also, seemingly in the alternative, requests an order of replevin.  *Id.* at 12 (indicating that the relief she seeks is appropriate either "as a [r]eplevin" or under the Court's federal question jurisdiction).  The Court ordered Erickson to provide notice of her motion to Defendants (other than Defendants V. Covington Realty, LLC and V. Covington, LLC, who are not implicated by the motion).  Jan. 30, 2026 Text Order.  Defendants the City, the County, Michael Inman, Scott Coker, Lisa Scalf, McMillen, Lambert, Herrick, Hamer, and Welch oppose the motion.  Resp., ECF No. 54.  The Court will refer to these Defendants as the Responding Defendants for purposes of this Order.

## DISCUSSION

### I.    Motion for Preliminary Injunction

#### a.  Legal Standard

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "[A]lthough the party seeking the injunction need not demonstrate likelihood of success by a preponderance of the evidence, that party must nevertheless make a strong showing that reveals how it proposes to prove its case."  *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023) (quotation marks omitted).  The irreparable harm inquiry involves considering whether "traditional legal remedies would be inadequate, such that [the movant] would suffer irreparable harm without injunctive relief."  *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023).  "[A] mere possibility of irreparable harm

will not suffice." *Bevis*, 85 F.4th at 1188.  If the movant satisfies the required showings of likelihood of success and irreparable harm, "the court weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant," and uses "a sliding scale—the greater the movant's likelihood of success on the merits, the less the harms need be in its favor." *Grubhub Inc..* 80 F.4th at 844.  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation marks omitted).

### b.  Analysis

Responding Defendants argue that Erickson fails to show a likelihood of success on merits, that she has adequate remedies at law, and that they will suffer harm if Erickson's requests are granted.  *See* Resp. 4–9.  For most of Erickson's requests, the Court finds it necessary to address only the likelihood of success on the merits.

### i.  Return of Animals

Erickson's first request is for an order requiring the return of her animals and restraining Defendants from interfering with them.  Of the claims remaining in her suit, the claims that could potentially be remedied by such an order are discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and unlawful search and seizure in violation of the Fourth Amendment.  *See* Jan. 27, 2026 Order 16–35, ECF No. 35.  Responding Defendants argue that "Plaintiff fails to acknowledge the real danger in which she placed her animals" and state that "should this case proceed into discovery," they will "present evidence that the animals were malnourished, sickly, living in unsanitary and unsafe conditions, and—in several cases—in need of immediate medical attention." Resp. 5.  This is a relatively unhelpful

response—Defendants do not actually point to evidence to explain why Erickson is unlikely to succeed on the merits.

Nevertheless, the Court recognizes that there is a distinction between stating a claim to relief based on allegations that are accepted as true and making a showing of how one might prove those allegations. *See Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 (7th Cir. 2022) ("In assessing the merits, we do not accept [the plaintiff's] allegations as true, nor do we give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings."). So while the Court has allowed Erickson to proceed on these claims past the merit review stage, that itself is not sufficient to meet her burden for a preliminary injunction.

The Court finds that Erickson has not made a strong showing that reveals how she intends to prove these claims, and, accordingly, that she has not shown a likelihood of success on the merits of them. *See Grubhub Inc.*, 80 F.4th at 844 (holding that a preliminary injunction movant "must demonstrate at a minimum how it proposes to prove the key elements of its case"). Her ADA claim is that the City, through Hamer or Herrick, sought to search her home and seize her animals because of her disability, *see* Jan. 27, 2026 Order 21, but she fails to explain how she intends to prove this claim or point to any evidence beyond her allegations that would support this claim.

The unlawful search claims rest on Erickson's contention that the search warrant was obtained based on misrepresentations and omissions. *See* Jan. 27, 2026 Order 23–24. "An officer violates the Fourth Amendment if he intentionally or recklessly includes false statements in a warrant application and those false statements were material to a finding of probable cause." *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019). "An officer similarly violates the

5

Fourth Amendment if he intentionally or recklessly withholds material information from a probable cause affidavit." *Id.* Erickson's claim is based on allegations that Herrick made various misrepresentations in his affidavit, such as that he asked for permission to enter her home and that her animals were not registered. *See* First Am. Compl. 32–34. She does state in an affidavit that she never spoke to Herrick. *See* Erickson Aff. 8, ECF No. 10. But even if the statement about whether Erickson refused permission was omitted from the affidavit, the affidavit would still establish probable cause to believe Erickson had committed violations of the Humane Care for Animals Act, 510 ILCS 70/1 to 70/18, and municipal ordinances. *See Rainsberger*, 913 F.3d at 647 (explaining that to determine whether false statements are material, the court eliminates them from the affidavit and then "evaluate[s] whether the resulting hypothetical affidavit would establish probable cause" (quotation marks omitted)). Erickson does not make a showing as to how she would prove any other allegedly false statements.

Erickson also alleges that Herrick omitted facts such as that she had just seen her physician, that she used mobility devices and a service dog, and that she had an ongoing dispute with her neighbors. First Am. Compl. 32. Even if Erickson had made a showing that she could prove that Herrick withheld this information recklessly or intentionally, the Court is not convinced such information would have been material. *See Rainsberger*, 913 F.3d at 647 (explaining that to determine whether omissions are material, the court incorporates the omitted fact and evaluates whether the hypothetical affidavit establishes probable cause). The information regarding Erickson's health is irrelevant to whether there was probable cause to believe she committed violations of the Humane Care for Animals Act and municipal property ordinances. Herrick's affidavit does indicate that he was acting in part based on two citizen complaints about Erickson. Herrick Aff. ¶ 3, First Am. Compl. Ex. 1b, ECF No. 36 at 78–80.

6

Assuming these complaints came from Erickson's neighbors, the fact that she had an ongoing dispute with them could be relevant to probable cause. *See United States v. Clark*, 935 F.3d 558, 564–65 (7th Cir. 2019) (noting that where a search warrant affidavit is "based primarily on tips," information about an informant's credibility can be crucial to a probable cause finding). But here, Herrick had done his own investigation corroborating those complaints. The affidavit was not heavily reliant on the citizen complaints, so information about Erickson's relationship with the complainants is likely not material to the probable cause finding. *See id.* at 565

The unreasonable seizure claim rests on the notion that Erickson's animals were seized without a warrant and in the absence of exigent circumstances. Jan. 27, 2026 Order 24–25. "Exigent circumstances may justify a warrantless seizure of animals" when the animals are "in imminent danger" or in "dangerous or inhumane" conditions. *Siebert v. Severino*, 256 F.3d 648, 657–58 (7th Cir. 2001). Responding Defendants have provided a declaration from Welch in which he states that "30 cats, 3 chickens, and 1 dog were taken from [Erickson's] property and impounded at the [Animal] Shelter" on May 2, 2025 "because of the condition of the property and the hoarding and inadequate care of over 30 live animals and some dead cats." Welch Decl. ¶¶ 2–3, 5, Resp. Ex. A, ECF No. 54-1. Welch states that "[s]everal of the animals were treated for serious medical conditions, and several others were pregnant." *Id.* ¶ 4. This declaration suggests that Erickson's animals were living in inhumane or dangerous conditions, justifying their warrantless seizure. Erickson alleges that at the time of the search, her animals were thriving, her house was clean, and there was plenty of food for the animals. First Am. Compl. 61–62. Her affidavit touches on her belief that her home was clean and her animals were thriving, but it is rambling and hard to follow, based on speculation in part, and contains significant irrelevant detail. *See, e.g.*, Erickson Aff. 8 (stating that the officers who entered her

7

home on May 2, 2025 "manipulated the inside of [her] home"); *id.* (stating that her home "wasn't unsanitary especially . . . dangerously so"); *id.* at 10, 16 (stating that she performs her own veterinary procedures on her cats); *id.* at 15–16 (providing details about all of her animals). She also includes pictures throughout her preliminary injunction motion which she suggests show her home was not unsanitary. *See, e.g.*, Mot. Injunction 3. Nothing in Erickson's hundreds of pages of filings convinces the Court that she has shown a likelihood of success on the merits of her unlawful seizure claim.

### ii. Access to Home

Next, Erickson requests an order restraining Defendants from interfering with her entry to, occupation of, and unfettered use of her home and her shared driveway. The remaining claims potentially relevant to this request are: an ADA claim that the City, through Hamer or Herrick, searched her home because of her disability; an ADA claim based on failure to make reasonable accommodations in the zoning appeal process; a Fourth Amendment unreasonable search claim; and a due process claim based on failure to give a fair zoning hearing. Jan. 27, 2026 Order 16–35. However, it is unclear whether injunctive relief essentially bypassing the City's property code enforcement to allow Erickson to inhabit her home would be an appropriate remedy for any of these claims. The first ADA claim and the Fourth Amendment claim are based on the initial search of the property, not the City's subsequent code enforcement activity. And the second ADA claim and the due process claim are about the procedure—rather than the substance—of the zoning appeals hearing. The appropriate injunctive remedy for those claims would likely be to order a new hearing.

In any case, Erickson has not met her burden to make a strong showing that she is likely to succeed on the merits of these claims. Responding Defendants again unhelpfully state that

they intend to dispute the claim, though they also argue that Erickson has "provided nothing other than her own statements to prove" her claims. Resp. 6. Like for her claims seeking the return of her animals, Erickson does not demonstrate how she would prove these claims. Her claims that Hamer or Herrick searched her home because of her disability and that Herrick made misrepresentations in his search warrant request are, again, based only on her allegations for which she provides no evidence. Likewise, the ADA and due process claims based on accommodating her in the zoning appeal are based only on her allegations that no one responded to her requests for accommodation. This is not sufficient to show a likelihood of success on the merits. Moreover, the publicly available minutes from the Macomb Zoning Board of Appeals's September 24, 2025 meeting, at which Erickson's property was discussed, indicate that Erickson was offered the opportunity to attend the hearing by Zoom. *See* Sept. 24, 2025 Meeting Minutes 2, Zoning Board of Appeals,

https://portal.laserfiche.com/Portal/DocView.aspx?id=25611&repo=r-850674dd. Though this may not have been the accommodation Erickson requested, it does suggest that she was provided the opportunity to participate in her hearing. *See Dean v. Univ. of Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 189 (2d. Cir. 2015) ("The accommodation need not be perfect or the one most strongly preferred by the [plaintiff], but it still must be effective." (quotation marks omitted)); *cf. Meyer v. Walthall*, 528 F. Supp. 3d 928, 960 (S.D. Ind. 2021) ("Though a public entity is to give consideration to an individual's requested accommodation, the ultimate issue is not whether the individual requested a particular accommodation, but rather, whether the public entity took appropriate steps to ensure that effective means of communication were provided." (quotation marks omitted)).

### iii.  No Contact Order

Erickson also requests an order restraining Defendants from contacting her and requiring Defendants to stay 100 yards from her.  Such an order would be unconnected to any of Erickson's remaining claims, so the Court has no authority to grant such relief.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (requiring "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint").

### iv.  Information Regarding Impounded Property

Erickson finally requests an order requiring "Defendants City and County employees, agents" to "provide all information as to all sentient and animal property alive and/or otherwise." Mot. Injunction 71.  One of Erickson's claims is that the County violated her due process rights by failing to provide her with notice of the property that was impounded so that she could pursue available remedies to seek its return.  *See* Jan. 27, 2026 Order 32–33; *see City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999) ("[D]ue process requires [law enforcement agents] to take reasonable steps to give notice that . . . property has been taken so the owner can pursue available remedies for its return.").  Accordingly, the Court construes Erickson's request as a request for an order requiring the County to provide post-deprivation notice sufficient for due process.

While due process does not always require law enforcement to provide specific notice of the available remedial procedures, it could where the procedures are "arcane and not set forth in documents accessible to the public." *Perkins*, 525 U.S. at 242.  Erickson states in an affidavit that she never received documentation that her animals were taken.  Erickson Aff. 2. Responding Defendants do not specifically address this claim or Erickson's request for

10

information regarding her animals.  Welch's declaration states certain amounts Erickson would have to pay to obtain the return of her animals.  Welch Decl. ¶ 7.  However, it is unclear how those amounts were determined or if they relate to an established remedy for the return of impounded property.  It is unclear to the Court at this juncture under what authority the animals were seized and, therefore, what state law remedies would be available to Erickson to challenge the impoundment or seek the return of her animals.

Accordingly, the Court finds that Erickson has demonstrated a likelihood of success on the merits as to this due process claim.  The Court finds that there is a likelihood of irreparable harm absent preliminary relief as well.  Erickson has extensively argued that both she and her animals are suffering while they are in the Animal Shelter, and, absent notice, Erickson does not have an adequate opportunity to seek the return of her animals.  The balance of harms favors Erickson as well.  Merely providing notice will not harm the County.  The Court will issue an injunction ordering the County to provide notice to Erickson in a separate document pursuant to Federal Rule of Civil Procedure 65(d).  *See Auto Driveway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 676 (7th Cir. 2019) (noting that the Seventh Circuit "interpret[s] Rule 65(d)(1)(C) to require that an injunction must be embodied in a standalone separate document").  Such notice shall identify the animals and any other property seized from Erickson's home at 13 Hickory Grove on May 2, 2025 and under what procedures Erickson may seek the return of her property.  No bond will be required under Federal Rule of Civil Procedure 65(c) as the County has not even addressed this request for injunctive relief, let alone demonstrated that it would incur damages from such relief.  *See Habitat Educ. Ctr. v. US. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (noting that a district court can waive the bond

11

requirement if it is "satisfied that there's no danger that the opposing party will incur any damages from the injunction").

## II.        Request for Order of Replevin

An action of replevin under Illinois law seeks recovery of goods or chattels that "have been . . . wrongfully taken or are wrongfully detained."  735 ILCS 5/19-101.   The purpose of the replevin action is "to test the right of possession of personal property and to place the successful party in possession of that property."  *Koerner v. Nielson*, 8 N.E.3d 161, 163 (Ill. App. Ct. 2014). A court issues an order of replevin if the "plaintiff establishes a *prima facie* case to a superior right of possession of the property and if [the] plaintiff also demonstrates to the court the probability that she will ultimately prevail on the underlying claim of the right to possession." *Id.* at 164.  A replevin order directs the sheriff to take the property from the defendant and deliver it to the plaintiff unless the defendant executes a bond and security.  735 ILCS 5/19-109.

Erickson alleges that her Persian clowder and service dog are being wrongfully detained by the County.  *See* Jan. 27, 2026 Order 19–20.  She argues that they are being wrongfully detained because the warrant to search her home was based on misrepresentation and omissions. *Id.* at 20.  But, similar to her request for a preliminary injunction for return of her animals, Erickson has not demonstrated to the Court that there is a probability that she will prevail on her ultimate claim to possession of the animals.  She has not identified evidence that suggests she is likely to be able to prove that the warrant to search her home, which led to her animals being impounded, was based on material misrepresentations or omissions.  The Court will not issue an order of replevin.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff Heidi Erickson's motion for a preliminary injunction and writ of replevin, ECF No. 22.  Her request for an order requiring the County to provide notice of the property that it impounded is GRANTED.  Her other requested relief is DENIED.

Entered this 2nd day of April, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

13